Richard A. Clegg (SBN 211213)
SELTZER CAPLAN MCMAHON VITEK
750 B Street, Suite 2100
San Diego, California 92101
Telephone: (619) 685-3086
Facsimile: (619) 685-3100

Gary M. Butter (*pro hac vice*)
Paul A. Ragusa (*pro hac vice*)
Robert L. Maier (*pro hac vice*)
Jennifer Cozeolino (*pro hac vice*)
BAKER BOTTS L.L.P.
30 Rockefeller Plaza, 44th Floor
New York, New York 10112-4498
Telephone: (212) 408-2500
Facsimile: (212) 408-2501

*Attorneys for Plaintiff,*
*AMERICAN CALCAR, INC.*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMERICAN CALCAR, INC.,<br><br>    Plaintiff,<br><br>v.<br><br>AMERICAN HONDA MOTOR CO., INC., and HONDA OF AMERICA MANUFACTURING, INC.,<br><br>    Defendants. | Civil Action No.: 06-cv-2433-DMS (CAB)<br><br>**PLAINTIFF AMERICAN CALCAR, INC.'S TRIAL BRIEF**<br><br>**Honorable Dana M. Sabraw**<br><br>Trial Date: June 16, 2008<br>Time: 9:00 a.m.<br>Location: Courtroom 10 |

# TABLE OF CONTENTS

I.    INTRODUCTION ........................................................................................................ 1

II.   ACI'S CASE-IN-CHIEF ............................................................................................. 1

    A.   Honda's Infringement ....................................................................................... 2

    B.   Honda's Willful Infringement ........................................................................... 2

        1.   Honda's Objective Recklessness ............................................................. 3

        2.   Honda Knew or Should Have Known of Its High Likelihood of Infringement .............................................................................................. 5

    C.   ACI's Damages as a Result of Honda's Infringement ......................................... 6

III.  HONDA'S CASE-IN-CHIEF ...................................................................................... 7

    A.   Validity of the Patents-in-Suit ............................................................................. 7

    B.   Honda's Claim of Inequitable Conduct Is Wholly Without Merit ......................... 8

        1.   There Was No Failure to Disclose Material Prior Art to the PTO ............. 9

        2.   Applicants Did Not Intend to Deceive the PTO ....................................... 10

IV.   CONCLUSION ......................................................................................................... 10

# TABLE OF AUTHORITIES

Page

### CASES

*Baxter Int'l Inc. v. McGaw, Inc.*,
  149 F.3d 1321 (Fed. Cir. 1998)........................................................................................9

*Cohesive Techs., Inc. v. Waters Corp.*,
  Nos. 98-12308, 99-11528, 01-12307, 2007 WL 2746805 (D. Mass. Aug. 31,
  2007) ................................................................................................................................6

*Dow Chem. Co. v. Exxon Corp.*,
  139 F.3d 1470 (Fed. Cir. 1998)........................................................................................8

*Georgia-Pacific Corp. v. U.S. Plywood Co.*,
  318 F. Supp. 1116 (S.D.N.Y. 1970), *modified and aff'd,* 446 F.2d 295 (2d Cir.),
  *cert. denied,* 404 U.S. 870 (1971)....................................................................................6

*Hoffman-La Roche, Inc. v. Promega Corp.*,
  323 F.3d 1354 (Fed. Cir. 2003)........................................................................................8

*Honeywell Int'l Inc. v. Universal Avionics Sys. Corp.*,
  488 F.3d 982 (Fed. Cir. 2007)..........................................................................................9

*Impax Labs., Inc. v. Aventis Pharm. Inc.*,
  468 F.3d 1366 (Fed. Cir. 2006)........................................................................................7

*In re Seagate Tech., LLC*,
  497 F.3d 1360 (Fed. Cir. 2007).................................................................................3, 6, 7

*Molins PLC v. Textron, Inc.*,
  48 F.3d 1172 (Fed. Cir. 1995)....................................................................................8, 10

*Terlep v. Brinkmann Corp.*,
  418 F.3d 1379 (Fed. Cir. 2005)........................................................................................2

*VNUS Med. Techs., Inc. v. Diomed Holdings, Inc.*,
  No. 05-2972, 2007 WL 3165548 (N.D. Cal. Oct. 24, 2007) ...........................................6

*Warner-Lambert Co. v. Teva Pharms. USA, Inc.*,
  418 F.3d 1326 (Fed. Cir. 2005)........................................................................................2

## STATUTES

37 C.F.R. § 1.56 .................................................................................................................9

35 U.S.C. § 112 ..................................................................................................................7

35 U.S.C. § 282 ..................................................................................................................7

35 U.S.C. § 284 ..................................................................................................................6

Pursuant to the Court's Order Re: Trial (Docket Entry No. 350, ¶ 7), Plaintiff American Calcar, Inc. ("ACI") submits the following Trial Brief:

## I. INTRODUCTION

American Calcar, Inc. ("ACI") has brought claims for willful patent infringement against Defendants American Honda Motor Co., Inc. and Honda of America Manufacturing Inc. (collectively "Honda") based on Honda's manufacture, use, importation, sale or offers to sell Honda and Acura 2005-2007 model year vehicles equipped with navigation systems. The patents at issue, which generally relate to in-vehicle user interfaces that improve the user's level of safety, comfort and/or convenience in the vehicle, are U.S. Patent Nos. 6,330,497 ("the '497 Patent"), 6,438,465 ("the '465 Patent"), 6,542,795 ("the '795 Patent"), 6,459,961 ("the '961 Patent") and 6,587,759 ("the '759 Patent") (collectively, "the Patents-in-Suit"). The President of ACI, Mr. Michael Obradovich, is an inventor of the Patents-in-Suit.

The story relevant to this action began long ago. Mr. Obradovich was a small business owner dating back to 1984, and his business operations were not large enough to allow him to independently commercialize the inventions described in the Patents-in-Suit. Beginning in 1998, Mr. Obradovich presented his then patent-pending technologies to Honda's navigation system supplier, and then to Honda. Notwithstanding several attempts to partner with Honda, Honda showed no apparent interest. Mr. Obradovich later discovered that despite its feigned disinterest, Honda was, and still is, using his inventions without permission. Mr. Obradovich seeks just compensation for Honda's willful use of his inventions.

## II. ACI'S CASE-IN-CHIEF

At trial, ACI will prove: (1) its remaining claims of infringement, if any; (2) that Honda willfully infringes the Patents-in-Suit; (3) that ACI is entitled to just compensation no less than a reasonable royalty for Honda's infringement; and (4) that ACI's damages should be enhanced and this case declared exceptional based on Honda's willful infringement.[1]

---

[1] ACI incorporates herein its Memorandum of Contentions of Fact and Law, which provides more detail regarding the issues to be presented at trial and the law applicable thereto. (*See* Docket No. 339).

### A.     Honda's Infringement

This Court has already determined that Honda infringes certain claims of the '497, '465, '961 and '759 Patents.  Honda no longer denies infringement of any of the asserted claims of the '497 and '465 Patents.  Further, Honda has indicated that it may stipulate to infringement of the '795 Patent.  (*See* 5/23/08 Pretrial Conference Tr. at 23:5-6).  If Honda does not stipulate to infringement of the '795 Patent, at trial, ACI will prove Honda's infringement of that patent.

The '795 Patent relates to systems and methods for use in a vehicle for receiving, through an interface, a request concerning an aspect of the vehicle, which includes a user description of the aspect of the vehicle.  A processor can then select an appropriate display based on the user description, and the user can then select an option on the display using an input device.  To prove infringement of the '795 Patent, the claim as previously construed by the Court will be compared to the accused vehicles, *Terlep v. Brinkmann Corp.*, 418 F.3d 1379, 1381-1382 (Fed. Cir. 2005) (explaining infringement analysis), and ACI will establish infringement by the requisite preponderance of the evidence.  *See Warner-Lambert Co. v. Teva Pharms. USA, Inc.*, 418 F.3d 1326, 1341 n. 15 (Fed. Cir. 2005).  Honda's main dispute centers on whether the claim limitation "user description" is present in the vehicles accused of infringement.  ACI will establish infringement through the expert testimony of its technical expert, Dr. Jeffrey Caird.  ACI will also rely on the testimony from an IBM corporate witness on this issue.  Once ACI demonstrates infringement of the '795 Patent, ACI will have completed its infringement case.

### B.     Honda's Willful Infringement

Honda has in the past and continues to willfully infringe the Patents-in-Suit.  At trial, ACI will prove Honda's willful infringement through evidence surrounding its pre-litigation knowledge of ACI's patents from several sources: (1) meetings and correspondence in the late 1990s with Mr. Obradovich, one of the inventors of ACI's patents; (2) independent searching by Honda in 2003 for patents relevant to technologies Honda was intending to implement in its products; (3) an inquiry made by Honda's employee Mr. David Heath in 2005; and (4) a subpoena of Honda issued in 2005 in *Am. Calcar, Inc. v. BMW of N. Am.*, No. 3:04-cv-DMS (CAB) (S.D. Cal.) (referred to herein as the "BMW Action").  In view of this knowledge,

Honda's infringement was, and continues to be, objectively reckless. *In re Seagate Tech., LLC*, 497 F.3d 1360, 1371 (Fed. Cir. 2007) (*en banc*) (willful infringement requires showing of objectively high likelihood of infringement and that this likelihood was known or should have been known to the accused infringer). At trial, ACI will present the testimony of at least Mr. Obradovich, Mrs. Obradovich, Mr. Okamoto and Mr. Tamura in demonstrating Honda's willful infringement.

### 1. Honda's Objective Recklessness

ACI will establish at trial that beginning in 1998, Mr. and Mrs. Obradovich met with Honda's navigation system supplier, Alpine Electronics, and then with Honda to discuss the product offerings of Mr. Obradovich's companies and Mr. Obradovich's pending patent applications. Honda knew Mr. Obradovich from their dealings in the late 1980s, when Honda's Acura division purchased Dealer Directory and Road Atlas publications from Mr. Obradovich's company, Diversified Graphics, and from their dealings in the 1990s, when Honda's Acura division purchased abridged car owners manuals, known as QuickTips®, from another one of Mr. Obradovich's companies, Calcar, Inc.

When Mr. Obradovich met with Alpine in 1998, he knew that Alpine was supplying the navigation system that was being used in the Acura RL and Mr. Obradovich sought to work with Alpine to make that navigation system a platform for his inventions. Alpine recommended that Mr. Obradovich go directly to Honda, which Mr. Obradovich did. Mr. Obradovich proceeded to present his then patent-pending technologies to Honda. Shortly thereafter, on November 24, 1999, Mr. Obradovich informed Honda that his company's first patent had been granted by the U.S. Patent and Trademark Office ("PTO"), that it would issue shortly thereafter, and that other pending patent applications directed to the same and similar technology were pending. Honda had no further communication with Mr. Obradovich for several years.

Honda has admitted that it obtained affirmative knowledge of at least two of ACI's patents, one from the '355 Patent family and one from another patent family, *i.e.,* the '231 Patent family, as early as May 2003. Honda identified these ACI patents when it undertook internal (and allegedly privileged) freedom-to-operate searches concerning the accused vehicle features

during that time period. Yet, nothing was done by Honda to avoid infringement. Employing the applicable standards of commerce, *Seagate,* 497 F.3d at 1371 n.5, 1385, it would be objectively reckless for a sophisticated supplier of automobiles to have knowledge of at least two patents relevant to its activities, but then fail to take action to determine whether there are additional patents in the inventors'/assignee's portfolio that cover similar or related technology.

On March 24, 2004, ACI filed a complaint for patent infringement against BMW of North America in this Court. ACI asserted infringement of several patents, including all of the Patents-in-Suit. On September 23, 2005, BMW served Honda with a subpoena seeking documents relating to Honda's relationship with Mr. Obradovich and/or his patents from Honda's Acura division. The "definition section" of the subpoena identified all of the patents involved in the BMW Action, including all of the Patents-in-Suit in this action.

In response, Honda's in-house counsel, Mr. Duane Okamoto, spoke to BMW's counsel concerning prior art issues, allegedly conducted a search for documents pertaining to the "patents-in-suit" as that term was defined in the BMW subpoena, and provided written objections to BMW's subpoena using BMW's defined term. Honda also produced a copy of a manual for a 1996 Acura RL Navigation System to BMW. Mr. Okamoto was deposed in this action and testified about these events.

During the BMW Action, BMW brought several motions for summary judgment of non-infringement and invalidity. This Court upheld the validity of the ACI patents, finding the '497, '465 and '795 Patents not invalid. Honda's legal department failed to monitor the progress of the BMW Action. The BMW Action was dismissed with prejudice on June 28, 2006, after the parties reached a settlement. Honda's legal department failed to act after that settlement, or after its counsel received a copy of the BMW settlement agreement in connection with this lawsuit.

Honda expressed a renewed interest in Mr. Obradovich's inventions in 2005 while Mr. Obradovich was still involved in the BMW Action. After meeting with a Honda representative, Mr. Heath, and his assistant, Ms. Howell, in May 2005, Mr. Obradovich sent Mr. Heath and Ms. Howell a follow-up letter which included a listing of Mr. Obradovich's patents. Mr. Obradovich received no response.

Having knowledge of the above facts, particularly knowledge that a competing car manufacturer was being sued on several ACI patents, a reasonable factfinder should find that Honda failed to comply with the standards of commerce, and was objectively reckless in failing to monitor the litigation in the BMW Action. If Honda had merely checked the docket in the BMW Action, it would have seen that this Court upheld the validity of each of the patents challenged by BMW, including the '465 and '497 Patents.

Further, with respect to the '465 Patent, this Court has now affirmatively found that Honda is an infringer of the '465 Patent (*see* Docket No. 71, Order Granting in Part and Denying in Part ACI's Motion for Summary Judgment of Infringement of the '795 and '465 Patents). Moreover, Honda challenged the validity of the '465 Patent with a summary judgment motion in this action, and the Court again found that the '465 Patent is not invalid. (4/29/08 Order Denying Honda's Motion for Summary Judgment of Invalidity of the '465 Patent). Thus, this Court has determined: (1) that the '465 Patent is not invalid *two times*; and (2) that no reasonable juror could find that Honda is not an infringer of that patent. Further, the Court has found that Honda infringes the '497 Patent (*see* Docket No. 315, Order Granting ACI's Renewed Motion for Summary Judgment of Infringement of the '497 Patent) and the '961 and '759 Patents. (*See* 4/27/08 Order Granting ACI's Renewed Motion for Summary Judgment of Infringement of the '961 and '759 Patents). As such, Honda's infringement of at least the '465, '497, '961 and '759 Patents was – and continues to be – in reckless disregard of ACI's patent rights. Although it could have taken steps to avoid continued infringement, Honda has refused to do so.

    **2.**  **Honda Knew or Should Have Known of Its High Likelihood of Infringement**

Honda has no viable basis for asserting that it does not willfully infringe several of the patents in the '355 Patent family, particularly the '465 and '497 Patents. It is clear that Honda had notice of at least one member of the '355 Patent family, in May 2003. Moreover, it is beyond dispute that Honda received notice of *all of the Patents-in-Suit* in May and September of 2005, and knew they were being asserted against BMW, one of Honda's competitors. With this knowledge, Honda should have investigated the possibility of its own infringement and monitored the docket of the BMW Action. Honda would have then known that this Court had

PLAINTIFF AMERICAN CALCAR, INC.'S TRIAL BRIEF   06cv2433
5

upheld the validity of the '465 and '497 Patents, against BMW's challenges to their validity. Honda's failure to investigate the facts was objectively unreasonable.

Honda either knew or should have known of the high likelihood of its infringement of the Patents-in-Suit (at the very least, the '465 and '497 Patents) in 2005. *See, e.g., VNUS Med. Techs., Inc. v. Diomed Holdings, Inc.*, No. 05-2972, 2007 WL 3165548, at *3-4 (N.D. Cal. Oct. 24, 2007) (applying post-*Seagate* standard and denying defendant Diomed's motion for summary judgment of no willful infringement where plaintiff presented evidence that Diomed had actual knowledge of plaintiff's patents by a certain date); *Cohesive Techs., Inc. v. Waters Corp.*, Nos. 98-12308, 99-11528, 01-12307, 2007 WL 2746805, at *16 (D. Mass. Aug. 31, 2007) (applying *Seagate* willfulness standard and indicating factors to be considered include "whether there was continued infringement after notice of probable infringement was received . . .").

### C. ACI's Damages as a Result of Honda's Infringement

ACI seeks just compensation for Honda's continued infringement of the Patents-in-Suit amounting to no less than a reasonable royalty. *See* 35 U.S.C. § 284; *see Georgia-Pacific Corp. v. U.S. Plywood Co.,* 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970), *modified and aff'd,* 446 F.2d 295 (2d Cir.), *cert. denied,* 404 U.S. 870 (1971). ACI will present fact testimony of Honda corporate witnesses, and expert testimony of its damages expert Mr. Terry Korn and its technical expert, Dr. Jeffrey Caird, with respect to the appropriate measure of damages and the value of the inventions claimed in the Patents-in-Suit.

ACI intends to show that based on a thorough analysis of the *Georgia-Pacific* factors, the minimum reasonable royalty rate for the five Patents-in-Suit is 5.75% of the sales price of the navigation system for vehicles that infringe every Patent-in-Suit. This figure was reached using a conservative approach of reducing the marginal royalty rate as additional patents are "stacked" or added to the number of infringed patents as follows: 3.5% for the '961 & '759 Patents (100% of its stand alone royalty rate); 1.75 % for '465 & '795 Patents (50% of its stand alone royalty rate); and 0.5% for the '497 Patent (25% of its stand alone royalty rate). There are certain vehicles that infringe two of the patent groupings, *i.e.,* the '465, '795 and '497 Patents. For these, a reasonable royalty rate would be 4.5% (3.5% for the '465 & '795 Patents and 1% for the

'497 Patent (50% of its stand alone royalty rate)). These reasonable royalty rates should be applied to a royalty base which reflects the sales price of the accused navigational system multiplied by the total number of vehicles sold. Once ACI's damages are established based on the foregoing royalty rates, prejudgment interest should be applied for all past damages. The same royalty rates would be applied to all vehicles on a going forward basis until the expiration of the Patents-in-Suit, or until such time when Honda ceases infringement (either voluntarily of by way of an injunction).

ACI additionally seeks enhanced damages based on Honda's willful infringement is reached. *Seagate,* 497 F.3d at 1368 (recognizing long-standing principle that finding of willful infringement permits award of enhanced damages). ACI is also entitled to attorneys' fees and costs, as Honda's willful infringement renders this an exceptional case. *See id.*

### III.   HONDA'S CASE-IN-CHIEF

At trial, Honda will attempt to prove that the Patents-in-Suit are either invalid or unenforceable. Contrary to Honda's assertions, the inventions disclosed and claimed in the Patents-in-Suit meet the statutory requirements for patentability as set forth in Title 35 of the United States Code, including §§ 102, 103 and 112. Further, Honda's claim that the Patents-in-Suit are unenforceable due to inequitable conduct is without merit.

#### A.   Validity of the Patents-in-Suit

Each of the Patents-in-Suit was duly and legally issued following a thorough examination at the PTO. Honda has a heavy burden in its attempt to prove invalidity of any of the Patents-in-Suit. "An issued patent is presumed to be valid, and the burden of establishing invalidity as to any claim of a patent rests upon the party asserting such invalidity. Clear and convincing evidence is required to invalidate a patent." *Impax Labs., Inc. v. Aventis Pharm. Inc.,* 468 F.3d 1366, 1378 (Fed. Cir. 2006) (citation omitted); *see also* 35 U.S.C. § 282.

Honda argues that the Patents-in-Suit are invalid as anticipated and/or obvious. Further, for the '961 and '759 Patents, Honda additionally argues that these patents do not meet the requirements of 35 U.S.C. § 112. At trial, ACI will successfully rebut Honda's case on invalidity through the testimony of its technical expert, Dr. Jeffrey Caird and through cross-

examination of Honda's technical expert, Mr. Scott Andrews. ACI may also rely on the testimony of Mr. Michael Obradovich, Mr. Alex Yip and Mr. Mikio Ohashi. Further, ACI will challenge whether certain art relied upon by Honda even constitutes prior art.

### B. Honda's Claim of Inequitable Conduct Is Wholly Without Merit

Honda claims that this Court should determine as a matter of equity that the Patents-in-Suit are unenforceable due to inequitable conduct. In particular, Honda alleges that the patent applicants did not disclose the "details" of the 1996 model year 3.5 Acura RL Navigation System to the PTO. Honda's theory must fail. Honda simply cannot meet its considerable burden to prove inequitable conduct. Specifically Honda would have to present clear and convincing evidence both that: (1) ACI or others with a duty of disclosure failed to disclose "material" information to the PTO during prosecution of the Patents-in-Suit; and (2) those with a duty to disclose intended to deceive the PTO. *See Molins PLC v. Textron, Inc.*, 48 F.3d 1172, 1178 (Fed. Cir. 1995). This it cannot do.

ACI will successfully rebut Honda's claim of inequitable conduct at trial. In doing so, ACI intends to rely on the testimony of the inventors of the Patents-in-Suit and their patent attorney, Mr. Alex Yip. Although the court does not need to hear any expert testimony on this issue, if it decides to permit such testimony from Honda's patent law expert, Mr. Godici, ACI will rely on rebuttal testimony from ACI's patent law expert, Mr. Harry Manbeck.

The issue of inequitable conduct is within the exclusive province of the Court to decide. *Dow Chem. Co. v. Exxon Corp.*, 139 F.3d 1470, 1475 n. 4 (Fed. Cir. 1998). If clear and convincing evidence of materiality and intent are presented, the court still must balance these findings and make an equitable determination of whether the patent should be deemed unenforceable. *Hoffman-La Roche, Inc. v. Promega Corp.*, 323 F.3d 1354, 1359 (Fed. Cir. 2003).

Further, even if Honda could establish inequitable conduct with the respect to any one of ACI's patents, Honda could not establish facts that would impact the enforceability of ACI's other patents (under the so-called doctrine of infectious unenforceability). Honda could not make the required showing that inequitable conduct in one patent application was so egregious

and widespread as to result in the unenforceability of a related patent.  *See, e.g., Baxter Int'l Inc. v. McGaw, Inc.*, 149 F.3d 1321, 1332 (Fed. Cir. 1998).

### 1. There Was No Failure to Disclose Material Prior Art to the PTO

Honda cannot prove by clear and convincing evidence that certain alleged "details" of the 1996 Acura RL 3.5 Navigation System would have been considered material by a reasonable examiner in making a patentability determination as to the '355 and '497 Patents at least because there is no evidence that the subject Acura Navigation System disclosed an "activated option indicating a third status" as recited in ACI's applicable claims.

Information is considered "material" if it establishes, by itself or in combination with other information, a *prima facie* case of unpatentability of a claim, or it if refutes a position the applicants take asserting an argument of patentability.  37 C.F.R. § 1.56.  Information cannot be material if it is merely "cumulative" to information already of record, s*ee, e.g., Honeywell Int'l Inc. v. Universal Avionics Sys. Corp.*, 488 F.3d 982, 1000 (Fed. Cir. 2007).

According to the plain language of the claim, the option is displayed, and when activated, the activated option itself must indicate a third status on the display.  The 1996 Acura RL Navigation System appears to have included an LCD display, where options can be shown. However, Honda cannot establish that the 1996 Acura RL Navigation System displays the claimed third status.  Even if the third status did not have to be viewed on the LCD display, the claim requires that "*the activated option* indicat[e] a third status . . . ."  While a non-specific "beep" as present in Honda's proffered, but not yet established, RL may indicate *something*, the claim requires *the activated option* do the indicating.  An example of where the status could be audible and meet this limitation would be if the menu options themselves were audible.

Thus, the 1996 Acura RL Navigation System proffered by Honda lacks at least the "activated option indicating a third status" claim element.  As it fails to disclose all three statuses required by the claims of the '497 and '355 Patents, the 1996 Acura RL Navigation System is cumulative of at least U.S. Patent No. 5,555,172 to Potter ("Potter"), which was before the PTO during prosecution.  Potter disclosed two but not all three statuses.  Further aspects of the Acura

RL Navigation System were disclosed to the PTO, either in the text of the specification, or the New York Times article cited to the PTO.

Thus, additional "details" directed to the 1996 Acura 3.5 RL Navigation System would not have been considered by a reasonable examiner to be important to his decision on patentability, and would not have been material to patentability.

### 2. Applicants Did Not Intend to Deceive the PTO

Honda also cannot meet its burden of establishing deceptive intent by clear and convincing evidence. *See Molins PLC,* 48 F.3d at 1181. There is no dispute the navigation system of the '96RL was disclosed to the PTO during prosecution of the '355 Patent application. It is discussed in the Background of the Invention section of the '355 Patent, and again in the Detailed Description of the Invention.

Further, the record is replete with evidence of good faith, including ACI's disclosure of the 1996 Acura RL Navigation System Manual and Honda's Preliminary Invalidity Contentions to the PTO soon after these were provided to ACI. It is beyond dispute that the Examiner in the Reexamination proceedings for both the '355 and '497 Patents had the allegedly material information before him and was able to consider its relevancy to the patentability of the claims.

In view of the evidence which will be presented at trial, there is no credible reason to conclude that Mr. Obradovich or others with a duty to disclose material information intended to hide information about the 1996 Acura RL navigation system from the PTO. There is no evidence that the car the inventors sat in had a beep, that they heard a beep, or thought that such a beep was relevant to the patent application filed six months later. Thus there is no evidence – and certainly not clear and convincing evidence – of inequitable conduct.

## IV.    CONCLUSION

At trial, ACI will prove any remaining claims of infringement, that Honda is a willful infringer, and that ACI is entitled to damages, enhanced damages and attorneys' fees. Further, ACI will successfully rebut Honda's challenges to the validity and enforceability of the Patents-in-Suit.

| | | |
|---|---|---|
| 1 | Dated: June 6, 2008 | Respectfully submitted, |
| 2 | | /s/   *Richard A. Clegg* |
| 3 | | _____ |
| | | Richard A. Clegg (SBN 211213) |
| 4 | | SELTZER CAPLAN MCMAHON VITEK |
| | | 750 B Street, Suite 2100 |
| 5 | | San Diego, California  92101 |
| 6 | | Telephone: (619) 685-3086 |
| | | Facsimile:  (619) 685-3100 |

*Of Counsel:*
Gary M. Butter
Paul A. Ragusa
Robert L. Maier
Jennifer Cozeolino
BAKER BOTTS L.L.P.
30 Rockefeller Plaza, 44th Floor
New York, New York  10112-4498
Telephone: (212) 408-2500
Facsimile:  (212) 408-2501
gary.butter@bakerbotts.com
paul.ragusa@bakerbotts.com
robert.maier@bakerbotts.com
jennifer.cozeolino@bakerbotts.com

*Attorneys for Plaintiff,*
*AMERICAN CALCAR, INC.*