Richard A. Clegg (SBN 211213)
SELTZER CAPLAN MCMAHON VITEK
750 B Street, Suite 2100
San Diego, California 92101
Telephone: (619) 685-3086
Facsimile:  (619) 685-3100

Gary M. Butter (*pro hac vice*)
Robert L. Maier (*pro hac vice*)
Edward R. Tempesta (*pro hac vice*)
BAKER BOTTS L.L.P.
30 Rockefeller Plaza, 44th Floor
New York, New York  10112-4498
Telephone: (212) 408-2500
Facsimile:  (212) 408-2501

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMERICAN CALCAR, INC.,<br><br>        Plaintiff,<br><br>v.<br><br>AMERICAN HONDA MOTOR CO., INC.,<br>and HONDA OF AMERICA<br>MANUFACTURING, INC.,<br><br>        Defendants. | Civil Action No.: 06-cv-2433-DMS (CAB)<br><br><br>**PARTIES' JOINT SUBMISSION OF UNDISPUTED JURY INSTRUCTIONS [PLAIN VERSION]** |

        The Parties jointly submit the following plain version of  jury instructions as to which there is no dispute, except as specifically noted for any particular instruction.

## JURY INSTRUCTIONS -- TABLE OF CONTENTS

A.    Preliminary Instructions

    1.    Duty of Jury

    2.    What a Patent Is and How One is Obtained

    3.    Patents At Issue

    4.    Summary of Contentions

    5.    What Is Evidence

    6.    What Is Not Evidence

    7.    Evidence For Limited Purpose

    8.    Direct and Circumstantial Evidence

    9.    Ruling on Objections

    10.   Credibility of Witnesses

    11.   Conduct of the Jury

    12.   No Transcript Available to Jury

    13.   Taking Notes

    14.   Burden Of Proof—Preponderance of the Evidence

    15.   Burden Of Proof—Clear and Convincing Evidence

    16.   Infringement—Burden Of Proof

    17.   Invalidity—Burden Of Proof

    18.   Inequitable Conduct—Burden Of Proof

    19.   Willful Infringement—Burden Of Proof

    20.   Jury to be Guided by Official English Translation/Interpretation

    21.   Use of Interpreters in Court

    22.   Outline of Trial

B.    Instructions During Trial

    1.    Cautionary Instruction

    2.    Bench Conferences and Recesses

3.    Stipulated Testimony

4.    Stipulations of Fact

5.    Judicial Notice

6.    Deposition in Lieu of Live Testimony

7.    Foreign Language Testimony

8.    Evidence for Limited Purpose

9.    Impeachment Evidence—Witness

10.   Use of Interrogatories of a Party

C.    Final Jury Instructions

1.    Duty Of Jury

2.    What Is Evidence

3.    What Is Not Evidence

4.    Jury To Be Guided by Official English Translation/Interpretation

5.    Direct and Circumstantial Evidence

6.    Credibility of Witnesses

7.    Expert Opinion

8.    Charts and Summaries Not Received in Evidence

9.    Charts and Summaries in Evidence

10.   Impeachment Evidence—Witness

11.   Summary of Contentions

12.   Interpretation of Claims

13.   Infringement – Burden of Proof

14.   Direct Infringement

15.   Literal Infringement

16.   Infringement Under the Doctrine of Equivalents

17.   Means-Plus-Function Claims

18.   Willful Infringement

19.    Invalidity—Burden Of Proof

20.    Written Description Requirement

21.    Indefiniteness

22.    Anticipation

23.    Statutory Bars

24.    Obviousness

25.    Scope and Content of Prior Art

26.    Differences Over the Prior Art

27.    Level of Ordinary Skill

28.    Inequitable Conduct

29.    Re-Examination

30.    Damages – Burden of Proof

31.    Reasonable Royalty – Definition

32.    Date of Commencement – Products

D.    Concluding Instructions

1.    Duty To Deliberate

2.    Use of Notes

3.    Communication with Court

4.    Return of Verdict

5.    Additional Instructions of Law [If Necessary]

6.    Deadlocked Jury [If Necessary]

E.    Glossary

# **PRELIMINARY INSTRUCTIONS**

**DUTY OF JURY**

Ladies and gentlemen: You are now the jury in this case. It is my duty to instruct you on the law.

These instructions are preliminary instructions to help you understand the principles that apply to civil trials and to help you understand the evidence as you listen to it.  You will be allowed to keep this set throughout the trial to which to refer.  This set of instructions is not to be taken home and must remain in the jury room when you leave in the evenings.  At the end of the trial, I will give you a final set of instructions.  It is the final set of instructions which will govern your deliberations.

You must not infer from these instructions or from anything I may say or do as indicating that I have an opinion regarding the evidence or what your verdict should be.

It is your duty to find the facts from all the evidence in the case.  To those facts you will apply the law as I give it to you.  You must follow the law as I give it to you whether you agree with it or not.  And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy.  That means that you must decide the case solely on the evidence before you.  You will recall that you took an oath to do so.

In following my instructions, you must follow all of them and not single out some and ignore others; they are all important.

## WHAT A PATENT IS AND HOW ONE IS OBTAINED

This case involves a dispute relating to five United States patents. Before summarizing the positions of the parties and the legal issues involved in the dispute, let me take a moment to explain what a patent is and how one is obtained.

Patents are granted by the United States Patent and Trademark Office (sometimes called "the PTO"). The process of obtaining a patent is called patent prosecution. A valid United States patent gives the patent owner the right for up to 20 years from the date the patent application was filed to prevent others from making, using, offering to sell, or selling the patented invention within the United States or from importing it into the United States without the patent holder's permission. A violation of the patent owner's rights is called infringement. The patent owner may try to enforce a patent against persons believed to be infringers by a lawsuit filed in federal court.

To obtain a patent one must file an application with the PTO. The PTO is an agency of the federal government and employs trained examiners who review applications for patents. The application includes what is called a "specification," which must contain a written description of the claimed invention telling what the invention is, how it works, how to make it and how to use it so others skilled in the field will know how to make or use it. The specification concludes with one or more numbered sentences. These are the patent "claims." When the patent is eventually granted by the PTO, the claims define the boundaries of its protection and give notice to the public of those boundaries.

After the applicant files the application, a PTO patent examiner reviews the patent application to determine whether the claims are patentable and whether the specification adequately describes the invention claimed. In examining a patent application, the patent examiner reviews records available to the PTO for what is referred to as "prior art." The examiner also will review prior art if it is submitted to the PTO by the applicant. Prior art is defined by law, and I will give you at a later time specific instructions as to what constitutes

prior art.  However, in general, prior art includes things that existed before the claimed invention, that were publicly known, or used in a publicly accessible way in this country, or that were patented or described in a publication in any country.  The examiner considers, among other things, whether each claim defines an invention that is new, useful, and not obvious in view of the prior art [known to the examiner][1].  A patent lists the prior art that the examiner considered; this list is called the "cited references."

After the prior art search and examination of the application, the patent examiner then informs the applicant in writing what the examiner has found and whether any claim is patentable, and thus will be "allowed."  This writing from the patent examiner is called an "office action."  If the examiner rejects the claims, the applicant then responds and sometimes changes the claims or submits new claims.  This process, which takes place only between the examiner and the patent applicant, may go back and forth for some time until the examiner is satisfied that the application and claims meet the requirements for a patent.  The papers generated during this time of communicating back and forth between the patent examiner and the applicant make up what is called the "prosecution history." All of this material becomes available to the public no later than the date when the patent issues.

The fact that the PTO grants a patent does not necessarily mean that any invention claimed in the patent, in fact, deserves the protection of a patent.  For example, the PTO may not have had available to it all the information that will be presented to you.  A person accused of infringement has the right to argue here in federal court that a claimed invention in the patent is invalid because it does not meet the requirements for a patent.

---

[1] Deviation from model.  ACI objects to the inclusion on this language.

## PATENTS AT ISSUE

I am now going to walk you through the parts of a patent.

The cover page of the patent provides identifying information, including the date the patent issued and patent number along the top, as well as the inventor's name or names, the filing dates for the pertinent patent applications, and a list of the prior art publications that were before the PTO when the patent was applied for.

The specification of the patent begins with an abstract, includes the drawings and written description of the invention, and ends with the claims of the patent.

The abstract is a brief statement about the subject matter of the invention.

The drawings depict various aspects, features, or embodiments of the invention. They are described in words later in the text.

The written description of the invention appears after the drawings. In this part of the patent, each page is divided into two columns, which are numbered at the top of the page. The lines on each page are also numbered. The written description includes a background section, a summary of the invention, and a detailed description of the invention.

Finally, the specification concludes with the claim with one or more numbered sentences. These are the patent "claims." The claims may be divided into a number of parts, which are referred to as "claim limitations." The claims are important because, while the claims are read in light of the specification, only the claims of a patent can be infringed. Each of the claims must be considered individually. Patent infringement occurs when one or more claims of the patent are infringed.

**DISPUTED -  SUMMARY OF CONTENTIONS**

## WHAT IS EVIDENCE

The evidence you are to consider in deciding what the facts are consists of:

1.      the sworn testimony of any witness, whether live or by deposition;

2.      the exhibits which are received into evidence; and

3.      any facts to which the lawyers have agreed.

## WHAT IS NOT EVIDENCE

In reaching your verdict, you may consider only the testimony and exhibits received into evidence. Certain things are not evidence, and you may not consider them in deciding what the facts are. I will list them for you:

(1) Arguments and statements by lawyers are not evidence. The lawyers are not witnesses. What they have said in their opening statements, will say in their closing arguments, and at other times is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

(2) Questions and objections by lawyers are not evidence. Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it.

(3) Testimony that has been excluded or stricken, or that you have been instructed to disregard, is not evidence and must not be considered.  In addition sometimes testimony and exhibits are received only for a limited purpose; when I give a limiting instruction, you must follow it.

(4) Anything you may have seen or heard when the court was not in session is not evidence. You are to decide the case solely on the evidence received at the trial.

## EVIDENCE FOR LIMITED PURPOSE

Some evidence may be admitted for a limited purpose only.

When I instruct you that an item of evidence has been admitted for a limited purpose, you must consider it only for that limited purpose and for no other.

## DIRECT AND CIRCUMSTANTIAL EVIDENCE

Evidence may be direct or circumstantial.  Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did.  Circumstantial evidence is proof of one or more facts from which you could find another fact.  You should consider both kinds of evidence.  The law makes no distinction between the weight to be given to either direct or circumstantial evidence.  It is for you to decide how much weight to give to any evidence.

**RULING ON OBJECTIONS**

There are rules of evidence that control what can be received into evidence.  When a lawyer asks a question or offers an exhibit into evidence and a lawyer on the other side thinks that it is not permitted by the rules of evidence, that lawyer may object.  If I overrule the objection, the question may be answered or the exhibit received.  If I sustain the objection, the question cannot be answered, and the exhibit cannot be received.  Whenever I sustain an objection to a question, you must ignore the question and must not guess what the answer might have been.

Sometimes I may order that evidence be stricken from the record and that you disregard or ignore the evidence.  That means that when you are deciding the case, you must not consider the evidence that I told you to disregard.

## CREDIBILITY OF WITNESSES

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, or part of it, or none of it.  Proof of a fact does not necessarily depend on the number of witnesses who testify about it.

In considering the testimony of any witness, you may take into account:

(1) the opportunity and ability of the witness to see or hear or know the things testified to;

(2) the witness's memory;

(3) the witness's manner while testifying;

(4) the witness's interest in the outcome of the case and any bias or prejudice;

(5) whether other evidence contradicted the witness's testimony;

(6) the reasonableness of the witness's testimony in light of all the evidence; and

(7) any other factors that bear on believability.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify about it.

## CONDUCT OF THE JURY

I will now say a few words about your conduct as jurors.

First, you are not to discuss this case with anyone, including members of your family, people involved in the trial, or anyone else; this includes discussing the case in internet chat rooms or through internet "blogs," internet bulletin boards or e-mails.  Nor are you allowed to permit others to discuss the case with you. If anyone approaches you and tries to talk to you about the case, please let me know about it immediately;

Second, do not read or listen to any news stories, articles, radio, television, or online reports about the case or about anyone who has anything to do with it;

Third, do not do any research, such as consulting dictionaries, searching the Internet or using other reference materials, and do not make any investigation about the case on your own;

Fourth, if you need to communicate with me simply give a signed note to the clerk to give to me; and

Fifth, do not make up your mind about what the verdict should be until after you have gone to the jury room to decide the case and you and your fellow jurors have discussed the evidence. Keep an open mind until then.

Finally, until this case is given to you for your deliberation and verdict, you are not to discuss the case with your fellow jurors.

## NO TRANSCRIPT AVAILABLE TO JURY

During deliberations, you will have to make your decision based on what you recall of the evidence. You will not have a transcript of the trial. I urge you to pay close attention to the testimony as it is given.

If at any time you cannot hear or see the testimony, evidence, questions or arguments, let me know so that I can correct the problem.

## TAKING NOTES

If you wish, you may take notes to help you remember the evidence. If you do take notes, please keep them to yourself until you and your fellow jurors go to the jury room to decide the case. Do not let note-taking distract you. When you leave, your notes should be left in the jury room.  No one will read your notes.  They will be destroyed at the conclusion of the case.

Whether or not you take notes, you should rely on your own memory of the evidence. Notes are only to assist your memory. You should not be overly influenced by your notes or those of your fellow jurors.

## BURDEN OF PROOF—PREPONDERANCE OF THE EVIDENCE

When a party has the burden of proof on any claim by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim is more probably true than not true.

## BURDEN OF PROOF—CLEAR AND CONVINCING EVIDENCE

When a party has the burden of proving any claim or defense by clear and convincing evidence, it means you must be persuaded by the evidence that the claim or defense is highly probable.  This is a higher standard of proof than proof by a preponderance of the evidence.

## INFRINGEMENT—BURDEN OF PROOF

I will now instruct you on the rules you must follow in deciding whether ACI has proven that American Honda has infringed one or more of the asserted claims of the '795 Patent.  To prove infringement of any claim, ACI must persuade you that it is more likely than not that American Honda has infringed that claim.

## INVALIDITY—BURDEN OF PROOF

I will now instruct you on the rules you must follow in deciding whether American Honda has proven that one or more of the asserted claims of the patents-in-suit are invalid. In order to prove invalidity of any claim, American Honda must persuade you that it is highly probable that that claim is invalid.

**DISPUTED - INEQUITABLE CONDUCT/UNENFORCEABILITY - BURDEN OF PROOF**

## WILLFUL INFRINGEMENT—BURDEN OF PROOF

I will now instruct you on the rules you must follow in deciding whether ACI has proven that American Honda has willfully infringed one or more of the asserted claims of any one of the patents-in-suit.  In order to prove willful infringement of any one of the claims, ACI must persuade you that it is highly probable that American Honda willfully infringed the claim.

**JURY TO BE GUIDED BY OFFICIAL ENGLISH
TRANSLATION/INTERPRETATION**

Languages other than English may be used during this trial.

The evidence to be considered by you is only that provided through the certified interpreters. Although some of you may know Japanese, it is important that all jurors consider the same evidence. Therefore, you must accept the English interpretation. You must disregard any different meaning.

## USE OF INTERPRETERS IN COURT

You must not make any assumptions about a witness or a party based solely upon the use of an interpreter to assist that witness or party.

**DISPUTED - OUTLINE OF TRIAL**

**INSTRUCTIONS DURING TRIAL**

## CAUTIONARY INSTRUCTIONS—FIRST RECESS

We are about to take our first break during the trial, and I want to remind you of the instructions I gave you earlier.  Until the trial is over, you are not to discuss this case with anyone, including your fellow jurors, members of your family, people involved in the trial, or anyone else, nor are you allowed to permit others to discuss the case with you.  If anyone approaches you and tries to talk to you about the case, please let me know about it immediately.  Do not read or listen to any news reports of the trial.  Finally, you are reminded to keep an open mind until all the evidence has been received and you have heard the arguments of counsel, the instructions of the court, and the views of your fellow jurors.

If you need to speak with me about anything, simply give a signed note to the marshal, clerk, or law clerk to give to me.

I will not repeat these admonitions each time we recess or adjourn, but you will be reminded of them on such occasions.

## BENCH CONFERENCES AND RECESSES

From time to time during the trial, it may become necessary for me to talk with the attorneys out of the hearing of the jury, either by having a conference at the bench when the jury is present in the courtroom, or by calling a recess. Please understand that while you are waiting, we are working. The purpose of these conferences is not to keep relevant information from you, but to decide how certain evidence is to be treated under the rules of evidence and to avoid confusion and error.

Of course, we will do what we can to keep the number and length of these conferences to a minimum. I may not always grant an attorney's request for a conference. Do not consider my granting or denying a request for a conference as any indication of my opinion of the case or of what your verdict should be.

## STIPULATED TESTIMONY

The parties have agreed what [*witness*]'s testimony would be if called as a witness. You should consider that testimony in the same way as if it had been given here in court.

## STIPULATIONS OF FACT

The parties have agreed to certain facts that have been stated to you or maybe referred to as "stipulated."  You should therefore treat these facts as having been proved.

## JUDICIAL NOTICE

The court has decided to accept as proved the fact that [*state fact*], even though no evidence has been introduced on the subject.  You must accept this fact as true.

## DEPOSITION IN LIEU OF LIVE TESTIMONY

A deposition is the sworn testimony of a witness taken before trial.  The witness is placed under oath to tell the truth and lawyers for each party may ask questions.  The questions and answers are recorded.  When a person is unavailable to testify at trial, the deposition of that person may be used at the trial.

You should consider deposition testimony, presented to you in court in lieu of live testimony, insofar as possible, in the same way as if the witness had been present to testify.

**[In the event that deposition testimony is read rather than played via video,]**[2] do not place any significance on the behavior or tone of voice of any person reading the questions or answers.

---

[2] Deviation from model.  The parties agree to include this language.

## FOREIGN LANGUAGE TESTIMONY

Witnesses who do not speak English or are more proficient in another language testify through a certified interpreter.  Although some of you may know Japanese, it is important that all jurors consider the same evidence. Therefore, you must accept the interpreter's translation of the witness's testimony. You must disregard any different meaning.

**EVIDENCE FOR LIMITED PURPOSE**

The testimony you are about to hear may be considered only for the limited purpose of [_describe purpose_] and for no other purpose.

## IMPEACHMENT EVIDENCE—WITNESS

The evidence that a witness has previously made statements or taken actions that are alleged to be inconsistent with the testimony he has provided during this trial may be considered, along with all other evidence, in deciding whether or not to believe the witness and how much weight to give to the testimony of the witness and for no other purpose.

## USE OF INTERROGATORIES OF A PARTY

Evidence will now be presented to you in the form of answers of one of the parties to written interrogatories submitted by the other side.  These answers were given in writing and under oath, before the actual trial, in response to questions that were submitted in writing under established court procedures.  You should consider the answers, insofar as possible, in the same way as if they were made from the witness stand.

**<u>FINAL JURY INSTRUCTIONS</u>**

**DUTY OF JURY**

Members of the Jury: Now that you have heard all of the evidence and the arguments of the attorneys, it is my duty to instruct you as to the law of the case.

Each of you has received a copy of these instructions that you may take with you to the jury room to consult during your deliberations.

You must not infer from these instructions or from anything I may say or do as indicating that I have an opinion regarding the evidence or what your verdict should be.

It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath to do so.

In following my instructions, you must follow all of them and not single out some and ignore others; they are all important.

## WHAT IS EVIDENCE

The evidence you are to consider in deciding what the facts are consists of:

      1.      the sworn testimony of any witness, whether live or by deposition;

      2.      the exhibits which were received into evidence; and

      3.      any facts to which the lawyers have agreed.

## WHAT IS NOT EVIDENCE

In reaching your verdict, you may consider only the testimony and exhibits received into evidence. Certain things are not evidence, and you may not consider them in deciding what the facts are. I will list them for you:

(1) Arguments and statements by lawyers are not evidence. The lawyers are not witnesses. What they have said in their opening statements, will say in their closing arguments, and at other times is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

(2) Questions and objections by lawyers are not evidence. Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it.

(3) Testimony that has been excluded or stricken, or that you have been instructed to disregard, is not evidence and must not be considered.  In addition sometimes testimony and exhibits are received only for a limited purpose; when I have given a limiting instruction, you must follow it.

(4) Anything you may have seen or heard when the court was not in session is not evidence. You are to decide the case solely on the evidence received at the trial.

**JURY TO BE GUIDED BY OFFICIAL ENGLISH
TRANSLATION/INTERPRETATION**

Languages other than English were used during this trial.

The evidence to be considered by you is only that provided through the certified interpreters. Although some of you may know Japanese, it is important that all jurors consider the same evidence. Therefore, you must accept the English interpretation. You must disregard any different meaning.

## DIRECT AND CIRCUMSTANTIAL EVIDENCE

Evidence may be direct or circumstantial.  Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did.  Circumstantial evidence is proof of one or more facts from which you could find another fact.  You should consider both kinds of evidence.  The law makes no distinction between the weight to be given to either direct or circumstantial evidence.  It is for you to decide how much weight to give to any evidence.

## CREDIBILITY OF WITNESSES

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, or part of it, or none of it.  Proof of a fact does not necessarily depend on the number of witnesses who testify about it.

In considering the testimony of any witness, you may take into account:

(1) the opportunity and ability of the witness to see or hear or know the things testified to;

(2) the witness's memory;

(3) the witness's manner while testifying;

(4) the witness's interest in the outcome of the case and any bias or prejudice;

(5) whether other evidence contradicted the witness's testimony;

(6) the reasonableness of the witness's testimony in light of all the evidence; and

(7) any other factors that bear on believability.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify about it.

## EXPERT OPINION

Some witnesses, because of education or experience, are permitted to state opinions and the reasons for those opinions.

Opinion testimony should be judged just like any other testimony. You may accept it or reject it, and give it as much weight as you think it deserves, considering the witness's education and experience, the reasons given for the opinion, and all the other evidence in the case.

**CHARTS AND SUMMARIES NOT RECEIVED IN EVIDENCE**

Certain charts and summaries not received in evidence have been shown to you in order to help explain the contents of books, records, documents, or other evidence in the case.  They are not themselves evidence or proof of any facts.  If they do not correctly reflect the facts or figures shown by the evidence in the case, you should disregard these charts and summaries and determine the facts from the underlying evidence.

## CHARTS AND SUMMARIES IN EVIDENCE

Certain charts and summaries have been received into evidence to illustrate information brought out in the trial.  Charts and summaries are only as good as the underlying evidence that supports them.  You should, therefore, give them only such weight as you think the underlying evidence deserves.

## IMPEACHMENT EVIDENCE—WITNESS

The evidence that a witness has previously made statements or taken actions that are alleged to be inconsistent with the testimony he has provided during this trial may be considered, along with all other evidence, in deciding whether or not to believe the witness and how much weight to give to the testimony of the witness and for no other purpose.

**DISPUTED - SUMMARY OF CONTENTIONS**

**DISPUTED - INTERPRETATION OF CLAIMS**

## INFRINGEMENT – BURDEN OF PROOF

I will now instruct you on the rules you must follow in deciding whether ACI has proven that American Honda has infringed one or more of the asserted claims of the '795 Patent.  To prove infringement of any claim, ACI must persuade you that it is more likely than not that American Honda has infringed that claim.

## DIRECT INFRINGEMENT

A patent's claims define what is covered by the patent.  A product directly infringes a patent if it is covered by at least one claim of the patent.

Deciding whether a claim has been directly infringed is a two-step process.  The first step is to decide the meaning of the patent claim.  I have already made this decision, and I have already instructed you as to the meaning of the asserted patent claims.  The second step is to decide whether American Honda has made, used, sold, offered for sale or imported within the United States a product covered by a claim of the '795 Patent.  You, the jury, make this decision.

With one exception, you must consider each of the asserted claims of the patent individually, and decide whether American Honda's product infringes that claim.  The one exception to considering claims individually concerns dependent claims.  A dependent claim includes all of the requirements of a particular independent claim, plus additional requirements of its own.  As a result, if you find that an independent claim is not infringed, you then must also find that its dependent claims are not infringed.  On the other hand, if you find that an independent claim has been infringed, you must still separately decide whether the additional requirements of its dependent claims have also been infringed.

There are two ways in which a patent claim may be directly infringed.  A claim may be "literally" infringed, or it may be infringed under the "doctrine of equivalents."  The following instructions will provide more detail on these two types of direct infringement.

## LITERAL INFRINGEMENT

To decide whether any of American Honda's products literally infringe a claim of the '795 Patent, you must compare that product with the patent claim and determine whether every requirement of the claim is included in that product.  If so, American Honda's product literally infringes that claim.  If, however, American Honda's product does not have every requirement in the patent claim, American Honda's product does not literally infringe that claim.  You must decide literal infringement for each asserted claim separately.

## INFRINGEMENT UNDER THE DOCTRINE OF EQUIVALENTS

If you decide that American Honda's products do not literally infringe an asserted patent claim, you must then decide whether those products infringe the asserted claim under what is called the "doctrine of equivalents."

Under the doctrine of equivalents, the products can infringe an asserted patent claim if the products include parts that are identical or equivalent to the requirements of the claim. If the products are missing an identical or equivalent part to even one requirement of the asserted patent claim, the products cannot infringe the claim under the doctrine of equivalents. Thus, in making your decision under the doctrine of equivalents, you must look at each individual requirement of the asserted patent claim and decide whether the products have either an identical or equivalent part to that individual claim requirement.

A part of a product is equivalent to a requirement of an asserted claim if a person of ordinary skill in the field would think that the differences between the part and the requirement were not substantial as of the time of the alleged infringement.

One way to decide whether any difference between a requirement of an asserted claim and a part of the product is not substantial is to consider whether, as of the time of the alleged infringement, the part of the product performed substantially the same function, in substantially the same way, to achieve substantially the same result as the requirement in the patent claim.

**[In deciding whether any difference between a claim requirement and the product is not substantial, you may consider whether, at the time of the alleged infringement, persons of ordinary skill in the field would have known of the interchangeability of the part with the claimed requirement. The known interchangeability between the claim requirement and the part of the product is not necessary to find infringement under the doctrine of equivalents. However, known interchangeability may support a conclusion that the difference between the part in the product and the claim requirement is not substantial.**

**The fact that a part of the product performs the same function as the claim requirement is not, by itself, sufficient to show known interchangeability.]**[3]

---

[3] ACI objects to the inclusion of this language.

## MEANS-PLUS-FUNCTION CLAIMS

I will now describe the separate rules that apply to "means-plus-function" requirements that are used in some claims. Claim 1 in the '759 Patent contains "means-plus-function" requirements. A means-plus-function requirement only covers the specific structure disclosed in a patent specification for performing the claimed function and the equivalents of those specific structures that perform the claimed function. A means-plus-function requirement does not cover all possible structures that could be used to perform the claimed function.

For purposes of this trial, I have interpreted each means-plus-function requirement for you and identified the structure in the patent specification that corresponds to the means-plus-function requirements. Specifically, I have determined that:

"An audio or visual interface, the LCD driver, software and/or operating circuitry" are the structures that perform the "providing an alert indicating the notable condition, a provision of the information concerning the at least one device being interrupted by the alert" function identified in the means-plus-function requirement of claim 1.

**DISPUTED - WILLFUL INFRINGEMENT**

## INVALIDITY – BURDEN OF PROOF

I will now instruct you on the rules you must follow in deciding whether Honda has proven that claims 1-6, 8, 10 and 20 of the '795 Patent, claims 1, 4, 9, and 12 of the '497 Patent, claims 1, 4 and 6 of the '465 Patent, claims 1, 7, 11 and 23 of the '961 Patent, and claims 1, 9, 13, 14 and 28 of the '759 Patent are invalid. Before discussing the specific rules, I want to remind you about the standard of proof that applies to this defense. To prove invalidity of any patent claim, Honda must persuade you that it is highly probable that the claim is invalid.

**DISPUTED - WRITTEN DESCRIPTION**

**DISPUTED - INDEFINITENESS**

**DISPUTED - ANTICIPATION**

**DISPUTED - STATUTORY BARS**

**DISPUTED - OBVIOUSNESS**

## SCOPE AND CONTENT OF PRIOR ART

ACI and Honda disagree as to whether certain identified prior art references should be included in the prior art you use to decide the validity of claims 1-6, 8, 10 and 20 of the '795 Patent, claims 4 and 12 of the '497 Patent, claims 1, 4 and 6 of the '465 Patent, claim 7 of the '961 Patent, and claims 9 and 14 of the '759 Patent. In order to be considered as prior art to the '497, '465, '795, '961, and '759 Patents, these references must be reasonably related to the claimed invention of that patent. A reference is reasonably related if it is in the same field as the claimed invention or is from another field to which a person of ordinary skill in the field would look to solve a known problem.

## DIFFERENCES OVER THE PRIOR ART

In reaching your conclusion as to whether or not claims 1-6, 8, 10 and 20 of the '795 Patent, claims 4 and 12 of the '497 Patent, claims 1, 4 and 6 of the '465 Patent, claim 7 of the '961 Patent, and claims 9 and 14 of the '759 Patent would have been obvious at the time the claimed invention was made, you should consider any difference or differences between the prior art references and the claimed requirements.

## LEVEL OF ORDINARY SKILL

Several times, in my instructions, I have referred to a person of ordinary skill in the field of **[human factors] [vehicle telematics]**[4].  It is up to you to decide the level of ordinary skill in the field of **[human factors] [vehicle telematics]**[50].  You should consider all the evidence introduced at trial in making this decision, including:

      (1)    the levels of education and experience of persons working in the field;

      (2)    the types of problems encountered in the field; and

      (3)    the sophistication of the technology.

ACI contends that the level of ordinary skill in the field was an individual who possesses a general college degree (but not necessarily an engineering degree), and some experience in the **[human factors] [vehicle telematics]**[50] aspects of automobile control and operation.  Honda contends that the level of ordinary skill in the field was a person with either: (1) a B.S. degree in electrical engineering or computer science and having four or more years experience in the field of automotive electronics, or (2) a M.S. degree in electrical engineering or computer science and two or more years experience in the field of automotive electronics.

---

[4] ACI contends the relevant field is human factors.  American Honda contends the relevant field is vehicle telematics.

**DISPUTED - INEQUITABLE CONDUCT**

**DISPUTED - RE-EXAMINATION**

## DAMAGES – BURDEN OF PROOF

I will instruct you about the measure of damages.  By instructing you on damages, I am not suggesting which party should win on any issue.  If you find that:

>   (1) any of claims 1, 4, 9, and 12 of the '497 Patent, claims 1, 4 and 6 of the '465 Patent, claims 1, 7, 11 and 23 of the '961 Patent, and claims 1, 9, 13, 14 and 28 of the '759 Patent are valid **[and enforceable]**[5], or
>
>   (2) American Honda infringed any valid **[and enforceable]**[54] claim of the '795 Patent,

you must then determine the amount of money damages to be awarded to ACI to compensate it for the infringement.

The amount of those damages must be adequate to compensate ACI for the infringement. A damages award should put the patent holder in approximately the financial position it would have been in had the infringement not occurred, but in no event may the damages award be less than a reasonable royalty.  You should keep in mind that the damages you award are meant to compensate the patent holder and not to punish an infringer.

ACI has the burden to persuade you of the amount of its damages.  You should award only those damages that ACI more likely than not suffered.  While ACI is not required to prove its damages with mathematical precision, it must prove them with reasonable certainty.  ACI is not entitled to damages that are remote or speculative.  **[However, any uncertainty caused by the inadequacy of American Honda's records should be resolved against American Honda and in favor of ACI.]**[6]

---

[5] Deviation from model.  ACI objections to the inclusion of this language.

[6] Deviation from model.  Honda objections to the inclusion of this language.

- 70 -

**DISPUTED - REASONABLE ROYALTY – DEFINITION**

## DATE OF COMMENCEMENT – PRODUCTS

Damages that ACI may be awarded by you commence on the date that American Honda has infringed the '497, '465, '795, '961, and '759 Patents.

**CONCLUDING INSTRUCTIONS**

## DUTY TO DELIBERATE

When you begin your deliberations, you should elect one member of the jury as your presiding juror/foreperson.  That person will preside over the deliberations and speak for you here in court.

You will then discuss the case with your fellow jurors to reach agreement if you can do so.  Your verdict must be unanimous.

Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully with the other jurors, and listened to the views of your fellow jurors.

Do not hesitate to change your opinion if the discussion persuades you that you should.  Do not come to a decision simply because other jurors think it is right.

It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision.  Do not change an honest belief about the weight and effect of the evidence simply to reach a verdict.

**USE OF NOTES**

Some of you may have taken notes during trial.  Whether or not you took notes, you should rely on your own memory of the evidence. Notes are only to assist your memory. You should not be overly influenced by your notes or those of your fellow jurors.

## COMMUNICATION WITH COURT

If it becomes necessary during your deliberations to communicate with me, you may send a note through the marshal or bailiff, signed by your presiding juror/foreperson or by one or more members of the jury.  No member of the jury should ever attempt to communicate with me except by a signed writing; I will communicate with any member of the jury on anything concerning the case only in writing, or here in open court.  If you send out a question, I will consult with the parties before answering it, which may take some time.  You may continue your deliberations while waiting for the answer to any question.  Remember that you are not to tell anyone—including me—how the jury stands, numerically or otherwise, until after you have reached a unanimous verdict or have been discharged.  Do not disclose any vote count in any note to the court.

**RETURN OF VERDICT**

A verdict form has been prepared for you.  [*Any explanation of the verdict form may be given at this time.*]  After you have reached unanimous agreement on a verdict, your presiding juror/foreperson will fill in the form that has been given to you, sign and date it, and advise the court that you are ready to return to the courtroom.

**ADDITIONAL INSTRUCTIONS OF LAW [IF NECESSARY]**

At this point I will give you a further instruction.  By giving a further instruction at this time, I do not mean to emphasize this instruction over any other instruction.

You are not to attach undue importance to the fact that this was read separately to you. You shall consider this instruction together with all of the other instructions that were given to you.

[*Insert text of new instruction.*]

You will now retire to the jury room and continue your deliberations.

## DEADLOCKED JURY [IF NECESSARY]

Members of the jury, you have advised that you have been unable to agree upon a verdict in this case. I have decided to suggest a few thoughts to you.

As jurors, you have a duty to discuss the case with one another and to deliberate in an effort to reach a unanimous verdict if each of you can do so without violating your individual judgment and conscience. Each of you must decide the case for yourself, but only after you consider the evidence impartially with your fellow jurors. During your deliberations, you should not hesitate to reexamine your own views and change your opinion if you become persuaded that it is wrong. However, you should not change an honest belief as to the weight or effect of the evidence solely because of the opinions of your fellow jurors or for the mere purpose of returning a verdict.

All of you are equally honest and conscientious jurors who have heard the same evidence. All of you share an equal desire to arrive at a verdict. Each of you should ask yourself whether you should question the correctness of your present position.

I remind you that in your deliberations you are to consider the instructions I have given you as a whole. You should not single out any part of any instruction, including this one, and ignore others. They are all equally important.

You may now retire and continue your deliberations.

# GLOSSARY

**Some of the terms in this glossary will be defined in more detail in the legal instructions you are given. The definitions in the instructions must be followed and must control your deliberations.**

Abstract:  A brief summary of the technical disclosure in a patent to enable the U.S. Patent and Trademark Office and the public to determine quickly the nature and gist of the technical disclosure in the patent.

Amendment:  A patent applicant's change to one or more claims or to the specification either in response to an office action taken by a Patent Examiner or independently by the patent applicant during the patent application examination process.

Anticipation:  A situation in which a claimed invention describes an earlier invention and, therefore, is not considered new and is not entitled to be patented.

Assignment:  A transfer of patent rights to another called an "assignee" who upon transfer becomes the owner of the rights assigned.

Claim:  Each claim of a patent is a concise, formal definition of an invention and appears at the end of the specification in a separately numbered paragraph.  In concept, a patent claim marks the boundaries of the patent in the same way that a legal description in a deed specifies the boundaries of land, i.e. similar to a land owner who can prevent others from trespassing on the bounded property, the inventor can prevent others from using what is claimed.  Claims may be independent or dependent.  An independent claim stands alone.  A dependent claim does not stand alone and refers to one or more other claims.  A dependent claim incorporates whatever the other referenced claim or claims say.

Conception: The complete mental part of the inventive act which must be capable of proof, as by drawings, disclosure to another, etc.

- 80 -

Continuation Application:  A patent application filed during the examination process of an earlier application which has the same disclosure as the original application and does not include anything which would constitute new matter if inserted in the original application.

Drawings: The drawings are visual representations of the claimed invention contained in a patent application and issued patent, and usually include several figures illustrating various aspects of the claimed invention.

Elements:  The required parts of a device.  A device infringes a patent if it contains each and every requirement of a patent claim.

Embodiment:  A product that contains the claimed invention.

Examination:  Procedure before the U.S. Patent and Trademark Office whereby a Patent Examiner reviews the filed patent application to determine if the claimed invention is patentable.

Filing Date:  Date a patent application, with all the required sections, has been submitted to the U.S. Patent and Trademark Office.

Infringement:  Violation of a patent occurring when someone makes, uses or sells a patented invention, without permission of the patent holder, within the United States during the term of the patent.  Infringement is making, using or selling the patented invention without permission.

Limitation:  A required part of an invention set forth in a patent claim.  A limitation is a requirement of the invention.  The word "limitation" is often used interchangeably with the word "requirement."

Nonobviousness:  One of the requirements for securing a patent. To be valid, the subject matter of the invention must not have been obvious to a person of ordinary skill in the field of the invention at the time of the earlier of the filing date of the patent application or the date of invention.

Office Action:  A written communication from the Patent Examiner to the patent applicant in the course of the application examination process.

Patent:  A patent is an exclusive right granted by the U.S. Patent and Trademark Office to an inventor to prevent others from making, using or selling an invention for a term of 20 years from the date the patent application was filed (or 17 years from the date the patent issued).  When the patent expires, the right to make, use or sell the invention is dedicated to the public.  The patent has three parts, which are a specification, drawings and claims.  The patent is granted after examination by the U.S. Patent and Trademark Office of a patent application filed by the inventor which has these parts, and this examination is called the prosecution history.

Patent and Trademark Office (PTO):  An administrative branch of the U.S. Department of Commerce that is charged with overseeing and implementing the federal laws of patents and trademarks.  It is responsible for examining all patent applications and issuing all patents in the United States.

Prior Art:  Previously known subject matter in the field of a claimed invention for which a patent is being sought.  It includes issued patents, publications, and knowledge deemed to be publicly available such as trade skills, trade practices and the like.

Prosecution History:  The prosecution history is the complete written record of the proceedings in the PTO from the initial application to the issued patent.  The prosecution history includes the office actions taken by the PTO and the amendments to the patent application filed by the applicant during the examination process.

Reads On:  A patent claim "reads on" a device when each required part (requirement) of the claim is found in the device.

Reduction to Practice:  The invention is "reduced to practice" when it is sufficiently developed to show that it would work for its intended purpose.

Requirement:  A required part or step of an invention set forth in a patent claim. The word "requirement" is often used interchangeably with the word "limitation."

Royalty:  A royalty is a payment made to the owner of a patent by a non-owner in exchange for rights to make, use or sell the claimed invention.

Specification:  The specification is a required part of a patent application and an issued patent.  It is a written description of the invention and of the manner and process of making and using the claimed invention.

Dated: June 9, 2008          Respectfully submitted,

                                       /s/ Richard. A. Clegg

                                       _____

Richard A. Clegg (SBN 211213)
SELTZER CAPLAN MCMAHON VITEK
750 B Street, Suite 2100
San Diego, California  92101
Telephone: (619) 685-3086
Facsimile:  (619) 685-3100

*Of Counsel:*
Gary M. Butter (*pro hac vice*)
Robert L. Maier (*pro hac vice*)
Edward R. Tempesta (*pro hac vice*)
BAKER BOTTS L.L.P.
30 Rockefeller Plaza, 44th Floor
New York, New York  10112-4498
Telephone: (212) 408-2500
Facsimile:  (212) 408-2501
gary.butter@bakerbotts.com
robert.maier@bakerbotts.com
edward.tempesta@bakerbotts.com

*Attorneys for Plaintiff,*
*AMERICAN CALCAR, INC.*

Dated: June 9, 2008

By: /s/ Michael M. Rosen

Michael M. Rosen (SBN 230964)
FISH & RICHARDSON P.C.
12390 El Camino Real
San Diego, CA 92130
Telephone: (858) 678-5070
Facsimile: (858) 678-5099

John T. Johnson (Admitted *Pro Hac Vice*)
FISH & RICHARDSON P.C.
Citigroup Center – 52nd Floor
153 East 53rd Street
New York, New York 10022
Telephone: (212) 765-5070
Facsimile: (212) 258-2291

Attorneys for Defendant/Counter-Claimant
AMERICAN HONDA MOTOR CO., INC. and
Defendant HONDA OF AMERICA MFG., INC.