1  Michael M. Rosen (SBN 230964)
   FISH & RICHARDSON P.C.
2  12390 El Camino Real
   San Diego, CA 92130
3  Telephone: (858) 678-5070
   Facsimile: (858) 678-5099
4
   John T. Johnson (Admitted Pro Hac Vice)
5  FISH & RICHARDSON P.C.
   153 East 53rd Street, 52nd Floor
6  New York, NY 10022
   Telephone: (212) 765-5070
7  Facsimile: (212) 258-2291

8  Attorneys for Defendant/Counter-Claimant
   AMERICAN HONDA MOTOR CO., INC. and
9  Defendant HONDA OF AMERICA MFG., INC.

10

11            UNITED STATES DISTRICT COURT

12           SOUTHERN DISTRICT OF CALIFORNIA

13 AMERICAN CALCAR, INC.,              Civil No. 06-2433-DMS (CAB)

14           Plaintiff,               AMERICAN HONDA'S SUPPLEMENTAL
                                      JURY INSTRUCTIONS
15     v.

16 AMERICAN HONDA MOTOR CO., INC. and
   HONDA OF AMERICA MFG., INC.,
17
             Defendants.
18
19 AND RELATED COUNTER-CLAIMS.
20
21
22
23
24
25
26
27
28                                   Civil No. 06-2433-DMS (CAB)

I.    PRELIMINARY STATEMENT

American Honda respectfully submits its supplemental proposed jury instructions.  The parties have met and conferred on numerous occasions and have successfully agreed on the vast majority of proposed instructions, which are being concurrently filed as the parties' joint set of agreed-upon instructions.  A number of instructions remain, however, upon which the parties could not reach agreement.  Accordingly, each party is submitting its own set of supplemental jury instructions.

# A.4 SUMMARY OF CONTENTIONS (PRELIMINARY)[1]

To help you follow the evidence, I will now give you a summary of the positions of the parties.

The parties in this case are American Calcar, Inc. ("ACI") and American Honda Motor Co., Inc. and Honda of America Mfg., Inc. (collectively, "American Honda"). The case involves United States Patent Numbers 6,330,497, 6,438,465, 6,542,795, 6,459,961, and 6,587,759 which list Michael Obradovich, Michael Kent, and John Dinkel as the inventors. For convenience, the parties and I will often refer to the patents as the '497, '465, '795, '961, and '759 Patents, those being the last three numbers of each patent number.

ACI filed suit in this court seeking money damages from American Honda for allegedly infringing the '497, '465, '795, '961, and '759 Patents by making, importing, using, selling, and/or offering for sale products that ACI argues are covered by selected claims of the patents. The products that are alleged to infringe are 2005-2007 Honda and Acura vehicles.

It has already been determined that the accused systems are covered by claims 1, 4, and 9 of the '497 Patent, claims 1, 4 and 6 of the '465 Patent, claims 1, 7, 11 and 23 of the '961 Patent, claims 1, 9, 13, 14 and 28 of the '759 Patent, and claim 12 of the '497 Patent.

American Honda denies that it has infringed claims 1, 2-6, 8, 10 and 20 of the '795 Patent and argues that, in addition, the claims are invalid. American Honda argues claims 1, 4, 9, and 12 of the '497 Patent, claims 1, 4 and 6 of the '465 Patent, claims 1, 7, 11 and 23 of the '961 Patent, and claims 1, 9, 13, 14 and 28 of the '759 Patent are invalid.

Your job will be to decide whether claims 1, 2-6, 8, 10 and 20 of the '795 Patent have been infringed and whether those claims are invalid. If you decide that any claim of the '795 Patent has been infringed and is not invalid or if you decide that any of claims 1, 4, 9, and 12 of the '497 Patent, claims 1, 4 and 6 of the '465 Patent, claims 1, 7, 11 and 23 of the '961 Patent, or claims 1, 9, 13, 14 and 28 of the '759 Patent are not invalid, you will then need to decide any money damages to be awarded to ACI to compensate it for the infringement. You will also need to make a finding as to whether the infringement was willful. If you decide that any infringement was willful, that decision should not affect any damage award you give. I will take willfulness into account later.

American Honda also contends that the asserted patents are unenforceable due to inequitable conduct by the patent applicant. You will need to make an advisory ruling as to whether, with the intent to deceive, the patent applicants and/or their attorneys withheld from the Patent Office information that was material to the patentability of the claimed inventions I will take your advisory ruling into account in reaching my own final decision.

It is my job as judge to determine the meaning of any claim language that needs interpretation. You must accept the meanings I give you and use them when you decide whether any claim of the patent has been infringed and whether any claim is invalid.

---

[1] N.D. Cal. Model Patent Jury Instructions, A.3.

Civil No. 06-2433-DMS (CAB)

## A.19 INEQUITABLE CONDUCT - BURDEN OF PROOF

I will now instruct you on the rules you must follow in providing me with an advisory ruling as to whether American Honda has proven that the patents-in-suit should be held unenforceable for inequitable conduct. In order to prove unenforceability of any one of the patents-in-suit, American Honda must persuade you that it is highly probable that the applicants and/or their attorneys withheld material information with the intent to deceive the Patent Office during the prosecution of the patent.

Civil No. 06-2433-DMS (CAB)

# A.23 OUTLINE OF TRIAL[2]

The trial will now begin.  First, each side may make an opening statement.  An opening statement is not evidence.  It is simply an outline to help you understand what that party expects the evidence will show.

The presentation of evidence will then begin. There are two standards of proof that you will apply to the evidence, depending on the issue you are deciding.  On some issues, you must decide whether something is more likely true than not.  On other issues you must use a higher standard and decide whether it is highly probable that something is true.

ACI will present its evidence on its contention that some claims of the '795 Patent have been infringed by American Honda and that the claims of the '497, '465, '795, '961, and '759 Patents have been willfully infringed.  To prove infringement of any claim, ACI must persuade you that it is more likely than not that American Honda has infringed that claim.  To persuade you that any infringement was willful, ACI must prove that it is highly probable that the infringement was willful.

American Honda will go next and present its evidence that the claims of the '497, '465, '795, '961, and '759 Patents are invalid.  To prove invalidity of any claim, American Honda must persuade you that it is highly probable that the claim is invalid.  An invalid patent cannot be infringed even if American Honda's accused products are within the scope of the claims.

American Honda will also present evidence that the patents-in-suit should be held unenforceable because the applicants and/or their attorney engaged in inequitable conduct during the prosecution of the patents-in-suit.  To prove inequitable conduct, American Honda must persuade you that it is highly probable that, with the intent to deceive, the patent applicants and/or their attorneys withheld from the Patent Office information that was material to the patentability of the claimed inventions.  In addition to presenting its evidence of invalidity, and inequitable conduct, American Honda will put on evidence responding to ACI's infringement and willfulness contentions.

ACI will then return and will put on evidence responding to American Honda's contention that the claims of the '497, '465, '795, '961, and '759 Patents are invalid.  ACI will also have the option to put on what is referred to as "rebuttal" evidence to any evidence offered by American Honda of non-infringement or lack of willfulness.

Finally, American Honda will have the option to put on "rebuttal" evidence to any evidence offered by ACI on the validity and enforceability of claims of the '497, '465, '795, '961, and '759 Patents.

---

[2] N.D. Cal. Model Patent Jury Instructions, A.5

Civil No. 06-2433-DMS (CAB)

During the presentation of the evidence, the attorneys will be allowed brief opportunities to explain what they believe the evidence has shown or what they believe upcoming evidence will show.  Such comments are not evidence and are being allowed solely for the purpose of helping you understand the evidence.

Because the evidence is introduced piecemeal, you need to keep an open mind as the evidence comes in and wait for all the evidence before you make any decisions.  In other words, you should keep an open mind throughout the entire trial.

After the evidence has been presented, the attorneys will make closing arguments and I will give you final instructions on the law that applies to the case.  Closing arguments are not evidence.  After the closing arguments and instructions, you will then decide the case.

Authorities:

Viskase Corp. v. American Nat'l Can Co., 261 F.3d 1316, 1323 (Fed. Cir. 2001)

Civil No. 06-2433-DMS (CAB)

## C.11 SUMMARY OF CONTENTIONS[3]

I will first give you a summary of each side's contentions in this case. I will then tell you what each side must prove to win on each of its contentions. As I previously told you, it has already been determined that the accused products are covered by claims 1, 4, and 9 of the '497 Patent, claims 1, 4 and 6 of the '465 Patent, claims 1, 7, 11 and 23 of the '961 Patent, claims 1, 9, 13, 14 and 28 of the '759 Patent, and claim 12 of the '497 Patent. ACI seeks money damages from American Honda for those acts of infringement and for allegedly infringing claims 1, 2-6, 8, 10 and 20 of the '795 Patent by making, importing, using, selling and/or offering for sale products that ACI argues are covered by these claims of the patents. These are the asserted claims of the '795 Patent. The products that are alleged to infringe are 2005-2007 Honda and Acura vehicles.

American Honda denies that it has infringed the asserted claims of the '795 Patent and argues that, in addition, the asserted claims are invalid. American Honda additionally argues claims 1, 4, 9 and 12 of the '497 Patent, claims 1, 4 and 6 of the '465 Patent, claims 1, 7, 11 and 23 of the '961 Patent, and claims 1, 9, 13, 14 and 28 of the '759 Patent are invalid.

Your job is to decide whether the asserted claims of the '795 Patent have been infringed and whether any of the asserted claims of the '795 Patent is invalid. Additionally you must determine whether claims 1, 4, 9, and 12 of the '497 Patent, claims 1, 4 and 6 of the '465 Patent, claims 1, 7, 11 and 23 of the '961 Patent, and claims 1, 9, 13, 14 and 28 of the '759 Patent are invalid. If you decide that any claim of any patent has been infringed and is not invalid, you will then need to decide any money damages to be awarded to ACI to compensate it for the infringement. You will also need to make a finding as to whether the infringement was willful. If you decide that any infringement was willful, that decision should not affect any damage award you make. I will take willfulness into account later.

American Honda also contends that the asserted patents are unenforceable due to inequitable conduct by the patent applicants and/or their attorneys. You will need to make an advisory ruling as to whether, with the intent to deceive, the patent applicants and/or their attorneys withheld from the Patent Office information that was material to the patentability of the claimed inventions I will take your advisory ruling into account in reaching my own final decision.

---

[3] N.D. Cal. Model Patent Jury Instructions, B.1.

Civil No. 06-2433-DMS (CAB)

# C.12 INTERPRETATION OF CLAIMS[4]

I have interpreted the meaning of some of the language in the patent claims involved in this case. You must accept those interpretations as correct. My interpretation of the language should not be taken as an indication that I have a view regarding the issues of infringement and invalidity. The decisions regarding infringement and invalidity are yours to make. The same claim meaning applies to both infringement and invalidity.

<u>'497, '795 and '465 Patents</u>

The term "aspect" is construed as "part, accessory, capability, feature or function."

<u>'465 Patent</u>

The term "query" is construed as "a description of the vehicle aspect that the user enters into the system. The description may be displayed or undisplayed at the time of utterance by the user."

The term "selecting a result of the search" is construed as "the user's selection of an aspect from among candidate aspects."

<u>'795 Patent</u>

The term "request" is construed according to its plain and ordinary meaning, and that as used in this Claim, the term "request" must include a "user description of the aspect of the vehicle."

The term "selecting, based on the user description," is construed according to its plain and ordinary meaning, and that as used in this Claim, the phrase requires the selecting be "based on the user description."

The term "user description" is construed as "a description of the vehicle aspect that originates with the user, not some other source. The description may be displayed or undisplayed at the time of utterance by the user."

<u>'961 and '759 Patents</u>

The term "prompting a user" is construed as "moving a user to action."

The term "prompting a user to select the option" must prompt the user to select "the" option and not just "an" option.

[This jury instruction should clarify the Court's claim construction of "prompting a user to select the option." The Court should rule specifically whether "the" option (that calls up coping information) needs to preferentially prompt the user to select it relative to any other option that

---

[4] N.D. Cali. Model Patent Jury Instructions, B.2.1.

Civil No. 06-2433-DMS (CAB)

may appear on the screen.  American Honda contends that preferential prompting is not required by the claims or the Court's construction ("moving a user to action"), and that the jury should be so instructed.]

The term "interrupting a provision of the information concerning the at least one device with a provision of information concerning the notable condition" is construed according to its plain and ordinary meaning, i.e., the information concerning the notable condition need not be related to the information then being provided.

The term "in response to the notable condition" is construed according to its plain and ordinary meaning, i.e., provision of the option on the display element occurs in response to the notable condition, not in response to any action on the part of the user.

The term "in response to the selection of the option" is construed according to its plain and ordinary meaning, i.e., provision of the selected information for coping with the notable condition occurs in response to the selection of the option, not in response to some other action on the part of the user.

'759 Patent

The term "a mechanism" is construed as a "means-plus-function" term.  The recited function is "providing an alert indicating the notable condition, a provision of the information concerning the at least one device being interrupted by the alert."  The corresponding structure is "an audio or visual interface, the LCD driver, software and/or operating circuitry."

'497 Patent

The term "associated with" is construed as "related to."

The term "the at least one option indicating a first status" is construed according to its plain and ordinary meaning, i.e., the first status of the option may be indicated audibly or visually.

The term "the at least one option indicating a second status" is construed according to its plain and ordinary meaning, i.e., the second status of the option may be indicated audibly or visually.

The term "the at least one option indicating a third status" is construed according to its plain and ordinary meaning, i.e., the third status of the option may be indicated audibly or visually.

The term "providing information concerning the selected at least one option" is construed to mean "providing a preview or purpose concerning the selected at least one option."

All other claimed terms should be given their plain and ordinary meaning.

Authorities

Markman v. Westview Instruments, Inc., 517 U.S. 370, 384-391 (1996); Pitney Bowes, Inc. v. Hewlett-Packard Co., 182 F.3d 1298, 1304-13 (Fed. Cir. 1999); Cybor Corp. v. FAS Techs., 138 F.3d 1448 (Fed. Cir. 1998) (en banc); Markman v. Westview Instruments, Inc., 52 F.3d 967, 977 (Fed. Cir. 1995) (en banc); Order Construing Patent Claims, Docket No. 105, 9/24/2007, at 3 and 12-13 and n. 10; Order Granting in Part and Denying in Part ACI's Motion for Summary Judgment of Infringement of U.S. Patent Nos. 6,542,795 and 6,438,465, Docket No. 71, 7/10/2007 at 5; Order Denying American Honda's Motion for Summary Judgment of Invalidity of U.S. Patents Nos. 6,459,961 and 6,587,759, Docket No. 334, 4/28/2008; Order Denying American Honda's Motion for Summary Judgment of Invalidity of U.S. Patent No. 6,438,465, Docket No. 336, 4/29/08.

Civil No. 06-2433-DMS (CAB)

## C.16 INFRINGEMENT UNDER THE DOCTRINE OF EQUIVALENTS[5]

If you decide that American Honda's products do not literally infringe an asserted patent claim, you must then decide whether those products infringe the asserted claim under what is called the "doctrine of equivalents."

Under the doctrine of equivalents, the products can infringe an asserted patent claim if the products include parts that are identical or equivalent to the requirements of the claim. If the products are missing an identical or equivalent part to even one requirement of the asserted patent claim, the products cannot infringe the claim under the doctrine of equivalents. Thus, in making your decision under the doctrine of equivalents, you must look at each individual requirement of the asserted patent claim and decide whether the products have either an identical or equivalent part to that individual claim requirement.

A part of a product is equivalent to a requirement of an asserted claim if a person of ordinary skill in the field would think that the differences between the part and the requirement were not substantial as of the time of the alleged infringement.

One way to decide whether any difference between a requirement of an asserted claim and a part of the product is not substantial is to consider whether, as of the time of the alleged infringement, the part of the product performed substantially the same function, in substantially the same way, to achieve substantially the same result as the requirement in the patent claim.

In deciding whether any difference between a claim requirement and the product is not substantial, you may consider whether, at the time of the alleged infringement, persons of ordinary skill in the field would have known of the interchangeability of the part with the claimed requirement. The known interchangeability between the claim requirement and the part of the product is not necessary to find infringement under the doctrine of equivalents. However, known interchangeability may support a conclusion that the difference between the part in the product and the claim requirement is not substantial. The fact that a part of the product performs the same function as the claim requirement is not, by itself, sufficient to show known interchangeability.

Authorities

Warner-Jenkinson Co., Inc. v. Hilton Davis Chem. Co., 520 U.S. 17 (1997); Graver Tank & Mfg. Co. v. Linde Air Prods. Co., 339 U.S. 605, 609 (1950); Abraxis Bioscience, Inc. v. Mayne Pharma (USA) Inc.,  467 F.3d 1370, 1379-82 (Fed. Cir. 2006); Pfizer, Inc. v. Teva Pharms., USA, Inc., 429 F.3d 1364, 1378 (Fed. Cir. 2005); Johnson & Johnston Assoc. v. R.E. Service Co., 285 F.3d 1046 (Fed. Cir. 2002) (en banc); Multiform Desiccants, Inc. v. Medzam, Ltd., 133 F.3d 1473, 1480 (Fed. Cir. 1998); Dolly, Inc. v. Spalding & Evenflo Cos., 16 F.3d 394, 397 (Fed. Cir. 1994).

---

[5] N.D. Cali. Model Patent Jury Instructions, B.3.4.

Civil No. 06-2433-DMS (CAB)

# C.18 WILLFUL INFRINGEMENT[6]

In this case, ACI argues that American Honda is a willful infringer of ACI's patents.

To prove willful infringement, ACI must first persuade you that American Honda infringed a valid and enforceable claim of ACI's patent. The requirements for proving such infringement were discussed in my prior instructions.

In addition, to prove willful infringement, ACI must persuade you that it is highly probable that prior to the filing date of the complain, American Honda acted with reckless disregard of the claims of one or more of ACI's patents.

To demonstrate such "reckless disregard," ACI must satisfy a two-part test. The first part of the test is objective. ACI must persuade you that Honda acted despite an objectively high likelihood that its actions constituted infringement of a valid and enforceable patent. The state of mind of American Honda is not relevant to this inquiry. Rather, the appropriate inquiry is whether the defenses put forth by American Honda fail to raise any substantial question with regard to infringement or validity or enforceability. Only if you conclude that the defenses fail to raise any substantial question with regard to infringement or validity or enforceability, do you need to consider the second part of the test.

The second part of the test does depend on the state of mind of American Honda. ACI must persuade you that American Honda actually knew, or it was so obvious that American Honda should have known, that its actions constituted infringement of a valid and enforceable patent.

In deciding whether American Honda acted with reckless disregard for ACI's patents, you should consider all of the facts surrounding the alleged infringement including, but not limited to, the following:

> (1)   Whether American Honda acted in a manner consistent with the standards of commerce for its industry; and

> (2)   Whether American Honda intentionally copied a product of ACI covered by the patent.

Authorities

35 U.S.C. § 284; In re Seagate Tech., LLC, 2007 U.S. App. LEXIS 19768 (Fed. Cir. Aug. 20, 2007); Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp., 383 F.3d 1337, 1345 (Fed. Cir. 2004) (en banc); Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l, Inc., 246 F.3d 1336, 1346 (Fed. Cir. 2001); WMS Gaming Inc. v. Int'l Game Tech., 184 F.3d 1339, 1354 (Fed. Cir. 1999); Read Corp. v. Portec, Inc., 970 F.2d 816 (Fed. Cir. 1992); Gustafson, Inc. v. Intersystems Indus. Prods., Inc., 897 F.2d 508, 510 (Fed. Cir. 1990); ); Energy Transp. Group, Inc. v. William Demant Holding AS, No. 05-422-GMS, 2008 WL 114861 (D. Del. Jan. 7, 2008); Annotated Patent Digest § 31.46 (2008).

---

[6] N.D. Cal. Model Patent Jury Instructions, B.3.11.

# C.20 WRITTEN DESCRIPTION[7]

American Honda can meet its burden of proving that a patent claim is invalid by showing that the patent does not contain an adequate written description of the claimed invention. The purpose of this written description requirement is to make sure that a patent describes the technology it seeks to claim as an invention and to demonstrate that the inventor was in possession of the invention at the time the application for the patent was filed, even though the claims may have been changed or new claims added since that time. The written description requirement is satisfied if a person of ordinary skill in the field reading the patent application as originally filed would recognize that the patent application described the invention as claimed, even though the description may not use the exact words found in the claim. A requirement in a claim need not be specifically disclosed in the patent application as originally filed if a person of ordinary skill would understand that the missing requirement is necessarily implied in the patent application as originally filed.

---

[7] N.D. Cal. Model Instruction No. 4.2a.

Civil No. 06-2433-DMS (CAB)

# C.21 INDEFINITENESS[8]

The patent laws have requirements for the way in which patent claims are written. Patent claims must be sufficiently clear that a person of ordinary skill in the field of the invention reading them is able to determine what the claims cover and what they do not cover. A person of ordinary skill is a person of average education and training in the field. If a patent claim does not meet this requirement, then the claim is said to be indefinite, and the claim is invalid.

The amount of detail required for a claim to be definite depends on the particular invention, the prior art and the description of the invention contained in the patent. A patent claim, when read along with the rest of the patent, must reasonably inform those skilled in the field of the invention what the patent claims cover. Simply because a definition for language in a patent claim can be supported by the rest of the patent, however, does not end the indefiniteness inquiry. The claim is still indefinite if a person of ordinary skill cannot translate that definition into meaningfully precise claim scope.

The scope of claim language cannot depend solely on the unrestrained, subjective opinion of a particular individual purportedly practicing the invention. Some objective standard must be provided in order to allow the public to determine the scope of the claimed invention. When a claim construction requires a person of ordinary skill to make a separate infringement determination for every set of circumstances in which a system may be used, and when such determinations are likely to result in differing outcomes (sometimes infringing and sometimes not), that claim construction is likely to be indefinite.

Authorities

LNP Eng'g Plastics, Inc. v. Miller Waste Mills, Inc., 275 F.3d 1347, 1357 (Fed. Cir. 2001); S3 Inc. v. nVidia Corp., 259 F.3d 1364, 1367 (Fed. Cir. 2001); N. Am. Vaccine Inc. v. Am. Cynamid Co., 7 F.3d 1571, 1579-80 (Fed. Cir. 1993); W.L. Gore & Assoc., Inc. v. Garlock, Inc., 842 F.2d 1275, 1280 (Fed. Cir. 1988); Halliburton Energy Services, Inc. v. M-I LLC, 514 F. 3d 1244, 1251 and 1255 (Fed. Cir. 2008); Datamize LLC v. Plumbtree Software, Inc., 417 F.3d 1342, 1350 (Fed. Cir. 2005).

---

[8] Federal Circuit Bar Assn. (2005) Model Instruction No. 10.5 and American Bar Assn. (2005) Model Patent Jury Instruction No. 9.1.4.

# C.22 ANTICIPATION[9]

A patent claim is invalid if the claimed invention is not new. For the claim to be invalid because it is not new, all of its requirements must have existed in a single device that predates the claimed invention, or must have been described in a single previous publication or patent that predates the claimed invention. In patent law, these previous devices, publications or patents are called "prior art references." If a patent claim is not new we say it is "anticipated" by a prior art reference.

The description in the written reference does not have to be in the same words as the claim, but all of the requirements of the claim must be there, either stated or necessarily implied, so that someone of ordinary skill in the field of vehicle telematics looking at that one reference would be able to make and use the claimed invention.

Here is a list of the ways that Honda can show that a patent claim was not new:

> – if the claimed invention was already publicly known or publicly used by others in the United States before the date of conception; or

> – if the claimed invention was already patented or described in a printed publication anywhere in the world before the date of conception. A reference is a printed publication if it is accessible to those interested in the field, even if it is difficult to find. It is not necessary that the printed publication be available to every member of the public. The information must, however, have been maintained in some form, such as printed pages, typewritten pages, magnetic tape, microfilm, photographs, or photocopies. The term "printed publication" takes into account advances in the technologies of data storage, retrieval, and dissemination. An issued patent is a printed publication. A published patent application is a printed publication as of its publication date.

Since it is in dispute, you must determine a date of conception for the claimed invention. Conception is the mental part of an inventive act and is proven when the invention is shown in its complete form by drawings, disclosure to another or other forms of evidence presented at trial. An inventor's testimony regarding the facts of invention, including conception, must be corroborated by independent evidence, which may consist of testimony of a witness, other than the inventor, who has no stake in the outcome of the litigation.

<u>Authorities</u>

35 U.S.C. § 102(a), (c), (e), (f) and (g); Apotex U.S.A., Inc. v. Merck & Co., 254 F.3d 1031, 1035 (Fed. Cir. 2001); Mycogen Plant Science, Inc. v. Monsanto Co., 243 F.3d 1316, 1330 (Fed. Cir. 2001); Ecolochem, Inc. v. S. Cal. Edison Co., 227 F.3d 1361, 1367-70 (Fed. Cir. 2000); Singh v. Brake, 222 F.3d 1362, 1366-70 (Fed. Cir. 2000); Pannu v. Iolab Corp., 155 F.3d 1344, 1349 (Fed. Cir. 1998); Gambro Lundia AB v. Baxter Healthcare Corp., 110 F.3d 1573, 1576-78 (Fed. Cir. 1997); Lamb-Weston, Inc. v. McCain Foods, Ltd., 78 F.3d 540, 545 (Fed. Cir. 1996); In re Bartfeld, 925 F.2d 1450 (Fed. Cir. 1985); Ralston Purina Co. v. Far-Mar-Co, Inc., 772 F.2d 1570, 1574 (Fed. Cir. 1985); American Stock Exch., LLC v. Mopies, 250 F. Supp. 2d 323

---

[9] N.D. Cal. Model Patent Jury Instructions, B.4.3a1.

(S.D.N.Y. 2003); In re Wyer, 655 F.2d 221, 226 (C.C.P.A. 1981); AIPLA Model Instruction No. 6.3; In re Wyer, 655 F.2d 221, 227 (C.C.P.A. 1981); In re Hall, 781 F.2d 897-98 (Fed. Cir. 1986); In re Garner, 508 F.3d 1376, 1380 (Fed. Cir. 2007).

Civil No. 06-2433-DMS (CAB)

# C.23 STATUTORY BARS[10]

A patent claim is invalid if the patent application was not filed within the time required by law. This is called a "statutory bar." For a patent claim to be invalid by a statutory bar, all of its requirements must have been present in one prior art reference dated more than one year before the patent application was filed. Here is a list of ways Honda can show that the patent application was not timely filed:

> – if the claimed invention was already patented or described in a printed publication anywhere in the world before January 28, 1996. A reference is a printed publication if it is accessible to those interested in the field, even if it is difficult to find. It is not necessary that the printed publication be available to every member of the public. The information must, however, have been maintained in some form, such as printed pages, typewritten pages, magnetic tape, microfilm, photographs, or photocopies. The term "printed publication" takes into account advances in the technologies of data storage, retrieval, and dissemination. An issued patent is a printed publication. A published patent application is a printed publication as of its publication date; or

> – if the claimed invention was already being openly used in the United States before January 28, 1996 and that use was not primarily an experimental use (a) controlled by the inventor, and (b) to test whether the invention worked for its intended purpose; or

> – if a device or method using the claimed invention was sold or offered for sale in the United States.

For a claim to be invalid because of a statutory bar, all of the claimed requirements must have been either (1) disclosed in a single prior art reference, (2) implicitly disclosed in a reference to one skilled in the field, or (3) must have been present in the reference, whether or not that was understood at the time. The disclosure in a reference does not have to be in the same words as the claim, but all the requirements must be there, either described in enough detail or necessarily implied, to enable someone of ordinary skill in the field of vehicle telematics looking at the reference to make and use the claimed invention.

<u>Authorities</u>

35 U.S.C. § 102(b) and (d); Pfaff v. Wells Elec. Inc., 525 U.S. 55 (1998); Schering Corp. v. Geneva Pharms., 339 F.2d 1273 (Fed Cir. 2003); Helifix Ltd. v. Blok-Lok, Ltd, 208 F.3d 1339, 1346 (Fed. Cir. 2000); Abbot Labs. v. Geneva Pharms., Inc., 182 F.3d 1315, 1318 (Fed. Cir. 1999); Finnigan Corp. v. Int'l Trade Comm'n, 180 F.3d 1354 (Fed. Cir. 1999); J.A. LaPorte, Inc. v. Norfolk Dredging Co., 787 F.2d 1577, 1581 (Fed. Cir. 1986); In re Hall, 781 F.2d 897, 898-99 (Fed. Cir. 1986); D.L. Auld Co. v. Chroma Graphics Corp., 714 F.2d 1144, 1150 (Fed. Cir. 1983); AIPLA Model Instruction No. 6.3; In re Wyer, 655 F.2d 221, 227 (C.C.P.A. 1981); In re Hall, 781 F.2d 897-98 (Fed. Cir. 1986).

---

[10] N.D. Cal. Model Patent Jury Instructions, B.4.3a2.

Not all innovations are patentable. A patent claim is invalid if the claimed invention would have been obvious to a person of ordinary skill in the field at the time the application was filed. This means that even if all of the requirements of the claim cannot be found in a single prior art reference that would anticipate the claim or constitute a statutory bar to that claim, a person of ordinary skill in the field of vehicle telematics who knew about all this prior art would have come up with the claimed invention.

However, a patent claim composed of several elements is not proved obvious merely by demonstrating that each of its elements was independently known in the prior art. In evaluating whether such a claim would have been obvious, you may consider whether American Honda has identified a reason that would have prompted a person of ordinary skill in the field to combine the elements or concepts from the prior art in the same way as in the claimed invention. There is no single way to define the line between true inventiveness on one hand (which is patentable) and the application of common sense and ordinary skill to solve a problem on the other hand (which is not patentable). For example, market forces or other design incentives may be what produced a change, rather than true inventiveness. You may consider whether the change was merely the predictable result of using prior art elements according to their known functions, or whether it was the result of true inventiveness. You may also consider whether there is some teaching or suggestion in the prior art to make the modification or combination of elements claimed in the patent. Also, you should consider whether the innovation applies a known technique that had been used to improve a similar device or method in a similar way. You may also consider whether the claimed invention would have been obvious to try, meaning that the claimed innovation was one of a relatively small number of possible approaches to the problem with a reasonable expectation of success by those skilled in the art. However, you must be careful not to determine obviousness using the benefit of hindsight; many true inventions might seem obvious after the fact. You should put yourself in the position of a person of ordinary skill in the field at the time the claimed invention was made and you should not consider what is known today or what is learned from the teaching of the patent.

For example, if the claimed invention combined elements known in the prior art and the combination yielded results that were predictable to a person of ordinary skill in the art at the time of the invention, then this evidence would make it more likely that the claim was obvious. Or if a technique has been used to improve one device, and a person of ordinary skill in the art would recognize that it would improve similar devices in the same way, using the technique is obvious unless its actual application is beyond his or her skill. An example might be applying modern electronics to older mechanical devices. On the other hand, if the combination of known elements yielded unexpected or unpredictable results, or if the prior art teaches away from combining the known elements, then this evidence would make it more likely that the claim that successfully combined those elements was not obvious.

---

[11] N.D. Cal. Model Patent Jury Instructions, B.4.3b (Alternative 2).

Civil No. 06-2433-DMS (CAB)

The ultimate conclusion of whether a claim is obvious should be based upon your determination of several factual decisions. First, you must decide the level of ordinary skill in the field that someone would have had at the time the claimed invention was made. Second, you must decide the scope and content of the prior art. Third, you must decide what difference, if any, existed between the claimed invention and the prior art. Finally, you should consider any of the following factors that you find have been shown by the evidence:

       (1)     commercial success of a product due to the merits of the claimed invention;

       (2)     a long felt need for the solution provided by the claimed invention;

       (3)     unsuccessful attempts by others to find the solution provided by the claimed invention;

       (4)     copying of the claimed invention by others;

       (5)     unexpected and superior results from the claimed invention;

       (6)     acceptance by others of the claimed invention as shown by praise from others in the field or from the licensing of the claimed invention;

       (7)     other evidence tending to show nonobviousness;

       (8)     independent invention of the claimed invention by others before or at about the same time as the named inventor thought of it; and

       (9)     other evidence tending to show obviousness.

<u>Authorities</u>

35 U.S.C. § 103; Graham v. John Deere Co., 383 U.S. 1 (1966); KSR Int'l Co. v. Teleflex, Inc., 550 U.S. ___ (2007); Ruiz v. A.B. Chance Co., 234 F.3d 654 (Fed. Cir. 2000); Arkie Lures, Inc. v. Gene Larew Tackle, Inc., 119 F.3d 953, 957 (Fed. Cir. 1997); Specialty Composites v. Cabot Corp., 845 F.2d 981, 991 (Fed. Cir. 1988); Windsurfing Int'l, Inc. v. AMF, Inc., 782 F.2d 995, 1000 (Fed. Cir. 1986); Pentec. Inc. v. Graphic Controls Corp., 776 F.2d 309, 313 (Fed. Cir. 1985). See Novo Nordisk A/S v. Becton Dickinson & Co., 304 F.3d 1216, 1219-20 (Fed. Cir. 2002); AIPLA Model Instruction No. 7.2; Leapfrog Enterprises v. Fisher Price, 485 F.3d 1157, 1161 (Fed. Cir. 2007).

Civil No. 06-2433-DMS (CAB)

# C.28 INEQUITABLE CONDUCT[12]

Every applicant for a patent has a duty of candor and good faith in its dealing with the United States Patent and Trademark Office and with the Examiner handling the application. This duty of candor is important because the examiner has limited resources. The examiner may have less information available to them than an applicant may have from which to determine whether an invention is sufficiently different from that which already exists to warrant a patent. The examiner also has a limited amount of time to spend determining whether the invention claimed in any particular application meets the requirements for a patent. To prevent patents from issuing on inventions that are not sufficiently different from that which already exists, anyone involved in a substantial way in the examination of an application is required to be truthful and honest in all of their dealings with the Patent and Trademark Office and to disclose all information in their possession which a reasonable examiner may consider to be material to the examination of the application.

When a person involved in the prosecution of an application fails to comply with the duty of candor and good faith, and does so with an intent to deceive the Patent and Trademark Office, he or she may commit what is called "inequitable conduct." When inequitable conduct occurs during the examination of an application, any patent that issues from that application may be rendered unenforceable as a matter of fairness. This means that despite the existence of the patent, the patent holder may not prevent others from using the invention covered by the patent and may not collect damages from those who use the invention that is covered by the patent. Because a finding of inequitable conduct completely extinguishes a patent holder's right to prevent others from using an invention, the burden of proving inequitable conduct is high. An alleged infringer must establish that inequitable conduct occurred during the examination of a patent with evidence by clear and convincing evidence. That is, based on the evidence presented to you in this case you must have a clear conviction that inequitable conduct occurred in connection with the patents in order for it to be considered unenforceable.

In this case, American Honda contends that the named inventors of the patents-in-suit failed to disclose material information to the Patent and Trademark Office during the examination of the patents, and did so with an intent to deceive the examiner into issuing the patents.

I will now explain to you what "materiality" and "intent to mislead" mean. I will then explain to you how any materiality and intent that you may find must be balanced in order to determine whether, given all the facts and circumstances, inequitable conduct occurred in this case as American Honda contends.

Materiality

---

[12] Federal Circuit Bar Assn. Model Instruction No. 5.1.

Civil No. 06-2433-DMS (CAB)

In considering materiality, you first must determine whether or not information was withheld from the Patent and Trademark Office during the examination of the patents. If you find that the applicant, the applicant's representative(s), or others involved in a substantial way with the examination of the application withheld information from the Patent Trademark Office during the examination of the patents, you must then determine whether or not the withheld information was material.

Information or statements are material if they establish, either alone or in combination with other information or statements, that the invention sought to be patented more likely than not failed to satisfy one or more of the requirements for a patent. Examples of such requirements would include that the invention be new, useful, and non-obvious, among others. Information or statements also are material if they refute or are inconsistent with a position that the applicant for a patent took when opposing an argument made by the examiner that the invention was not patentable or when making an argument to the examiner that the invention was patentable.

Information that is cumulative of, or in other words, adds little to or has no more bearing on the examination of an application than information the examiner already had, is not material. Information that discloses a more complete combination of the relevant features of the invention sought to be patented may be highly material. This is true even if those features were before the examiner in other, less complete references.

I will now discuss the concept of "intent to mislead."

Intent to Mislead

In order for inequitable conduct to have occurred American Honda must establish that any failure to disclose material information was done with an intent to deceive the examiner. If the failure to disclose material information occurred through negligence, oversight, carelessness, or an error in judgment, even if it was grossly negligent, then there was no intent to deceive and there is no inequitable conduct.

Intent may be shown through direct evidence, such as documents or testimony about one's intent to deceive. Intent also may be shown through indirect evidence, or in other words, it may be inferred from conduct. For example, you may infer an intent to mislead from acts substantially certain to accomplish a result, or a combination of conduct and statements. However, you are not required to infer intent. Any inference of intent will necessarily depend upon the totality of the circumstances as you find them to have been, including the nature and level of any culpable conduct you may find and the absence or presence of affirmative evidence of good faith on the patent holder's or other relevant person's part.

Balancing of Materiality and Intent

If you find that American Honda has proved that material information was withheld and, further, that these acts or omissions were done with an intent to mislead the examiner, you must then weigh the degree of materiality and the degree of intent to determine whether, on balance, the

Civil No. 06-2433-DMS (CAB)

evidence clearly and convincingly establishes that the named inventors committed inequitable conduct and the patent(s) should in fairness be declared unenforceable. When performing this balancing, the higher the level of materiality of the withheld information, the lower the level of intent that is required to establish inequitable conduct, and vice versa. Materiality and intent to deceive are separate issues: proof of materiality does not give rise to an inference of intent to deceive, and proof of an intent to deceive does not give rise to an inference of materiality. There must be evidence that establishes materiality and there must be evidence that establishes an intent to deceive. If evidence of either, or both, is missing, there can be no inequitable conduct. Although the question of whether there has been inequitable conduct is one that I will decide, I will ask for your findings so that I can consider them in making my decision. You should make determinations on this issue as you would for any other issue in this case because I will consider them seriously in making my determination.

# C.28A RE-EXAMINATION

In a re-examination proceeding, the patent examiner is limited to patents and printed publications in determining the patentability of any claim of a particular patent. Knowledge, use, or sale, of a prior art product cannot be considered by the examiner.

Inequitable conduct during an initial prosecution of a patent application cannot be cured during re-examination of the same patent.

<u>Authorities</u>

35 U.S.C. § 301-5; Bruning v. Hirose, 161 F.3d 681, 685 (Fed. Cir. 1998); Molins PLC v. Textron, Inc., 48 F.3d 1172, 1182 (Fed. Cir. 1995)

## C.30 REASONABLE ROYALTY – DEFINITION[13]

A royalty is a payment made to a patent holder in exchange for rights to make, use or sell the claimed invention. A reasonable royalty is the payment that would have resulted from a negotiation between a patent holder and the infringer taking place at or before the time that the infringing activity first began. In considering the nature of this negotiation, the focus is on what the expectations of the patent holder and infringer would have been had they entered into an agreement at that time and acted reasonably in their negotiations. However, you must assume that both parties believed the patent was valid and infringed. In addition, you must assume that patent holder and infringer were willing to enter into an agreement; your role is to determine what that agreement would have been. The test for damages is what royalty would have resulted from the hypothetical negotiation and not simply what either party would have preferred. In determining a reasonable royalty, you may consider evidence on any of the following factors:

1. Any royalties received by the licensor for the licensing of the patent-in-suit, proving or tending to prove an established royalty.

2. The rates paid by American Honda to license other patents comparable to the patents-in-suit.

3. The nature and scope of the license, as exclusive or non-exclusive, or as restricted or non-restricted in terms of its territory or with respect to whom the manufactured product may be sold.

4. The licensor's established policy and marketing program to maintain its right to exclude others from using the patented invention by not licensing others to use the invention, or by granting licenses under special conditions designed to preserve that exclusivity.

5. The commercial relationship between the licensor and the licensee, such as whether or not they are competitors in the same territory in the same line of business.

6. The effect of selling the patented product in promoting sales of other products of the licensee; the existing value of the invention to the licensor as a generator of sales of its non-patented items; and the extent of such collateral sales.

7. The duration of the patents-in-suit and the term of the license.

8. The established profitability of the product made under the patents-in-suit; its commercial success; and its current popularity.

9. The utility and advantages of the patented invention over the old modes or devices, if any that had been used for achieving similar results.

10. The nature of the patented invention; the character of the commercial embodiment of it as owned and produced by the licensor; and the benefits to those who have used the invention.

---

[13] N.D. Cal. Model Patent Jury Instructions, B.5.7.

Civil No. 06-2433-DMS (CAB)

11. The extent to which American Honda has made use of the invention; and any evidence that shows the value of that use.

12. The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions.

13. The portion of the profit that arises from the patented invention itself as opposed to profit arising from unpatented features, such as the manufacturing process, business risks, or significant features or improvements added by the accused infringer.

14. The opinion testimony of qualified experts.

15. The amount that a licensor and a licensee (such as American Honda) would have agreed upon (at the time the infringement began) if both sides had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee— who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention—would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a patentee who was willing to grant a license.

16. Any other economic factor that a normally prudent business person would, under similar circumstances, take into consideration in negotiating the hypothetical license.


Authorities

Golight, Inc., v. Wal-Mart Stores, Inc., 355 F.3d 1327, 1338 (Fed. Cir. 2004); Maxwell v. Baker, Inc., 86 F.3d 1098, 1108-10 (Fed. Cir. 1996); Mahurkar v. C.R. Bard, Inc., 79 F.3d 1572, 1579-81 (Fed. Cir. 1996); Rite-Hite Corp. v. Kelley Co., 56 F.3d 1538, 1554 (Fed. Cir. 1995) (en banc); Georgia-Pacific Corp. v. United States Plywood Corp., 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970); Riles v. Shell Exploration & Prod. Co., 298 F.3d 1302, 1311 (Fed. Cir. 2002); AIPLA Model Patent Instruction 12.16; Georgia-Pacific Corp. v. United States Plywood Corp., 318 F. Supp. 1116 (S.D.N.Y. 1970), modified and aff'd sub nom., Georgia Pacific Corp. v. United States Plywood Champion Papers, Inc., 446 F.2d 295 (2d Cir. 1971).

Dated: June 9, 2008

FISH & RICHARDSON P.C.

By: /s/ Michael M. Rosen
Michael M. Rosen (SBN 230964)
FISH & RICHARDSON P.C.
12390 El Camino Real
San Diego, CA 92130
Telephone: (858) 678-5070
Facsimile: (858) 678-5099

John T. Johnson
FISH & RICHARDSON P.C.
Citigroup Center – 52nd Floor
153 East 53rd Street
New York, New York 10022
Telephone: (212) 765-5070
Facsimile: (212) 258-2291

Attorneys for Defendant/Counter-Claimant AMERICAN HONDA MOTOR CO., INC. and Defendant HONDA OF AMERICA MFG., INC.

OF COUNSEL:

Robert E. Hillman (Admitted Pro Hac Vice)
FISH & RICHARDSON P.C.
225 Franklin Street
Boston, MA 02110-2804
Telephone: (617) 542-5070
Facsimile: (617) 542-8906

Ahmed Davis (Admitted Pro Hac Vice)
FISH & RICHARDSON P.C.
1425 K Street NW
Washington, D.C. 20005
Telephone: (202) 783-5070
Facsimile: (202) 793-2331

Civil No. 06-2433-DMS (CAB)

<u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on June 9, 2008 to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Civil Local Rule 5.4.  Any other counsel of record will be served by electronic mail, facsimile and/or overnight delivery.

 s/Michael M. Rosen
Michael M. Rosen (SBN 230964)
rosen@fr.com

Attorneys for Defendant/Counter-Claimant
AMERICAN HONDA MOTOR CO., INC. and
Defendant HONDA OF AMERICA MFG., INC.

10839126

Civil No. 06-2433-DMS (CAB)