Richard A. Clegg (SBN 211213)
SELTZER CAPLAN MCMAHON VITEK
750 B Street, Suite 2100
San Diego, California  92101
Telephone: (619) 685-3086
Facsimile:  (619) 685-3100

Gary M. Butter (*pro hac vice*)
Paul A. Ragusa (*pro hac vice*)
Robert L. Maier (*pro hac vice*)
Jennifer Cozeolino (*pro hac vice*)
BAKER BOTTS L.L.P.
30 Rockefeller Plaza, 44th Floor
New York, New York  10112-4498
Telephone: (212) 408-2500
Facsimile:  (212) 408-2501

*Attorneys for Plaintiff,*
*AMERICAN CALCAR, INC.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMERICAN CALCAR, INC., | Civil Action No.: 06-cv-2433-DMS (CAB) |
| Plaintiff, | |
| v. | **PLAINTIFF AMERICAN CALCAR, INC.'S OBJECTIONS TO AMERICAN HONDA'S SUPPLEMENTAL JURY INSTRUCTIONS** |
| AMERICAN HONDA MOTOR CO., INC., and HONDA OF AMERICA MANUFACTURING, INC., | |
| Defendants. | **Honorable Dana M. Sabraw** |
| | Trial Date: June 16, 2008 |
| | Time: 9:00 a.m. |
| | Location: Courtroom 10 |

# TABLE OF CONTENTS

A.      Preliminary Instructions

2.      What a Patent Is and How One is Obtained

4.      Summary of Contentions

19.     Inequitable Conduct—Burden Of Proof

23.     Outline of Trial


C.      Final Jury Instructions

11.     Summary of Contentions

12.     Interpretation of Claims

16.     Infringement Under the Doctrine of Equivalents

18.     Willful Infringement

20.     Written Description Requirement

21.     Indefiniteness

22.     Anticipation

23.     Statutory Bars

24.     Obviousness

27.     Level of Ordinary Skill

28.     Inequitable Conduct

29.     Re-Examination

30.     Damages – Burden of Proof

31.     Reasonable Royalty – Definition

## A.2. WHAT A PATENT IS AND HOW ONE IS OBTAINED

**Honda's Proposed Instruction**[1]

This case involves a dispute relating to five United States patents. Before summarizing the positions of the parties and the legal issues involved in the dispute, let me take a moment to explain what a patent is and how one is obtained.

Patents are granted by the United States Patent and Trademark Office (sometimes called "the PTO"). The process of obtaining a patent is called patent prosecution. A valid United States patent gives the patent owner the right for up to 20 years from the date the patent application was filed to prevent others from making, using, offering to sell, or selling the patented invention within the United States or from importing it into the United States without the patent holder's permission. A violation of the patent owner's rights is called infringement. The patent owner may try to enforce a patent against persons believed to be infringers by a lawsuit filed in federal court.

To obtain a patent one must file an application with the PTO. The PTO is an agency of the federal government and employs trained examiners who review applications for patents. The application includes what is called a "specification," which must contain a written description of the claimed invention telling what the invention is, how it works, how to make it and how to use it so others skilled in the field will know how to make or use it. The specification concludes with one or more numbered sentences. These are the patent "claims." When the patent is eventually granted by the PTO, the claims define the boundaries of its protection and give notice to the public of those boundaries.

After the applicant files the application, a PTO patent examiner reviews the patent application to determine whether the claims are patentable and whether the specification adequately describes the invention claimed. In examining a patent application, the patent examiner reviews records available to the PTO for what is referred to as "prior art." The

---

[1] N.D. Cali. Model Patent Jury Instructions, A.1

examiner also will review prior art if it is submitted to the PTO by the applicant.  Prior art is defined by law, and I will give you at a later time specific instructions as to what constitutes prior art.  However, in general, prior art includes things that existed before the claimed invention, that were publicly known, or used in a publicly accessible way in this country, or that were patented or described in a publication in any country.  The examiner considers, among other things, whether each claim defines an invention that is new, useful, and not obvious in view of the prior art **known to the examiner**[2].  A patent lists the prior art that the examiner considered; this list is called the "cited references."

After the prior art search and examination of the application, the patent examiner then informs the applicant in writing what the examiner has found and whether any claim is patentable, and thus will be "allowed."  This writing from the patent examiner is called an "office action."  If the examiner rejects the claims, the applicant then responds and sometimes changes the claims or submits new claims.  This process, which takes place only between the examiner and the patent applicant, may go back and forth for some time until the examiner is satisfied that the application and claims meet the requirements for a patent.  The papers generated during this time of communicating back and forth between the patent examiner and the applicant make up what is called the "prosecution history." All of this material becomes available to the public no later than the date when the patent issues.

The fact that the PTO grants a patent does not necessarily mean that any invention claimed in the patent, in fact, deserves the protection of a patent.  For example, the PTO may not have had available to it all the information that will be presented to you.  A person accused of infringement has the right to argue here in federal court that a claimed invention in the patent is invalid because it does not meet the requirements for a patent.

---

[2] Deviation from model.

**ACI's Objections**

ACI objects to objects to Honda's proposed instruction to the extent it deviates from the Model Patent Jury Instructions for the Northern District of California.  Honda attempts to add the following bolded language to the model:

> The examiner considers, among other things, whether each claim defines an invention that is new, useful, and not obvious in view of the prior art **known to the examiner.**

The inclusion of the additional bolded language is extraneous, unnecessary, argumentative, and will only mislead or confuse the jury.  (*See* Dkt. Entry No. 350, Order re: Trial at 4e: "All instructions should be short, concise, and neutral statements of law…argumentative instructions…will not be given).  When advisory groups draft the model instructions, they balance the language for both sides throughout, and the additional language added by Honda disrupts that balance. There are no special circumstances in this case that warrant the deviation.  Accordingly, ACI requests that the Court decline to adopt Honda's additional language.

**ACI's Proposed Instruction[3]**

This case involves a dispute relating to five United States patents.  Before summarizing the positions of the parties and the legal issues involved in the dispute, let me take a moment to explain what a patent is and how one is obtained.

Patents are granted by the United States Patent and Trademark Office (sometimes called "the PTO").  The process of obtaining a patent is called patent prosecution.  A valid United States patent gives the patent owner the right for up to 20 years from the date the patent application was filed to prevent others from making, using, offering to sell, or selling the patented invention within the United States or from importing it into the United States without the patent holder's permission.  A violation of the patent owner's rights is called infringement.

---

[3] N.D. Cali. Model Patent Jury Instructions, A.1

The patent owner may try to enforce a patent against persons believed to be infringers by a lawsuit filed in federal court.

To obtain a patent one must file an application with the PTO.  The PTO is an agency of the federal government and employs trained examiners who review applications for patents.  The application includes what is called a "specification," which must contain a written description of the claimed invention telling what the invention is, how it works, how to make it and how to use it so others skilled in the field will know how to make or use it.  The specification concludes with one or more numbered sentences.  These are the patent "claims."  When the patent is eventually granted by the PTO, the claims define the boundaries of its protection and give notice to the public of those boundaries.

After the applicant files the application, a PTO patent examiner reviews the patent application to determine whether the claims are patentable and whether the specification adequately describes the invention claimed.  In examining a patent application, the patent examiner reviews records available to the PTO for what is referred to as "prior art."  The examiner also will review prior art if it is submitted to the PTO by the applicant.  Prior art is defined by law, and I will give you at a later time specific instructions as to what constitutes prior art.  However, in general, prior art includes things that existed before the claimed invention, that were publicly known, or used in a publicly accessible way in this country, or that were patented or described in a publication in any country.  The examiner considers, among other things, whether each claim defines an invention that is new, useful, and not obvious in view of the prior art.  A patent lists the prior art that the examiner considered; this list is called the "cited references."

After the prior art search and examination of the application, the patent examiner then informs the applicant in writing what the examiner has found and whether any claim is patentable, and thus will be "allowed."  This writing from the patent examiner is called an "office action."  If the examiner rejects the claims, the applicant then responds and sometimes changes the claims or submits new claims.  This process, which takes place only between the examiner and the patent applicant, may go back and forth for some time until the examiner is satisfied that the application and claims meet the requirements for a patent.  The papers

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

generated during this time of communicating back and forth between the patent examiner and the applicant make up what is called the "prosecution history." All of this material becomes available to the public no later than the date when the patent issues.

The fact that the PTO grants a patent does not necessarily mean that any invention claimed in the patent, in fact, deserves the protection of a patent. For example, the PTO may not have had available to it all the information that will be presented to you. A person accused of infringement has the right to argue here in federal court that a claimed invention in the patent is invalid because it does not meet the requirements for a patent.

### A.4. SUMMARY OF CONTENTIONS

**Honda's Proposed Instruction**[4]

To help you follow the evidence, I will now give you a summary of the positions of the parties.

The parties in this case are American Calcar, Inc. ("ACI") and American Honda Motor Co., Inc. and Honda of America Mfg., Inc. (collectively, "American Honda"). The case involves United States Patent Numbers 6,330,497, 6,438,465, 6,542,795, 6,459,961, and 6,587,759 which list Michael Obradovich, Michael Kent, and John Dinkel as the inventors. For convenience, the parties and I will often refer to the patents as the '497, '465, '795, '961, and '759 Patents, those being the last three numbers of each patent number.

ACI filed suit in this court seeking money damages from American Honda for allegedly infringing the '497, '465, '795, '961, and '759 Patents by making, importing, using, selling, and/or offering for sale products that ACI argues are covered by selected claims of the patents. The products that are alleged to infringe are 2005-2007 Honda and Acura vehicles.

**It has already been determined that the accused systems are covered by claims 1, 4, and 9 of the '497 Patent, claims 1, 4 and 6 of the '465 Patent, claims 1, 7, 11 and 23 of the '961 Patent, claims 1, 9, 13, 14 and 28 of the '759 Patent, and claim 12 of the '497 Patent.**

American Honda contends that either it has not infringed claims 1, 2-6, 8, 10 and 20 of the '795 Patent or that the claims are invalid. American Honda argues claims 1, 4, 9, and 12 of the '497 Patent, claims 1, 4 and 6 of the '465 Patent, claims 1, 7, 11 and 23 of the '961 Patent, and claims 1, 9, 13, 14 and 28 of the '759 Patent are invalid.

Your job will be to decide whether claims 1, 2-6, 8, 10 and 20 of the '795 Patent have been infringed and whether those claims are invalid. If you decide that any claim of the '795 Patent has been infringed and is not invalid or if you decide that any of claims 1, 4, 9, and 12 of the '497 Patent, claims 1, 4 and 6 of the '465 Patent, claims 1, 7, 11 and 23 of the '961 Patent, or claims 1, 9, 13, 14 and 28 of the '759 Patent are not invalid, you will then need to decide any

---

[4] N.D. Cal. Model Patent Jury Instructions, A.3.

money damages to be awarded to ACI to compensate it for the infringement. You will also need to make a finding as to whether the infringement was willful. If you decide that any infringement was willful, that decision should not affect any damage award you give. I will take willfulness into account later.

**American Honda also contends that the asserted patents are unenforceable due to inequitable conduct by the patent applicant. You will need to make an advisory ruling as to whether, with the intent to deceive, the patent applicants and/or their attorneys withheld from the Patent Office information that was material to the patentability of the claimed inventions I will take your advisory ruling into account in reaching my own final decision.**

It is my job as judge to determine the meaning of any claim language that needs interpretation. You must accept the meanings I give you and use them when you decide whether any claim of the patent has been infringed and whether any claim is invalid.

**ACI's Objections**

"the accused systems are covered by claims"

ACI objects to Honda's proposed use of the phrase the "accused systems are covered by" instead of "infringed."  Honda has moved, as part of its motion *in limine* No. 14, to preclude ACI from using or referring to the word "infringed" when referring to the Court's determination that Honda has infringed the '497, '465, '759, and '961 Patents.  Honda has argued that the use of the word "infringed" should be prohibited as it will taint Honda as a "bad actor" in the eyes of the jury.  However, as ACI stated at oral argument, it would be wildly impractical to prohibit the attorneys from uttering the word "infringement" during the trial.  Moreover, ACI will not be able to effectively argue to the jury that Honda willfully *infringes* these patents if it is not able to inform the jury that it has already been determined that Honda *infringes* the patents.  Such a prohibition can only lead to jury confusion, since ACI will simultaneously be attempting to prove that Honda's *infringement* of the '795 patent.

If Honda's motion is granted, the jury will be asked to determine whether Honda infringed one patent, told that "the accused systems are covered by the claims" of the other four patents-in-suit, and then asked to determine if Honda willfully infringed all five of the patents-in-

suit.  This is made explicit in Honda's proposed version of the disputed instruction.  For example, in the third paragraph, it states that "ACI filed suit … for allegedly *infringing* the '497, '465, '795, '961, and '759 Patents" and "[t]he products that are alleged to *infringe* are …" (emphasis added).  Next, in the fourth paragraph, Honda's proposed instruction states "[i]t has already been determined that the accused systems *are covered by* … claims 1, 7, 11 and 23 of the '961 Patent" (emphasis added).  Following that, in the sixth paragraph, Honda's instruction states "if you decide that any of claims 1, 7, 11 and 23 of the '961 Patent … are not invalid, you will then need to decide any money damages to be awarded to ACI to compensate it for the *infringement*" (emphasis added).  The instruction goes on to state "[y]ou will also need to make a finding as to whether the *infringement* was willful" (emphasis added).  The jury will be confused about this semantic distinction and also as to why the jury is not being asked to determine infringement of those accused systems that are "covered by the claims" of the four patents already found infringed.  That confusion and prejudice to ACI will be significant.

ACI understands the Court's concerns, expressed at oral argument, that if the jury were told "the Court has found that Honda infringes" these patents, the jury may be improperly influenced as a result.  Accordingly, ACI proposes adopting the more neutral and passive language suggested by the Court at oral argument, *i.e.*, "it has been determined that Honda infringes . . ."  Such a formulation effectively addresses the Court's concerns regarding potential prejudice to Honda, while at the same time avoiding any prejudice to ACI or confusion of the jury.  ACI respectfully submits that this is the most fair and efficient way to resolve the dispute.

Inequitable Conduct

ACI reserves its objection to the entirety of this language pending the Court's determination regarding whether it will seek an advisory ruling from the jury on the issue of inequitable conduct.  Should the Court decide that it will seek such an advisory ruling, ACI objects to Honda's proposed language to the extent that it is a biased summary of the law on inequitable conduct.  Honda's one-sided instruction fails to address the critical fact that information that is cumulative of information the Examiner already considered cannot be used to support a finding of inequitable conduct.  (*See Honeywell Intern. Inc. v. Universal Avionics Cop.*, 488 F.3d 982, 1000 (Fed. Cir. 2007)).  Similarly, Honda's instruction fails to inform the jury that

it should consider evidence of good faith in making its determination.  (*See eSpeed, Inc. v. Broker Tec of USA, L.L.C.*, 480 F.3d 1129, 1137-28 (Fed. Cir. 2007)).

Additionally, ACI objects to the inconsistency in Honda's references to the patent applicants.  Honda use of "patent applicant" and "patent applicants and/or their attorneys" in the same paragraph will mislead or confuse the jury.  Accordingly, ACI requests that the court adopt ACI's proposed instruction which consistently refers to the "applicants."

ACI respectfully submits that its proposed instruction is more complete than Honda's proposed instruction, and presents to the jury, in a more clear and unbiased manner, the issue of inequitable conduct.

**ACI's Proposed Instruction**[5]

To help you follow the evidence, I will now give you a summary of the positions of the parties.

The parties in this case are American Calcar, Inc. ("ACI") and American Honda Motor Co., Inc. and Honda of America Mfg., Inc. (collectively, "American Honda").  The case involves United States Patent Numbers 6,330,497, 6,438,465, 6,542,795, 6,459,961, and 6,587,759 which list Michael Obradovich, Michael Kent, and John Dinkel as the inventors.  For convenience, the parties and I will often refer to the patents as the '497, '465, '795, '961, and '759 Patents, those being the last three numbers of each patent number.

ACI filed suit in this court seeking money damages from American Honda for allegedly infringing the '497, '465, '795, '961, and '759 Patents by making, importing, using, selling, and/or offering for sale products that ACI argues are covered by selected claims of the patents.  The products that are alleged to infringe are 2005-2007 Honda and Acura vehicles.

**It has already been determined that American Honda infringes claims 1, 4, 9, and 12 of the '497 Patent, claims 1, 4 and 6 of the '465 Patent, claims 1, 7, 11 and 23 of the '961 Patent, and claims 1, 9, 13, 14 and 28 of the '759 Patent.**

[5] N.D. Cal. Model Patent Jury Instructions, A.3.

American Honda denies that it has infringed claims 1, 2-6, 8, 10 and 20 of the '795 Patent and argues that, in addition, the claims are invalid.  American Honda argues claims 1, 4, 9, and 12 of the '497 Patent, claims 1, 4 and 6 of the '465 Patent, claims 1, 7, 11 and 23 of the '961 Patent, and claims 1, 9, 13, 14 and 28 of the '759 Patent are invalid.

Your job will be to decide whether claims 1, 2-6, 8, 10 and 20 of the '795 Patent have been infringed and whether those claims are invalid.  If you decide that any claim of the '795 Patent has been infringed and is not invalid or if you decide that any of claims 1, 4, 9, and 12 of the '497 Patent, claims 1, 4 and 6 of the '465 Patent, claims 1, 7, 11 and 23 of the '961 Patent, or claims 1, 9, 13, 14 and 28 of the '759 Patent are not invalid, you will then need to decide any money damages to be awarded to ACI to compensate it for the infringement.  You will also need to make a finding as to whether the infringement was willful.  If you decide that any infringement was willful, that decision should not affect any damage award you give.  I will take willfulness into account later.

**American Honda also contends that the asserted patents are unenforceable due to inequitable conduct by the patent applicants.  You will need to make an advisory ruling as to whether, with the intent to deceive, the patent applicants withheld from the Patent Office information that was material to the patentability of the claimed inventions and not cumulative to prior art already before the Examiner.  You will need to consider evidence of good faith in determining whether applicants intended to deceive.  I will take your advisory ruling into account in reaching my own final decision.**

It is my job as judge to determine the meaning of any claim language that needs interpretation.  You must accept the meanings I give you and use them when you decide whether any claim of the patent has been infringed and whether any claim is invalid.

**A.18. INEQUITABLE CONDUCT/UNENFORCEABILITY - BURDEN OF PROOF**

<u>**Honda's Proposed Instruction**</u>

I will now instruct you on the rules you must follow in providing me with an advisory ruling as to whether American Honda has proven that one or more of the patents-in-suit should be held unenforceable for inequitable conduct. In order to prove unenforceability of any one of the patents-in-suit, American Honda must persuade you that it is highly probable that the applicants and/or their attorneys withheld material information with the intent to deceive the Patent Office during the prosecution of the patent.

<u>**ACI's Objections**</u>

While ACI reserves its objection to this language pending the Court's determination regarding whether it will seek an advisory ruling from the jury on the issue of inequitable conduct. Should the Court decide that it will seek such an advisory ruling, ACI objects to Honda's proposed language to the extent that it is a biased and incorrect summary of the law on inequitable conduct. Honda proposes the following language:

> In order to prove unenforceability of any one of the patents-in-suit,
> American Honda must persuade you that it is highly probable that the
> applicants and/or their attorneys withheld material information with the
> intent to deceive the Patent Office during the prosecution of the patent.

ACI proposes the following language:

> In order to prove unenforceability of any one of the patents-in-suit,
> American Honda must persuade you that it is highly probable that the
> applicants withheld material information **for that patent** with the intent to
> deceive the Patent Office during the prosecution of the patent.

Honda's instruction misses an important point, which will mislead and confuse the jury. To prove inequitable conduct for a patent, a challenger must show that the applicants withheld material information **for that patent**. *Baxter Intern., Inc. v. McGaw, Inc.*, 149 F.3d 1321, 1331-32 (Fed. Cir. 1998) ("[W]here the claims are subsequently separated from those tainted by

inequitable conduct through a divisional application, and where the issued claims have no relation to the omitted prior art, the patent issued from the divisional application will not also be unenforceable due to inequitable conduct committed in the parent application."). Honda attempts to improperly lump all the patents in suit together, which will mislead and confuse the jury.

Accordingly, ACI asks that the Court adopt ACI's proposed instruction. Further, ACI objects to Honda's proposed language to the extent that it presents a biased summary of the law on inequitable conduct.  Honda's one-sided instruction fails to address the critical fact that information that is cumulative of information the Examiner already considered cannot be used to support a finding of inequitable conduct.  (*See Honeywell Intern. Inc. v. Universal Avionics Cop.*, 488 F.3d 982, 1000 (Fed. Cir. 2007)).  Therefore, ACI requests that the Court adopt its proposed instruction instead.

**ACI's Proposed Instruction**

I will now instruct you on the rules you must follow in providing me with an advisory ruling as to whether American Honda has proven that the patents-in-suit should be held unenforceable for inequitable conduct.  In order to prove unenforceability of any one of the patents-in-suit, American Honda must persuade you that it is highly probable that the applicants withheld material information for that patent, which is not cumulative of information that was considered by the Patent examiner, with the intent to deceive the Patent Office during the prosecution of the patent.

## A.22. OUTLINE OF TRIAL

**Honda's Proposed Instruction**[6]

The trial will now begin. First, each side may make an opening statement. An opening statement is not evidence. It is simply an outline to help you understand what that party expects the evidence will show.

The presentation of evidence will then begin. There are two standards of proof that you will apply to the evidence, depending on the issue you are deciding. On some issues, you must decide whether something is more likely true than not. On other issues you must use a higher standard and decide whether it is highly probable that something is true.

ACI will present its evidence on its contention that some claims of the '795 Patent have been infringed by American Honda and that the claims of the '497, '465, '795, '961, and '759 Patents have been willfully infringed. To prove infringement of any claim, ACI must persuade you that it is more likely than not that American Honda has infringed that claim. To persuade you that any infringement was willful, ACI must prove that it is highly probable that the infringement was willful.

American Honda will go next and present its evidence that the claims of the '497, '465, '795, '961, and '759 Patents are invalid. To prove invalidity of any claim, American Honda must persuade you that it is highly probable that the claim is invalid. **An invalid patent cannot be infringed even if American Honda's accused products are within the scope of the claims. American Honda will also present evidence that the patents-in-suit should be held unenforceable because any one of the applicants and/or their attorney engaged in inequitable conduct during the prosecution of the patents-in-suit. To prove inequitable conduct, American Honda must persuade you that it is highly probable that, with the intent to deceive, any one of the applicants and/or their attorneys withheld from the Patent Office information that was material to the patentability of the claimed inventions.** In

---

[6] N.D. Cali. Model Patent Jury Instructions, A.5

addition to presenting its evidence of invalidity, **and inequitable conduct**, American Honda will put on evidence responding to ACI's infringement and willfulness contentions.

ACI will then return and will put on evidence responding to American Honda's contention that the claims of the '497, '465, '795, '961, and '759 Patents are invalid. ACI will also have the option to put on what is referred to as " rebuttal" evidence to any evidence offered by American Honda of non-infringement or lack of willfulness.

Finally, American Honda will have the option to put on " rebuttal" evidence to any evidence offered by ACI on the validity **and enforceability** of claims of the '497, '465, '795, '961, and '759 Patents.

During the presentation of the evidence, the attorneys will be allowed brief opportunities to explain what they believe the evidence has shown or what they believe upcoming evidence will show. Such comments are not evidence and are being allowed solely for the purpose of helping you understand the evidence.

Because the evidence is introduced piecemeal, you need to keep an open mind as the evidence comes in and wait for all the evidence before you make any decisions. In other words, you should keep an open mind throughout the entire trial.

After the evidence has been presented, the attorneys will make closing arguments and I will give you final instructions on the law that applies to the case. Closing arguments are not evidence. After the closing arguments and instructions, you will then decide the case.

**Authorities**

***Viskase Corp. v. American Nat'l Can Co.*, 261 F.3d 1316, 1323 (Fed. Cir. 2001)**


**ACI's Objections**

"Continue to be"

ACI objects to Honda's removal of the bracketed language "continue to be" from the Model Patent Jury Instructions for the Northern District of California because that language applies in this case.  Honda has not alleged that they have taken any remedial actions or changed the design of any of their vehicles in response to ACI's allegations of infringement.  Therefore, if Honda infringed (or willfully infringed) any of the claims of the patents-in-suit previously, it

continues to do so now.  Honda's proposed version of the instruction will mislead the jury into thinking that Honda's willfully infringing conduct has somehow ceased.  As this is not the case, ACI's proposed language should be included to make this point clear.

"An invalid patent cannot be infringed…"

ACI objects to Honda's proposed inclusion of this language in the outline of trial.  As an initial matter, the language is not included in the model instructions, and Honda has not presented any persuasive reasons as to why it must be included.  Although this language may be correct in a sense, its inclusion can only serve to confuse the jury.  The issues of infringement and validity are separated throughout the jury instructions.  Further, the jury will be asked to separately determine whether Honda has infringed the '795 Patent and whether the patents-in-suit are valid.  It is highly likely that Honda's proposed language will mislead the jury into thinking that it must consider Honda's invalidity arguments when making its infringement determination.  This is incorrect.   As ACI pointed out in its opposition to Honda's motion *in limine* No. 14, "[t]hough an invalid claim cannot give rise to liability for infringement, whether it is infringed is an entirely separate question capable of determination without regard to its validity."  *Medtronic, Inc. v. Cardiac Pacemakers, Inc.*, 721 F.2d 1563, 1566 (Fed. Cir. 1983).  "Supreme Court precedent and [Federal Circuit] cases make clear that patent infringement and patent validity are treated as separate issues."   *Pandrol USA, LP v. Airboss Railway Prod., Inc.*, 320 F.3d 1354, 1364 (Fed. Cir. 2003).  This is most likely the precise reason why Honda's proposed language is not found in the model jury instructions.

The inclusion of this additional language is extraneous, unnecessary, and argumentative, and can only serve to mislead or confuse the jury.  (*See* Dkt. Entry No. 350, Order re: Trial at 4e: "All instructions should be short, concise, and neutral statements of law…argumentative instructions…will not be given).  Accordingly, it should not be included.

Inequitable Conduct

ACI reserves its objection to the entirety of this language pending the Court's determination regarding whether it will seek an advisory ruling from the jury on the issue of

inequitable conduct.  Should the Court decide that it will seek such an advisory ruling, ACI objects to Honda's proposed language to the extent that it is a biased summary of the law on inequitable conduct.  Honda's one-sided instruction fails to address the critical fact that information that is cumulative of information the Examiner already considered cannot be used to support a finding of inequitable conduct.  (*See Honeywell Intern. Inc. v. Universal Avionics Cop.*, 488 F.3d 982, 1000 (Fed. Cir. 2007)).  Similarly, Honda's instruction fails to inform the jury that it should consider evidence of good faith in making its determination.  (*See eSpeed, Inc. v. Broker Tec of USA, L.L.C.*, 480 F.3d 1129, 1137-28 (Fed. Cir. 2007)).

Additionally, ACI objects to the inconsistency in Honda's references to the patent applicants.  Honda use of "patent applicants and/or their attorneys" is inconsistent with other instructions and will mislead or confuse the jury.  Accordingly, ACI requests that the court adopt ACI's proposed instruction which consistently refers to the "applicants."

Therefore, ACI's proposed instruction is more complete than Honda's proposed instruction, and presents to the jury, in a more clear and unbiased manner, the issue of inequitable conduct.

## **ACI's Proposed Instruction**[7]

The trial will now begin.  First, each side may make an opening statement.  An opening statement is not evidence.  It is simply an outline to help you understand what that party expects the evidence will show.

The presentation of evidence will then begin. There are two standards of proof that you will apply to the evidence, depending on the issue you are deciding.  On some issues, you must decide whether something is more likely true than not.  On other issues you must use a higher standard and decide whether it is highly probable that something is true.

ACI will present its evidence on its contention that some claims of the '795 Patent have been and continue to be infringed by American Honda and that the infringement of the '497,

---

[7] N.D. Cali. Model Patent Jury Instructions, A.5

'465, '795, '961, and '759 Patents has been and continues to be willful.  To prove infringement of any claim, ACI must persuade you that it is more likely than not that American Honda has infringed that claim.  To persuade you that any infringement was willful, ACI must prove that it is highly probable that the infringement was willful.

American Honda will go next and present its evidence that the claims of the '497, '465, '795, '961, and '759 Patents are invalid.  To prove invalidity of any claim, American Honda must persuade you that it is highly probable that the claim is invalid.  [American Honda will also present evidence that the patents-in-suit should be held unenforceable because the applicants engaged in inequitable conduct during the prosecution of the patents-in-suit.  To prove inequitable conduct, American Honda must persuade you that it is highly probable that, with the intent to deceive, the patent applicants withheld from the Patent Office information that was material to the patentability of the claimed inventions and not cumulative to prior art already before the Examiner.  You will need to consider evidence of good faith in determining whether applicants intended to deceive.] [8] In addition to presenting its evidence of invalidity [and inequitable conduct][8], American Honda will put on evidence responding to ACI's infringement and willfulness contentions.

ACI will then return and will put on evidence responding to American Honda's contention that the claims of the '497, '465, '795, '961, and '759 Patents are invalid [and unenforceable] [8].  ACI will also have the option to put on what is referred to as "rebuttal" evidence to any evidence offered by American Honda of non-infringement or lack of willfulness.

Finally, American Honda will have the option to put on "rebuttal" evidence to any evidence offered by ACI on the validity [and enforceability] [8] of claims of the '497, '465, '795, '961, and '759 Patents.

---

[8] ACI reserves its objection to this language pending the Court's determination regarding whether it will seek an advisory ruling from the jury on the issue of inequitable conduct.  Should the Court decide that it will seek such an advisory ruling, ACI requests that the bracketed language be adopted.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

During the presentation of the evidence, the attorneys will be allowed brief opportunities to explain what they believe the evidence has shown or what they believe upcoming evidence will show.  Such comments are not evidence and are being allowed solely for the purpose of helping you understand the evidence.

Because the evidence is introduced piecemeal, you need to keep an open mind as the evidence comes in and wait for all the evidence before you make any decisions.  In other words, you should keep an open mind throughout the entire trial.

After the evidence has been presented, the attorneys will make closing arguments and I will give you final instructions on the law that applies to the case.  Closing arguments are not evidence.  After the closing arguments and instructions, you will then decide the case.

1

2

### C.11. SUMMARY OF CONTENTIONS

3

4

__Honda's Proposed Instruction__[9]

5

        I will first give you a summary of each side's contentions in this case. I will then tell you

6

what each side must prove to win on each of its contentions. **As I previously told you, it has**

7

**already been determined that the accused products are covered by claims 1, 4, and 9 of the**

8

**'497 Patent, claims 1, 4 and 6 of the '465 Patent, claims 1, 7, 11 and 23 of the '961 Patent,**

9

**claims 1, 9, 13, 14 and 28 of the '759 Patent, and claim 12 of the '497 Patent.** ACI seeks

10

money damages from American Honda for those acts of infringement and for allegedly

11

infringing claims 1, 2-6, 8, 10 and 20 of the '795 Patent by making, importing, using, selling

12

and/or offering for sale products that ACI argues are covered by these claims of the patents.

13

These are the asserted claims of the '795 Patent. The products that are alleged to infringe are

14

2005-2007 Honda and Acura vehicles.

15

        American Honda contends that either it has not infringed the asserted claims of the '795

16

Patent or that the asserted claims are invalid. American Honda additionally argues claims 1, 4, 9

17

and 12 of the '497 Patent, claims 1, 4 and 6 of the '465 Patent, claims 1, 7, 11 and 23 of the '961

18

Patent, and claims 1, 9, 13, 14 and 28 of the '759 Patent are invalid.

19

        Your job is to decide whether the asserted claims of the '795 Patent have been infringed

20

and whether any of the asserted claims of the '795 Patent is invalid. Additionally you must

21

determine whether claims 1, 4, 9, and 12 of the '497 Patent, claims 1, 4 and 6 of the '465 Patent,

22

claims 1, 7, 11 and 23 of the '961 Patent, and claims 1, 9, 13, 14 and 28 of the '759 Patent are

23

invalid. If you decide that any claim of any patent has been infringed and is not invalid, you will

24

then need to decide any money damages to be awarded to ACI to compensate it for the

25

infringement. You will also need to make a finding as to whether the infringement was willful. If

26

you decide that any infringement was willful, that decision should not affect any damage award

27

you make. I will take willfulness into account later.

28

---

[9] N.D. Cali. Model Patent Jury Instructions, B.1

**American Honda also contends that the asserted patents are unenforceable due to inequitable conduct by the patent applicants and/or their attorneys. I may ask that you make an advisory ruling as to whether, with the intent to deceive, the patent applicants and/or their attorneys withheld from the Patent Office information that was material to the patentability of the claimed inventions. If I ask for an advisory ruling, I will take it into account in reaching my own final decision.**

**ACI's Objections**

ACI objects to Honda proposed instruction for the same reasons as discussed above for the Summary of Contentions Instruction.  (*See* ACI's Objections to A.4 Summary of Contentions).

**ACI's Proposed Instruction**[10]

I will first give you a summary of each side's contentions in this case.  I will then tell you what each side must prove to win on each of its contentions.  As I previously told you, it has already been determined that American Honda infringes claims 1, 4, and 9, and 12 of the '497 Patent, claims 1, 4 and 6 of the '465 Patent, claims 1, 7, 11 and 23 of the '961 Patent, and claims 1, 9, 13, 14 and 28 of the '759 Patent.  ACI seeks money damages from American Honda for those acts of infringement and for allegedly infringing claims 1, 2-6, 8, 10 and 20 of the '795 Patent by making, importing, using, selling and/or offering for sale products that ACI argues are covered by these claims of the patents.  These are the asserted claims of the '795 Patent.  The products that are alleged to infringe are 2005-2007 Honda and Acura vehicles.

American Honda denies that it has infringed the asserted claims of the '795 Patent and argues that, in addition, the asserted claims are invalid.  American Honda additionally argues claims 1, 4, 9 and 12 of the '497 Patent, claims 1, 4 and 6 of the '465 Patent, claims 1, 7, 11 and 23 of the '961 Patent, and claims 1, 9, 13, 14 and 28 of the '759 Patent are invalid.

Your job is to decide whether the asserted claims of the '795 Patent have been infringed and whether any of the asserted claims of the '795 Patent is invalid.  Additionally you must

---

[10] N.D. Cali. Model Patent Jury Instructions, B.1

determine whether claims 1, 4, 9, and 12 of the '497 Patent, claims 1, 4 and 6 of the '465 Patent, claims 1, 7, 11 and 23 of the '961 Patent, and claims 1, 9, 13, 14 and 28 of the '759 Patent are invalid.  If you decide that any claim of any patent has been infringed and is not invalid, you will then need to decide any money damages to be awarded to ACI to compensate it for the infringement.  You will also need to make a finding as to whether the infringement was willful. If you decide that any infringement was willful, that decision should not affect any damage award you make.  I will take willfulness into account later.

[American Honda also contends that the asserted patents are unenforceable due to inequitable conduct by the patent applicants.  You will need to make an advisory ruling as to whether, with the intent to deceive, the patent applicants withheld from the Patent Office information that was material to the patentability of the claimed inventions and not cumulative to prior art already before the Examiner.  You will need to consider evidence of good faith in determining whether applicants intended to deceive.  I will take your advisory ruling into account in reaching my own final decision.] [11]

---

[11] ACI reserves its objection to this language pending the Court's determination regarding whether it will seek an advisory ruling from the jury on the issue of inequitable conduct.  Should the Court decide that it will seek such an advisory ruling, ACI requests that the bracketed language be adopted.

# C.12. INTERPRETATION OF CLAIMS

## Honda's Proposed Instruction[12]

I have interpreted the meaning of some of the language in the patent claims involved in this case. You must accept those interpretations as correct. My interpretation of the language should not be taken as an indication that I have a view regarding the issues of infringement and invalidity. The decisions regarding infringement and invalidity are yours to make. The same claim meaning applies to both infringement and invalidity.

'497, '795 and '465 Patents

The term "aspect" is construed as "part, accessory, capability, feature or function."

'465 Patent

The term "query" is construed as "a description of the vehicle aspect that the user enters into the system. The description may be displayed or undisplayed at the time of utterance by the user."

The term "selecting a result of the search" is construed as "the user's selection of an aspect from among candidate aspects."

'795 Patent

The term "request" is construed according to its plain and ordinary meaning, and that as used in this Claim, the term " request" must include a "user description of the aspect of the vehicle."

The term "selecting, based on the user description," is construed according to its plain and ordinary meaning, and that as used in this Claim, the phrase requires the selecting be " based on the user description."

The term "user description" is construed as "a description of the vehicle aspect that originates with the user, not some other source. The description may be displayed or undisplayed at the time of utterance by the user."

---

[12] N.D. Cali. Model Patent Jury Instructions, B.2.1, adapted

'961 and '759 Patents

The term "prompting a user" is construed as "moving a user to action."

The term "prompting a user to select the option" must prompt the user to select "the" option and not just "an" option.

[This jury instruction should clarify the Court's claim construction of "prompting a user to select the option." The Court should rule specifically whether "the" option (that calls up coping information) needs to preferentially prompt the user to select it relative to any other option that may appear on the screen. American Honda contends that preferential prompting is not required by the claims or the Court's construction ("moving a user to action"), and that the jury should be so instructed.]

The term "interrupting a provision of the information concerning the at least one device with a provision of information concerning the notable condition" is construed according to its plain and ordinary meaning, i.e., the information concerning the notable condition need not be related to the information then being provided.

The term "in response to the notable condition" is construed according to its plain and ordinary meaning, i.e., provision of the option on the display element occurs in response to the notable condition, not in response to any action on the part of the user.

The term "in response to the selection of the option" is construed according to its plain and ordinary meaning, i.e., provision of the selected information for coping with the notable condition occurs in response to the selection of the option, not in response to some other action on the part of the user.

'759 Patent

The term "a mechanism" is construed as a "means-plus-function" term. The recited function is "providing an alert indicating the notable condition, a provision of the information concerning the at least one device being interrupted by the alert." The corresponding structure is "an audio or visual interface, the LCD driver, software and/or operating circuitry."

'497 Patent

The term "associated with" is construed as "related to."

The term "the at least one option indicating a first status" is construed according to its plain and ordinary meaning, i.e., the first status of the option may be indicated audibly or visually.

The term "the at least one option indicating a second status" is construed according to its plain and ordinary meaning, i.e., the second status of the option may be indicated audibly or visually.

The term "the at least one option indicating a third status" is construed according to its plain and ordinary meaning, i.e., the third status of the option may be indicated audibly or visually.

The term "providing information concerning the selected at least one option" is construed to mean " providing a preview or purpose concerning the selected at least one option."

All other claimed terms should be given their plain and ordinary meaning.

Authorities

*Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 384-391 (1996); *Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1304-13 (Fed. Cir. 1999); *Cybor Corp. v. FAS Techs.*, 138 F.3d 1448 (Fed. Cir. 1998) (en banc); *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 977 (Fed. Cir. 1995) (en banc); Order Construing Patent Claims, Docket No. 105, 9/24/2007, at 3 and 12-13 and n. 10; Order Granting in Part and Denying in Part ACI' s Motion for Summary Judgment of Infringement of U.S. Patent Nos. 6,542,795 and 6,438,465, Docket No. 71, 7/10/2007 at 5; Order Denying American Honda' s Motion for Summary Judgment of Invalidity of U.S. Patents Nos. 6,459,961 and 6,587,759, Docket No. 334, 4/28/2008; Order Denying American Honda' s Motion for Summary Judgment of Invalidity of U.S. Patent No. 6,438,465, Docket No. 336, 4/29/08.

**ACI's Objections**

"The same claim meaning"

ACI objects to the inclusion of this language.  It is not found in the model instructions, and it is completely unnecessary, as it will be clear to the jury based on the other instructions. The inclusion of this additional language is extraneous and argumentative, and will only mislead or confuse the jury.  (*See* Dkt. Entry No. 350, Order re: Trial at 4e: "All instructions should be

short, concise, and neutral statements of law…argumentative instructions…will not be given).

Additional claim constructions for '465 Patent

ACI objects to Honda's inclusion of additional instructions regarding constructions of "query" and "selecting a result of the search." These "constructions" are found nowhere in the Court's Order Re: Claim Construction and/or any of the Court's Orders. In fact, during a meet-and-confer, counsel for Honda explained that this language was simply copied from one of Honda's briefs. In other words, Honda's position seeks a wishful-thinking revisiting of the Court's claim construction. The additional language is extraneous, unnecessary, and argumentative, and will only mislead or confuse the jury. (*See* Dkt. Entry No. 350, Order re: Trial at 4e: "All instructions should be short, concise, and neutral statements of law…argumentative instructions…will not be given). Accordingly, they should not be included in the jury instructions.

Additional claim construction for the '795 Patent

ACI similarly objects to the inclusion of additional language regarding the construction of "user description," *i.e.*, "[t]he description may be displayed or undisplayed at the time of utterance by the user." As with the additional instructions proposed by Honda for the '465 Patent, counsel for Honda has admitted that this language does not come from the Court's Orders, but rather from Honda's briefing. For at least the same reasons discussed above, it also should not be included in the jury instructions.

Additional claim construction for the '961 and '759 Patents

Honda's proposed "jury instruction" regarding claim construction is in actuality attorney argument against ACI's proposed jury instructions. Accordingly, it should under no circumstances be included in the final instructions to be read to the jury. (*See* Dkt. Entry No. 350, Order re: Trial at 4e: "All instructions should be short, concise, and neutral statements of law…argumentative instructions…will not be given). In contrast, ACI's proposed instruction is based on the language in the Court's Order Denying Honda's Motion for Summary Judgment of Invalidity of the '961 and '759 Patents. (*See* Dkt. Entry. No. 142, Order Denying American Honda's Motion for Summary Judgment of Invalidity of U.S. Patents Nos. 6,459,961 and 6,587,759 at 8, lns. 23-25) ("In other words, in the system described in the '605 Patent

Publication, the user is prompted to select "an" option, but not "the" option, as required by the language of the Claims at issue here.").  Accordingly, ACI's language should be adopted.

Additional claim constructions for the '497 Patent

As with the additional language proposed by Honda for the '465 and '795 Patents, ACI objects to the inclusion of additional language regarding the constructions of "at least one option indicating a second status" and "at least one option indicating a third status."  For at least the same reasons discussed above with respect to the instructions for the '465 and '795 Patents, Honda's proposal should not be included in the jury instructions.

**ACI's Proposed Instruction[13]**

I have interpreted the meaning of some of the language in the patent claims involved in this case.  You must accept those interpretations as correct.  My interpretation of the language should not be taken as an indication that I have a view regarding the issues of infringement and invalidity.  The decisions regarding infringement and invalidity are yours to make.

'795 and '465 Patents

The term "aspect" is construed as "part, accessory, capability, feature or function."

'795 Patent

The term "request" is construed according to its plain and ordinary meaning, and must include a "user description of the aspect of the vehicle."

The term "selecting, based on the user description," is construed according to its plain and ordinary meaning, and requires that the selecting be "based on the user description."

The term "user description" is construed as "a description of the vehicle aspect that originates with the user, not some other source."

'961 and '759 Patents

The term "prompting a user" is construed as "moving a user to action."

The term "prompting a user to select the option" requires prompting the user to select "the" option that results in coping information being provided to the user, not just prompting the

---

[13] N.D. Cali. Model Patent Jury Instructions, B.2.1, adapted

user to select any option.

The term "interrupting a provision of the information concerning the at least one device with a provision of information concerning the notable condition" is construed according to its plain and ordinary meaning, i.e., the information concerning the notable condition need not be related to the information then being provided.

The term "in response to the notable condition" is construed according to its plain and ordinary meaning, i.e., provision of the option on the display element occurs in response to the notable condition, not in response to any action on the part of the user.

The term "in response to the selection of the option" is construed according to its plain and ordinary meaning, i.e., provision of the selected information for coping with the notable condition occurs in response to the selection of the option, not in response to some other action on the part of the user.

'759 Patent

The term "a mechanism" is construed as means-plus-function. The recited function is "providing an alert indicating the notable condition, a provision of the information concerning the at least one device being interrupted by the alert." The corresponding structure is "an audio or visual interface, the LCD driver, software and/or operating circuitry."

'497 Patent

The term "associated with" is construed as "related to."

The term "the at least one option indicating a first status" is construed according to its plain and ordinary meaning, i.e., the first status of the option may be indicated audibly or visually.

The term "providing information concerning the selected at least one option" is construed to mean "providing a preview or purpose concerning the selected at least one option."

All other claim terms should be given their plain and ordinary meaning.

Authorities

*Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 384-391 (1996); *Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1304-13 (Fed. Cir. 1999); *Cybor Corp. v. FAS Techs.*, 138 F.3d 1448 (Fed. Cir. 1998) (*en banc*); *Markman v. Westview Instruments, Inc.*, 52

F.3d 967, 977 (Fed. Cir. 1995) (*en banc*); Order Construing Patent Claims, Docket No. 105, 9/24/2007, at 3; Order Granting in Part and Denying in Part ACI's Motion for Summary Judgment of Infringement of U.S. Patent Nos. 6,542,795 and 6,438,465, Docket No. 71, 7/10/2007 at 5; Order Denying American Honda's Motion for Summary Judgment of Invalidity of U.S. Patens Nos. 6,459,961 and 6,587,759, Docket No. 334, 4/28/2008.

## C.16. INFRINGEMENT UNDER THE DOCTRINE OF EQUIVALENTS

**Honda's Proposed Instruction**[14]

If you decide that American Honda's products do not literally infringe an asserted patent claim, you must then decide whether those products infringe the asserted claim under what is called the "doctrine of equivalents."

Under the doctrine of equivalents, the products can infringe an asserted patent claim if the products include parts that are identical or equivalent to the requirements of the claim.  If the products are missing an identical or equivalent part to even one requirement of the asserted patent claim, the products cannot infringe the claim under the doctrine of equivalents.  Thus, in making your decision under the doctrine of equivalents, you must look at each individual requirement of the asserted patent claim and decide whether the products have either an identical or equivalent part to that individual claim requirement.

A part of a product is equivalent to a requirement of an asserted claim if a person of ordinary skill in the field would think that the differences between the part and the requirement were not substantial as of the time of the alleged infringement.

One way to decide whether any difference between a requirement of an asserted claim and a part of the product is not substantial is to consider whether, as of the time of the alleged infringement, the part of the product performed substantially the same function, in substantially the same way, to achieve substantially the same result as the requirement in the patent claim.

**In deciding whether any difference between a claim requirement and the product is not substantial, you may consider whether, at the time of the alleged infringement, persons of ordinary skill in the field would have known of the interchangeability of the part with the claimed requirement. The known interchangeability between the claim requirement and the part of the product is not necessary to find infringement under the doctrine of equivalents. However, known interchangeability may support a conclusion that the difference between the part in the product and the claim requirement is not substantial.**

---

[14] N.D. Cali. Model Patent Jury Instructions, B.3.4

**The fact that a part of the product performs the same function as the claim requirement is not, by itself, sufficient to show known interchangeability.**

**ACI's Objections**

ACI objects to Honda's inclusion of additional language which is bracketed in the Model Patent Jury Instructions for the Northern District of California.  Honda proposes the following additional language:

> In deciding whether any difference between a claim requirement and the
> product is not substantial, you may consider whether, at the time of the
> alleged infringement, persons of ordinary skill in the field would have
> known of the interchangeability of the part with the claimed requirement.
> The known interchangeability between the claim requirement and the part
> of the product is not necessary to find infringement under the doctrine of
> equivalents. However, known interchangeability may support a conclusion
> that the difference between the part in the product and the claim
> requirement is not substantial. The fact that a part of the product performs
> the same function as the claim requirement is not, by itself, sufficient to
> show known interchangeability.

This language regarding interchangeability is not appropriate for this case as it is not at issue.  Accordingly it should be removed (*See* Model Patent Jury Instructions for the Northern District of California, Introduction: "Other language is bracketed as it may not be appropriate for a particular case.)  Inclusion of this extraneous, unnecessary language will only mislead or confuse the jury.  Therefore ACI requests that the Court decline to adopt Honda's additional language.

**ACI's Proposed Instruction**[15]

If you decide that American Honda's products do not literally infringe an asserted patent claim, you must then decide whether those products infringe the asserted claim under what is called the "doctrine of equivalents."

Under the doctrine of equivalents, the products can infringe an asserted patent claim if the products include parts that are identical or equivalent to the requirements of the claim.  If the products are missing an identical or equivalent part to even one requirement of the asserted patent claim, the products cannot infringe the claim under the doctrine of equivalents.  Thus, in making your decision under the doctrine of equivalents, you must look at each individual requirement of the asserted patent claim and decide whether the products have either an identical or equivalent part to that individual claim requirement.

A part of a product is equivalent to a requirement of an asserted claim if a person of ordinary skill in the field would think that the differences between the part and the requirement were not substantial as of the time of the alleged infringement.

One way to decide whether any difference between a requirement of an asserted claim and a part of the product is not substantial is to consider whether, as of the time of the alleged infringement, the part of the product performed substantially the same function, in substantially the same way, to achieve substantially the same result as the requirement in the patent claim.

Authorities

*Warner-Jenkinson Co., Inc. v. Hilton Davis Chem. Co.*, 520 U.S. 17 (1997); *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 609 (1950); *Abraxis Bioscience, Inc. v. Mayne Pharma (USA) Inc.*,  467 F.3d 1370, 1379-82 (Fed. Cir. 2006); *Pfizer, Inc. v. Teva Pharms., USA, Inc.*, 429 F.3d 1364, 1378 (Fed. Cir. 2005); *Johnson & Johnston Assoc. v. R.E. Service Co.*, 285 F.3d 1046 (Fed. Cir. 2002) (*en banc*); *Multiform Desiccants, Inc. v. Medzam, Ltd.*, 133 F.3d

---

[15] N.D. Cali. Model Patent Jury Instructions, B.3.4

1473, 1480 (Fed. Cir. 1998); *Dolly, Inc. v. Spalding & Evenflo Cos.*, 16 F.3d 394, 397 (Fed. Cir. 1994).

# C.18. WILLFUL INFRINGEMENT

**Honda's Proposed Instruction**[16]

In this case, ACI argues that American Honda is a willful infringer of ACI's patents. To prove willful infringement, ACI must first persuade you that American Honda infringed a valid and enforceable claim of ACI's patent. The requirements for proving such infringement were discussed in my prior instructions.

In addition, to prove willful infringement, ACI must persuade you that it is highly probable that **prior to the filing date of the complaint**, American Honda acted with reckless disregard of the claims of one or more of ACI's patents.

To demonstrate such "reckless disregard," ACI must satisfy a two-part test. The first part of the test is objective. ACI must persuade you that Honda acted despite an objectively high likelihood that its actions constituted infringement of a valid and enforceable patent. The state of mind of American Honda is not relevant to this inquiry. **Rather, the appropriate inquiry is whether the defenses put forth by American Honda fail to raise any substantial question with regard to infringement or validity or enforceability. Only if you conclude that the defenses fail to raise any substantial question with regard to infringement or validity or enforceability, do you need to consider the second part of the test.**

The second part of the test does depend on the state of mind of American Honda. ACI must persuade you that American Honda actually knew, or it was so obvious that American Honda should have known, that its actions constituted infringement of a valid and enforceable patent.

In deciding whether American Honda acted with reckless disregard for ACI's patents, you should consider all of the facts surrounding the alleged infringement including, but not limited to, the following:

---

[16] N.D. Cali. Model Patent Jury Instructions, B.3.11, adapted

(1)     Whether American Honda acted in a manner consistent with the standards of

commerce for its industry; and

(2)     Whether American Honda intentionally copied a product of ACI covered by the

patent.

<u>Authorities</u>

*35 U.S.C. § 284; In re Seagate Tech., LLC*, 2007 U.S. App. LEXIS 19768 (Fed. Cir. Aug.

20, 2007); *Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.*, 383 F.3d 1337,

1345 (Fed. Cir. 2004) (*en banc*); *Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l,*

*Inc.,* 246 F.3d 1336, 1346 (Fed. Cir. 2001); *WMS Gaming Inc. v. Int'l Game Tech.*, 184 F.3d

1339, 1354 (Fed. Cir. 1999); *Read Corp. v. Portec, Inc.*, 970 F.2d 816 (Fed. Cir. 1992);

*Gustafson, Inc. v. Intersystems Indus. Prods., Inc.,* 897 F.2d 508, 510 (Fed. Cir. 1990); *Energy*

*Transp. Group, Inc. v. William Demant Holding AS*, No. 05-422-GMS, 2008 WL 114861 (D.

Del. Jan. 7, 2008); Annotated Patent Digest § 31.46 (2008).

## **ACI's Objections**

ACI objects to Honda's inclusion of the following language which is bracketed in the

Model Patent Jury Instructions for the Northern District of California: "prior to the filing date of

the complaint."  The Federal Circuit has made it clear that a willfulness finding need not solely

be predicated on pre-suit behavior.  (*See In re Seagate Tech., LLC*, 497 F.3d 1360, 1374 (Fed.

Cir. 2007): while "in ordinary circumstances, willfulness will depend on an infringer's

prelitigation conduct.  It is certainly true that patent infringement is an ongoing offense that can

continue after litigation has commenced.").  In this case, ACI will present evidence of events

occurring both before and after the complaint was filed demonstrating that Honda willfully

infringed ACI's patents.   Therefore, this language is improper in this case, and removal of the

bracketed language will prevent jury confusion.

ACI objects to Honda's inclusion of the following language:

Rather, the appropriate inquiry is whether the defenses put forth by

American Honda fail to raise any substantial question with regard

to infringement or validity or enforceability. Only if you conclude

that the defenses fail to raise any substantial question with regard to

infringement or validity or enforceability, do you need to consider

the second part of the test.

While this language is included in the Model Patent Jury Instructions for the Northern District of California, ACI objects to the inclusion of this language because it is a misinterpretation of the Federal Circuit's holding in *Seagate*.  *See In re Seagate Tech., LLC*, 497 F.3d 1360, 1371 n.5, 1385 (Fed. Cir. 2007).  The use of the term "substantial question" in *Seagate* was made solely in reference to conduct occurring after the filing of the complaint.  *Id.* at 1374.  In this case, pre-filing conduct is critical to the willfulness inquiry.  Further, no post-*Seagate* willfulness cases were found utilizing such language in the manner proposed by Honda.

ACI also objects to Honda's removal of the following factor which should be considered in determining whether Honda willfully infringed:

> (3)  Whether American Honda relied on a legal opinion that (1) Honda
>
> did not infringe ACI's patent(s) or that (2) the patent(s) were
>
> invalid.

Importantly, "nothing in *Seagate* forbids a jury to consider whether a defendant obtained advice of counsel as part of the totality of the circumstances in determining willfulness." *Energy Transp. Group, Inc. v. William Demant Holding AS*, No. 05-422-GMS, 2008 WL 114861, at *1 (D. Del. Jan. 7, 2008) (denying defendant's motion *in limine* to preclude evidence that it did not obtain an opinion of counsel from the jury); *see also* Annotated Patent Digest § 31.46 (2008); *Franklin Electric Co., Inc. v. Dover Corp.*, No. 05-C-598-S, 2007 WL 5067678, at *8 (W.D. Wis. Nov. 15, 2007) (stating that "defendant's failure to seek advice of counsel prior to selling the accused devices . . . goes to the second component of the Seagate test – what defendant knew or should have known with respect to the likelihood of infringement").  Moreover, the *McKesson* court itself states that "cases applying *Knorr* have held that in the context of an absence of an opinion of counsel, that the jury may consider that fact in its willful infringement analysis (without inferences about the nature of any potential opinion)." *McKesson Information Solutions Inc. v. Bridge Medical Inc.*, 434 F.Supp.2d 810, 811 (E.D. Cal. 2006) (emphasis original) (citing *IMX, Inc. v. Lendingtree, LLC*, No. Civ. 03-1067, 2006 WL 38918, at *1 (D. Del. Jan. 6, 2006);

*Third Wave Tech. v. Stratagene Corp.*, 405 F.Supp.2d 991, 1016-17 (W.D. Wis. 2005)).
Therefore, ACI requests that the Court include this language.

**ACI's Proposed Instruction[17]**

In this case, ACI argues that American Honda is a willful infringer of ACI's patents. To prove willful infringement, ACI must first persuade you that American Honda infringed a valid and enforceable claim of ACI's patent. The requirements for proving such infringement were discussed in my prior instructions.

In addition, to prove willful infringement, ACI must persuade you that it is highly probable that American Honda acted with reckless disregard of the claims of one or more of ACI's patents.

To demonstrate such "reckless disregard," ACI must satisfy a two-part test. The first part of the test is objective. ACI must persuade you that Honda acted despite an objectively high likelihood that its actions constituted infringement of a valid and enforceable patent. The state of mind of American Honda is not relevant to this inquiry.

The second part of the test does depend on the state of mind of American Honda. ACI must persuade you that American Honda actually knew, or it was so obvious that American Honda should have known, that its actions constituted infringement of a valid and enforceable patent.

In deciding whether American Honda acted with reckless disregard for ACI's patents, you should consider all of the facts surrounding the alleged infringement including, but not limited to, the following:

(1)     Whether American Honda acted in a manner consistent with the standards of commerce for its industry;

---

[17] N.D. Cali. Model Patent Jury Instructions, B.3.11, adapted

(2)   Whether American Honda intentionally copied a product of ACI covered by the

patent; and

(3)   Whether American Honda relied on a legal opinion that (1) Honda did not

infringe ACI's patent(s) or that (2) the patent(s) were invalid.

<u>Authorities</u>

*35 U.S.C. § 284; In re Seagate Tech., LLC*, 2007 U.S. App. LEXIS 19768 (Fed. Cir. Aug.

20, 2007); *Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.*, 383 F.3d 1337,

1345 (Fed. Cir. 2004) (*en banc*); *Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l,*

*Inc.,* 246 F.3d 1336, 1346 (Fed. Cir. 2001); *WMS Gaming Inc. v. Int'l Game Tech.*, 184 F.3d

1339, 1354 (Fed. Cir. 1999); *Read Corp. v. Portec, Inc.*, 970 F.2d 816 (Fed. Cir. 1992);

*Gustafson, Inc. v. Intersystems Indus. Prods., Inc.,* 897 F.2d 508, 510 (Fed. Cir. 1990); ); *Energy*

*Transp. Group, Inc. v. William Demant Holding AS*, No. 05-422-GMS, 2008 WL 114861 (D.

Del. Jan. 7, 2008); Annotated Patent Digest § 31.46 (2008).

## C.20. WRITTEN DESCRIPTION

**Honda's Proposed Instruction**[18]

American Honda can meet its burden of proving that a patent claim is invalid by showing that the patent does not contain an adequate written description of the claimed invention. The purpose of this written description requirement is to make sure that a patent describes the technology it seeks to claim as an invention and to demonstrate that the inventor was in possession of the invention at the time the application for the patent was filed, even though the claims may have been changed or new claims added since that time. The written description requirement is satisfied if a person of ordinary skill in the field reading the patent application as originally filed would recognize that the patent application described the invention as claimed, even though the description may not use the exact words found in the claim. A requirement in a claim need not be specifically disclosed in the patent application as originally filed if a person of ordinary skill would understand that the missing requirement is necessarily implied in the patent application as originally filed.

**ACI's Objections**

ACI reserves its objection to this language pending the Court's determination as to whether Honda can argue 35 U.S.C. § 112 invalidity positions at trial.  Should the Court decide that Honda can argue written description, the parties are in agreement on the language of the instruction.

**ACI's Proposed Instruction**[19]

American Honda can meet its burden of proving that a patent claim is invalid by showing that the patent does not contain an adequate written description of the claimed invention. The purpose of this written description requirement is to make sure that a patent describes the technology it seeks to claim as an invention and to demonstrate that the inventor was in possession of the invention at the time the application for the patent was filed, even though the

---

[18] N.D. Cal. Model Instruction No. 4.2a

[19] N.D. Cal. Model Instruction No. 4.2a

claims may have been changed or new claims added since that time. The written description requirement is satisfied if a person of ordinary skill in the field reading the patent application as originally filed would recognize that the patent application described the invention as claimed, even though the description may not use the exact words found in the claim. A requirement in a claim need not be specifically disclosed in the patent application as originally filed if a person of ordinary skill would understand that the missing requirement is necessarily implied in the patent application as originally filed.

## C.21. INDEFINITENESS

**Honda's Proposed Instruction[20]**

The patent laws have requirements for the way in which patent claims are written. Patent claims must be sufficiently clear that a person of ordinary skill in the field of the invention reading them is able to determine what the claims cover and what they do not cover. A person of ordinary skill is a person of average education and training in the field. If a patent claim does not meet this requirement, then the claim is said to be indefinite, and the claim is invalid.

The amount of detail required for a claim to be definite depends on the particular invention, the prior art and the description of the invention contained in the patent. A patent claim, when read along with the rest of the patent, must reasonably inform those skilled in the field of the invention what the patent claims cover. Simply because a definition for language in a patent claim can be supported by the rest of the patent, however, does not end the indefiniteness inquiry. The claim is still indefinite if a person of ordinary skill cannot translate that definition into meaningfully precise claim scope.

The scope of claim language cannot depend solely on the unrestrained, subjective opinion of a particular individual purportedly practicing the invention. Some objective standard must be provided in order to allow the public to determine the scope of the claimed invention. When a claim construction requires a person of ordinary skill to make a separate infringement determination for every set of circumstances in which a system may be used, and when such determinations are likely to result in differing outcomes (sometimes infringing and sometimes not), that claim construction is likely to be indefinite.

Authorities

*LNP Eng'g Plastics, Inc. v. Miller Waste Mills, Inc.*, 275 F.3d 1347, 1357 (Fed. Cir. 2001); *S3 Inc. v. nVidia Corp.*, 259 F.3d 1364, 1367 (Fed. Cir. 2001); *N. Am. Vaccine Inc. v. Am. Cynamid Co.*, 7 F.3d 1571, 1579-80 (Fed. Cir. 1993); *W.L. Gore & Assoc., Inc.* v. *Garlock, Inc.*,

[20] Federal Circuit Bar Assn. (2005) Model Instruction No. 10.5 and American Bar Assn. (2005) Model Patent Jury Instruction No. 9.1.4.

842 F.2d 1275, 1280 (Fed. Cir. 1988); *Halliburton Energy Services, Inc. v. M-I LLC*, 514 F. 3d 1244, 1251 and 1255 (Fed. Cir. 2008); *Datamize LLC v. Plumbtree Software, Inc.*, 417 F.3d 1342, 1350 (Fed. Cir. 2005).

## ACI's Objections

ACI objects to Honda's proposed indefiniteness instruction in its entirety.  No indefiniteness instruction is found in the Northern District of California's Model Patent Jury Instructions.  Nor is it found in any other current model instructions.  Indefiniteness is not a question for the jury.  As the Seventh Circuit Pattern Civil Jury Instructions Committee explains, "[t]he Committee did not include a jury instruction regarding indefiniteness because the Federal Circuit recently made it clear that invalidity due to indefiniteness is a question of law to be determined by the court. *See Aero Prods. Int'l Inc. v. Intex Recreation Corp.*, 466 F.3d 1000, 1015-16 (Fed. Cir. 2006)."  Seventh Circuit Proposed Pattern Patent Civil Jury Instructions (2008).  Honda has instead constructed this instruction from an amalgamation of two sets of model jury instructions dated before *Aero Prods*.

This instruction is extraneous and unnecessary.  Further, it is argumentative, and can only serve to mislead or confuse the jury.  (*See* Dkt. Entry No. 350, Order re: Trial at 4e: "All instructions should be short, concise, and neutral statements of law…argumentative instructions…will not be given).  As such, it should be entirely excluded.  However, if the Court decides that an instruction on indefiniteness should be presented to the jury, ACI's proposed instruction sets forth a more fair and balanced instruction.

## ACI's Proposed Instruction

The Patent Laws require the claims of a patent to be sufficiently definite that one skilled in the art can determine the limits of the claimed invention.  Honda alleges that certain claims of the patents-in-suit do not meet this requirement and thus should be considered invalid.  You must initially presume that the claims of the patents-in-suit meet this "definiteness" requirement.  Then you must decide whether Honda has proven by clear and convincing evidence that any of these claims is invalid for failure to meet this definiteness requirement.

The amount of detail required to be included in claims depends on the particular invention and the prior art, and is not to be evaluated in the abstract but in conjunction with the

patent specification, prosecution history, and drawings as a whole.  If the claims, read in light of the patent's specification, drawings, and prosecution history, reasonably apprise those skilled in the art of the proper scope of the invention, and if the language is as precise as the subject matter permits, then the claims are not indefinite.  If Honda has shown by clear and convincing evidence that the claims do not provide such reasonable definiteness, then you may so find.

Simply because some claim language may not be precise does not automatically render a claim invalid.  You must determine whether one of ordinary skill in the art would understand what is covered when the claim is read in light of the specification, drawings, and prosecution history.  Even if that person of ordinary skill would need to make certain scientific experimentation in order to determine the limits of the claims of the patent, that would not necessarily be a basis for holding the claims invalid, unless you found that the amount of experimentation required would be excessive.

Authorities

*North American Vaccine, Inc. v. American Cyanamid Co.*, 7 F.3d 1571, 1579-80 (Fed. Cir. 1993); *Bancorp Services, L.L.C. v. Hartford Life Ins. Co.*, 359 F.3d 1367, 1371 (Fed. Cir. 2004); *Aero Prods. Int'l Inc. v. Intex Recreation Corp.,* 466 F.3d 1000, 1015-16 (Fed. Cir. 2006); *W.L. Gore & Associates, Inc. v. Garlock, Inc.*, 721 F.2d 1540, 1557 (Fed. Cir. 1983).

## C.22. ANTICIPATION

**Honda's Proposed Instruction[21]**

A patent claim is invalid if the claimed invention is not new. For the claim to be invalid because it is not new, all of its requirements must have existed in a single device that predates the claimed invention, or must have been described in a single previous publication or patent that predates the claimed invention. In patent law, these previous devices, publications or patents are called "prior art references." If a patent claim is not new we say it is "anticipated" by a prior art reference.

The description in the written reference does not have to be in the same words as the claim, but all of the requirements of the claim must be there, either stated or necessarily implied, so that someone of ordinary skill in the field of **vehicle telematics** looking at that one reference would be able to make and use the claimed invention.

Here is a list of the ways that Honda can show that a patent claim was not new:

– if the claimed invention was already publicly known or publicly used by others in the United States before the date of conception; or

– if the claimed invention was already patented or described in a printed publication anywhere in the world before the date of conception. **A reference is a printed publication if it is accessible to those interested in the field, even if it is difficult to find. It is not necessary that the printed publication be available to every member of the public. The information must, however, have been maintained in some form, such as printed pages, typewritten pages, magnetic tape, microfilm, photographs, or photocopies. The term "printed publication" takes into account advances in the technologies of data storage, retrieval, and dissemination. An issued patent is a printed publication. A published patent application is a printed publication as of its publication date.**

---

[21] N.D. Cali. Model Patent Jury Instructions, B.4.3a1, adapted

Since it is in dispute, you must determine a date of conception for the claimed invention. Conception is the mental part of an inventive act and is proven when the invention is shown in its complete form by drawings, disclosure to another or other forms of evidence presented at trial. **An inventor's testimony regarding the facts of invention, including conception, must be corroborated by independent evidence, which may consist of testimony of a witness, other than the inventor, who has no stake in the outcome of the litigation.**

Authorities

35 U.S.C. § 102(a), (c), (e), (f) and (g); *Apotex U.S.A., Inc. v. Merck & Co*., 254 F.3d 1031, 1035 (Fed. Cir. 2001); *Mycogen Plant Science, Inc. v. Monsanto Co.*, 243 F.3d 1316, 1330 (Fed. Cir. 2001); *Ecolochem, Inc. v. S. Cal. Edison Co.*, 227 F.3d 1361, 1367-70 (Fed. Cir. 2000); *Singh v. Brake*, 222 F.3d 1362, 1366-70 (Fed. Cir. 2000); *Pannu v. Iolab Corp.*, 155 F.3d 1344, 1349 (Fed. Cir. 1998); *Gambro Lundia AB v. Baxter Healthcare Corp.*, 110 F.3d 1573, 1576-78 (Fed. Cir. 1997); *Lamb-Weston, Inc. v. McCain Foods, Ltd.*, 78 F.3d 540, 545 (Fed. Cir. 1996); *In re Bartfeld*, 925 F.2d 1450 (Fed. Cir. 1985); *Ralston Purina Co. v. Far-Mar-Co, Inc.*, 772 F.2d 1570, 1574 (Fed. Cir. 1985); *American Stock Exch., LLC v. Mopies*, 250 F. Supp. 2d 323 (S.D.N.Y. 2003); ***In re Wyer*, 655 F.2d 221, 226 (C.C.P.A. 1981); AIPLA Model Instruction No. 6.3; *In re Wyer*, 655 F.2d 221, 227 (C.C.P.A. 1981); *In re Hall*, 781 F.2d 897-98 (Fed. Cir. 1986); *In re Garner*, 508 F.3d 1376, 1380 (Fed. Cir. 2007).**

**ACI's Objections**

"vehicle telematics"/"human factors"

ACI objects to Honda's characterization of the field of the invention as "vehicle telematics." ACI's description of the field of the inventions as "human factors" is a more accurate description of the field of the remaining patents-in-suit. According to Dictionary.com, cited by counsel for Honda at the hearing on the parties' motions *in limine*, "telematics" refers to "[t]he combination of telecommunications and computing. Data communications between systems and devices." (*See* Dictionary.com definition of "telematics," available at http://dictionary.reference.com/browse/telematics). The technological field of

telecommunications and data communications may have been relevant with respect to certain of the original patents-in-suit, such as the '261 and '824 patents ("the NavTraffic Patents") or the '964 and '485 patents ("the Recall Patents").  However, the asserted claims of the remaining patents-in-suit are not directed to telecommunications systems, but to human factors and human-computer interfaces.  The remaining patents-in-suit fit more squarely within this field.  Accordingly, the Court should adopt ACI's more accurate description of the field of the inventions.

Printed Publications

ACI objects to Honda's inclusion of additional overly-detailed and confusing jury instructions regarding printed publications.  These instructions are not contained within the Northern District of California Model Patent Jury Instructions.  As such, this instruction is extraneous.  It is also unnecessary and argumentative, and will only mislead or confuse the jury.  (See Dkt. Entry No. 350, Order re: Trial at 4e: "All instructions should be short, concise, and neutral statements of law…argumentative instructions…will not be given).

Further, the additional instruction misstates the law and is one-sided.  The actual standard for determining whether something is a printed publication is whether the reference is "available to the extent that persons interested and ordinarily skilled in the subject matter or art, exercising reasonable diligence, can locate it."  In re Wyer, 655 F.2d 221, 226 (C.C.P.A. 1981).  For example, the Federal Circuit has found that printed reports distributed to fifty persons or organizations were not printed publications within the meaning of 35 U.S.C. § 102(b), even though copies of the documents were also available from a corporate library, access to which was controlled by the company.  Northern Telecom, Inc. v. Datapoint Corp., 908 F.2d 931, 936-37 (Fed. Cir. 1990).  As part of its analysis, the court noted that the documents contained a legend restricting reproduction or further dissemination.  Id. at 936.  Honda's instruction ignores this critical distinction.  Therefore, Honda's additional biased language should be excluded.

Inventor Testimony

ACI objects to Honda's inclusion of language regarding inventor testimony in this instruction.  Again, these instructions are not included within the Northern District of California Model Patent Jury Instructions.  As such, this instruction is extraneous, unnecessary, and

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

argumentative, and will only mislead or confuse the jury.  (*See* Dkt. Entry No. 350, Order re:

Trial at 4e: "All instructions should be short, concise, and neutral statements of

law…argumentative instructions…will not be given).  It should also be excluded.

## ACI's Proposed Instruction[22]

A patent claim is invalid if the claimed invention is not new. For the claim to be invalid

because it is not new, all of its requirements must have existed in a single device that predates

the claimed invention, or must have been described in a single previous publication or patent that

predates the claimed invention.  In patent law, these previous devices, publications or patents are

called "prior art references." If a patent claim is not new we say it is "anticipated" by a prior art

reference.

The description in the written reference does not have to be in the same words as the

claim, but all of the requirements of the claim must be there, either stated or necessarily implied,

so that someone of ordinary skill in the field of human factors looking at that one reference

would be able to make and use the claimed invention.

Here is a list of the ways that Honda can show that a patent claim was not new:

– if the claimed invention was already publicly known or publicly used by others

in the United States before the date of conception; or

– if the claimed invention was already patented or described in a printed

publication anywhere in the world before the date of conception.

Since it is in dispute, you must determine a date of conception for the claimed invention.

Conception is the mental part of an inventive act and is proven when the invention is shown in its

complete form by drawings, disclosure to another or other forms of evidence presented at trial.

Authorities

35 U.S.C. § 102(a), (c), (e), (f) and (g); *Apotex U.S.A., Inc. v. Merck & Co.*, 254 F.3d

1031, 1035 (Fed. Cir. 2001); *Mycogen Plant Science, Inc. v. Monsanto Co.*, 243 F.3d 1316, 1330

(Fed. Cir. 2001); *Ecolochem, Inc. v. S. Cal. Edison Co.*, 227 F.3d 1361, 1367-70 (Fed. Cir.

---

[22] N.D. Cali. Model Patent Jury Instructions, B.4.3a1, adapted

2000); *Singh v. Brake*, 222 F.3d 1362, 1366-70 (Fed. Cir. 2000); *Pannu v. Iolab Corp.*, 155 F.3d 1344, 1349 (Fed. Cir. 1998); *Gambro Lundia AB v. Baxter Healthcare Corp.*, 110 F.3d 1573, 1576-78 (Fed. Cir. 1997); *Lamb-Weston, Inc. v. McCain Foods, Ltd.*, 78 F.3d 540, 545 (Fed. Cir. 1996); *In re Bartfeld*, 925 F.2d 1450 (Fed. Cir. 1985); *Ralston Purina Co. v. Far-Mar-Co, Inc.*, 772 F.2d 1570, 1574 (Fed. Cir. 1985); *American Stock Exch., LLC v. Mopies*, 250 F. Supp. 2d 323 (S.D.N.Y. 2003); *In re Wyer*, 655 F.2d 221, 226 (C.C.P.A. 1981).

## C.23. STATUTORY BARS

**Honda's Proposed Instruction**[23]

A patent claim is invalid if the patent application was not filed within the time required by law. This is called a " statutory bar." For a patent claim to be invalid by a statutory bar, all of its requirements must have been present in one prior art reference dated more than one year before the patent application was filed. Here is a list of ways Honda can show that the patent application was not timely filed:

– if the claimed invention was already patented or described in a printed publication anywhere in the world before January 28, 1996. **A reference is a printed publication if it is accessible to those interested in the field, even if it is difficult to find. It is not necessary that the printed publication be available to every member of the public. The information must, however, have been maintained in some form, such as printed pages, typewritten pages, magnetic tape, microfilm, photographs, or photocopies. The term "printed publication" takes into account advances in the technologies of data storage, retrieval, and dissemination. An issued patent is a printed publication. A published patent application is a printed publication as of its publication date**; or

– if the claimed invention was already being openly used in the United States before January 28, 1996 and that use was not primarily an experimental use (a) controlled by the inventor, and (b) to test whether the invention worked for its intended purpose; or

**– if a device or method using the claimed invention was sold or offered for sale in the United States.**

For a claim to be invalid because of a statutory bar, all of the claimed requirements must have been either (1) disclosed in a single prior art reference, (2) implicitly disclosed in a reference to one skilled in the field, or (3) must have been present in the reference, whether or not that was understood at the time. The disclosure in a reference does not have to be in the same

---

[23] N.D. Cali. Model Patent Jury Instructions, B.4.3a2, adapted

words as the claim, but all the requirements must be there, either described in enough detail or necessarily implied, to enable someone of ordinary skill in the field of vehicle telematics looking at the reference to make and use the claimed invention.

Authorities

35 U.S.C. § 102(b) and (d); *Pfaff v. Wells Elec. Inc.*, 525 U.S. 55 (1998); *Schering Corp. v. Geneva Pharms.*, 339 F.2d 1273 (Fed Cir. 2003); *Helifix Ltd. v. Blok-Lok, Ltd.*, 208 F.3d 1339, 1346 (Fed. Cir. 2000); *Abbot Labs. v. Geneva Pharms., Inc.*, 182 F.3d 1315, 1318 (Fed. Cir. 1999); *Finnigan Corp. v. Int' l Trade Comm'n*, 180 F.3d 1354 (Fed. Cir. 1999); *J.A. LaPorte, Inc. v. Norfolk Dredging Co.*, 787 F.2d 1577, 1581 (Fed. Cir. 1986); *In re Hall*, 781 F.2d 897, 898-99 (Fed. Cir. 1986); *D.L. Auld Co. v. Chroma Graphics Corp.*, 714 F.2d 1144, 1150 (Fed. Cir.1983); **AIPLA Model Instruction No. 6.3;** ***In re Wyer*, 655 F.2d 221, 227 (C.C.P.A. 1981); I*n re Hall*, 781 F.2d 897-98 (Fed. Cir. 1986).**

**ACI's Objections**

Printed Publication

ACI objects to Honda's inclusion of additional overly-detailed jury instructions regarding printed publications.  These instructions are not included in the Northern District model jury instructions.  As such, they are extraneous and should be deleted for the same reasons discussed in ACI's objections to Honda's proposed instruction for Anticipation.  *See supra,* ACI's Objections to C.22 Anticipation.

"if a device or method using the claimed invention was sold or offered for sale in the United States."

ACI objects to Honda's inclusion of this language as extraneous and unnecessary.  In the model, the instruction states: "choose those that apply." This statutory bar does not apply in this case and is therefore unnecessary, extraneous, and likely to confuse or mislead the jury.  Therefore, ACI requests that the Court adopt ACI's instruction instead.

**ACI's Proposed Instruction[24]**

---

[24] N.D. Cali. Model Patent Jury Instructions, B.4.3a2, adapted

A patent claim is invalid if the patent application was not filed within the time required by law.  This is called a "statutory bar."  For a patent claim to be invalid by a statutory bar, all of its requirements must have been present in one prior art reference dated more than one year before the patent application was filed.  Here is a list of ways Honda can show that the patent application was not timely filed:

– if the claimed invention was already patented or described in a printed publication anywhere in the world before January 28, 1996; or

– if the claimed invention was already being openly used in the United States before January 28, 1996 and that use was not primarily an experimental use (a) controlled by the inventor, and (b) to test whether the invention worked for its intended purpose.

For a claim to be invalid because of a statutory bar, all of the claimed requirements must have been either (1) disclosed in a single prior art reference, (2) implicitly disclosed in a reference to one skilled in the field, or (3) must have been present in the reference, whether or not that was understood at the time.  The disclosure in a reference does not have to be in the same words as the claim, but all the requirements must be there, either described in enough detail or necessarily implied, to enable someone of ordinary skill in the field of human factors looking at the reference to make and use the claimed invention.

Authorities

35 U.S.C. § 102(b) and (d); *Pfaff v. Wells Elec. Inc.*, 525 U.S. 55 (1998); *Schering Corp. v. Geneva Pharms.,* 339 F.2d 1273 (Fed Cir. 2003); *Helifix Ltd. v. Blok-Lok, Ltd.*, 208 F.3d 1339, 1346 (Fed. Cir. 2000); *Abbot Labs. v. Geneva Pharms., Inc.*, 182 F.3d 1315, 1318 (Fed. Cir. 1999); *Finnigan Corp. v. Int'l Trade Comm'n*, 180 F.3d 1354 (Fed. Cir. 1999); *J.A. LaPorte, Inc. v. Norfolk Dredging Co.*, 787 F.2d 1577, 1581 (Fed. Cir. 1986); *In re Hall*, 781 F.2d 897, 898-99 (Fed. Cir. 1986); *D.L. Auld Co. v. Chroma Graphics Corp.*, 714 F.2d 1144, 1150 (Fed. Cir. 1983).

# C.24. OBVIOUSNESS

**Honda's Proposed Instruction**[25]

Not all innovations are patentable. A patent claim is invalid if the claimed invention would have been obvious to a person of ordinary skill in the field at the time the application was filed. This means that even if all of the requirements of the claim cannot be found in a single prior art reference that would anticipate the claim or constitute a statutory bar to that claim, a person of ordinary skill in the field of vehicle telematics who knew about all this prior art would have come up with the claimed invention.

However, a patent claim composed of several elements is not proved obvious merely by demonstrating that each of its elements was independently known in the prior art. In evaluating whether such a claim would have been obvious, you may consider whether American Honda has identified a reason that would have prompted a person of ordinary skill in the field to combine the elements or concepts from the prior art in the same way as in the claimed invention. There is no single way to define the line between true inventiveness on one hand (which is patentable) and the application of common sense and ordinary skill to solve a problem on the other hand (which is not patentable). For example, market forces or other design incentives may be what produced a change, rather than true inventiveness. You may consider whether the change was merely the predictable result of using prior art elements according to their known functions, or whether it was the result of true inventiveness. You may also consider whether there is some teaching or suggestion in the prior art to make the modification or combination of elements claimed in the patent. Also, you should consider whether the innovation applies a known technique that had been used to improve a similar device or method in a similar way. You may also consider whether the claimed invention would have been obvious to try, meaning that the claimed innovation was one of a relatively small number of possible approaches to the problem with a reasonable expectation of success by those skilled in the art. However, you must be

---

[25] N.D. Cali. Model Patent Jury Instructions, B.4.3b (Alternative 2)

careful not to determine obviousness using the benefit of hindsight; many true inventions might seem obvious after the fact. You should put yourself in the position of a person of ordinary skill in the field at the time the claimed invention was made and you should not consider what is known today or what is learned from the teaching of the patent.

**For example, if the claimed invention combined elements known in the prior art and the combination yielded results that were predictable to a person of ordinary skill in the art at the time of the invention, then this evidence would make it more likely that the claim was obvious. Or if a technique has been used to improve one device, and a person of ordinary skill in the art would recognize that it would improve similar devices in the same way, using the technique is obvious unless its actual application is beyond his or her skill. An example might be applying modern electronics to older mechanical devices. On the other hand, if the combination of known elements yielded unexpected or unpredictable results, or if the prior art teaches away from combining the known elements, then this evidence would make it more likely that the claim that successfully combined those elements was not obvious.**

The ultimate conclusion of whether a claim is obvious should be based upon your determination of several factual decisions. First, you must decide the level of ordinary skill in the field that someone would have had at the time the claimed invention was made. Second, you must decide the scope and content of the prior art. Third, you must decide what difference, if any, existed between the claimed invention and the prior art. Finally, you should consider any of the following factors that you find have been shown by the evidence:

(1)     commercial success of a product due to the merits of the claimed invention;

(2)     a long felt need for the solution provided by the claimed invention;

(3)     unsuccessful attempts by others to find the solution provided by the claimed invention;

(4)     copying of the claimed invention by others;

(5)     unexpected and superior results from the claimed invention;

(6)     acceptance by others of the claimed invention as shown by praise from others in the field or from the licensing of the claimed invention;

(7)     other evidence tending to show nonobviousness;

(8)     independent invention of the claimed invention by others before or at about the same time as the named inventor thought of it; and

(9)     other evidence tending to show obviousness.

Authorities

35 U.S.C. § 103; *Graham v. John Deere Co.*, 383 U.S. 1 (1966); *KSR Int' l Co. v. Teleflex, Inc.*, 550 U.S. ___ (2007); *Ruiz v. A.B. Chance Co.*, 234 F.3d 654 (Fed. Cir. 2000); *Arkie Lures, Inc. v. Gene Larew Tackle, Inc.*, 119 F.3d 953, 957 (Fed. Cir. 1997); *Specialty Composites v. Cabot Corp.*, 845 F.2d 981, 991 (Fed. Cir. 1988); *Windsurfing Int' l, Inc. v. AMF, Inc.*, 782 F.2d 995, 1000 (Fed. Cir. 1986); *Pentec. Inc. v. Graphic Controls Corp.*, 776 F.2d 309, 313 (Fed. Cir. 1985). *See Novo Nordisk A/S v. Becton Dickinson & Co.*, 304 F.3d 1216, 1219-20 (Fed. Cir. 2002); **AIPLA Model Instruction No. 7.2;** ***Leapfrog Enterprises v. Fisher Price***, **485 F.3d 1157, 1161 (Fed. Cir. 2007).**

## ACI's Objections

ACI objects to Honda's obviousness instruction as it would give the jury the power to determine the ultimate question of obviousness.  Instead, it is the Court's province to make the legal conclusion of obviousness based on underlying factual determinations made by the jury. *See KSR Int'l, Co. v. Teleflex, Inc.*, 127 S.Ct. 1727, 1745 (2007); *see also* Model Patent Jury Instructions for the Northern District of California, 4.3b Obviousness – Alternative 1 at n. 9). Accordingly, Honda's proposed instruction includes extraneous and unnecessary language which would mislead and confuse the jury, who is not tasked with the ultimate determination of obviousness.

If, however, the Court agrees that obviousness should go to the jury for an advisory opinion, ACI objects to the extent it deviates from the Model Patent Jury Instructions for the Northern District of California.  Honda adds the following language to the model instruction:

For example, if the claimed invention combined elements known in the prior art and the combination yielded results that were

predictable to a person of ordinary skill in the art at the time of the
invention, then this evidence would make it more likely that the
claim was obvious. Or if a technique has been used to improve one
device, and a person of ordinary skill in the art would recognize
that it would improve similar devices in the same way, using the
technique is obvious unless its actual application is beyond his or
her skill. An example might be applying modern electronics to
older mechanical devices. On the other hand, if the combination of
known elements yielded unexpected or unpredictable results, or if
the prior art teaches away from combining the known elements,
then this evidence would make it more likely that the claim that
successfully combined those elements was not obvious.

Honda's proposed inclusion of such Honda-favorable language in the instruction makes
it argumentative, extraneous, unnecessary, and will only mislead or confuse the jury.  (*See* Dkt.
Entry No. 350, Order re: Trial at 4e: "All instructions should be short, concise, and neutral
statements of law…argumentative instructions…will not be given").  As pointed out previously,
when advisory groups draft the model instructions, they balance the language for both parties
throughout.  The voluminous additional language added by Honda disrupts that balance, and
there are no special circumstances in this case that warrant such deviation.  Accordingly, ACI
requests that the Court reject Honda's additional language.

**ACI's Proposed Instruction**[26]

Not all innovations are patentable.  A patent claim is invalid if the claimed invention
would have been obvious to a person of ordinary skill in the field at the time the application was
filed.  The court, however, is charged with the responsibility of making the determination as to
whether a patent claim was obvious based upon your determination of several factual questions.
First, you must decide the level of ordinary skill in the field that someone would have had at the

---

[26] N.D. Cali. Model Patent Jury Instructions, B.4.3b (Alternative 1)

time the claimed invention was made. Second, you must decide the scope and content of the prior art.  Third, you must decide what difference, if any, existed between the claimed invention and the prior art. Finally, you must determine which, if any, of the following factors have been established by the evidence:

(1)      commercial success of a product due to the merits of the claimed invention;

(2)      a long felt need for the solution provided by the claimed invention;

(3)      unsuccessful attempts by others to find the solution provided by the claimed invention;

(4)      copying of the claimed invention by others;

(5)      unexpected and superior results from the claimed invention;

(6)      acceptance by others of the claimed invention as shown by praise from others in the field or from the licensing of the claimed invention;

(7)      other evidence tending to show nonobviousness;

(8)      independent invention of the claimed invention by others before or at about the same time as the named inventor thought of it; and

(9)      other evidence tending to show obviousness.

Authorities

35 U.S.C. § 103; *Graham v. John Deere Co.*, 383 U.S. 1 (1966); *KSR Int'l Co. v. Teleflex, Inc.*, 550 U.S. ___ (2007); *Ruiz v. A.B. Chance Co.*, 234 F.3d 654 (Fed. Cir. 2000); *Arkie Lures, Inc. v. Gene Larew Tackle, Inc.*, 119 F.3d 953, 957 (Fed. Cir. 1997); *Specialty Composites v. Cabot Corp.*, 845 F.2d 981, 991 (Fed. Cir. 1988); *Windsurfing Int'l, Inc. v. AMF, Inc.*, 782 F.2d 995, 1000 (Fed. Cir. 1986); *Pentec. Inc. v. Graphic Controls Corp.*, 776 F.2d 309, 313 (Fed. Cir. 1985). *See Novo Nordisk A/S v. Becton Dickinson & Co.*, 304 F.3d 1216, 1219-20 (Fed. Cir. 2002).

## C.27. LEVEL OF ORDINARY SKILL

**<u>Honda's Proposed Instruction</u>**[27]

Several times, in my instructions, I have referred to a person of ordinary skill in the field of **vehicle telematics**.  It is up to you to decide the level of ordinary skill in the field of **vehicle telematics**.  You should consider all the evidence introduced at trial in making this decision, including:

(1)    the levels of education and experience of persons working in the field;

(2)    the types of problems encountered in the field; and

(3)    the sophistication of the technology.

ACI contends that the level of ordinary skill in the field was an individual who possesses a general college degree (but not necessarily an engineering degree), and some experience in the **vehicle telematics** aspects of automobile control and operation.  Honda contends that the level of ordinary skill in the field was a person with either: (1) a B.S. degree in electrical engineering or computer science and having four or more years experience in the field of automotive electronics, or (2) a M.S. degree in electrical engineering or computer science and two or more years experience in the field of automotive electronics.

<u>Authorities</u>

*Graham v. John Deere Co.*, 383 U.S. 1 (1966); *Brown & Williamson Tobacco Corp. v. Philip Morris Inc.*, 229 F.3d 1120, 1125 (Fed. Cir. 2000); *SIBIA Neurosciences, Inc. v. Cadus Pharm. Corp.*, 225 F.3d 1349, 1355 (Fed. Cir. 2000); *Ryko Mfg. Co. v. Nu-Star, Inc.*, 950 F.2d 714, 718-19 (Fed. Cir. 1991).

---

[27] N.D. Cali. Model Patent Jury Instructions, B.4.3biii

**ACI's Objections**

ACI objects to Honda's characterization of the field of the invention as "vehicle telematics" and proposed "human factors" as a more accurate description of the field of the invention for the reasons outlined in ACI's objections to Honda's proposed anticipation instruction.  (*See* ACI's Objections to C.22. Anticipation).

**ACI's Proposed Instruction[28]**

Several times, in my instructions, I have referred to a person of ordinary skill in the field of **human factors**.  It is up to you to decide the level of ordinary skill in the field of **human factors**.  You should consider all the evidence introduced at trial in making this decision, including:

> (1)   the levels of education and experience of persons working in the field;
>
> (2)   the types of problems encountered in the field; and
>
> (3)   the sophistication of the technology.

ACI contends that the level of ordinary skill in the field was an individual who possesses a general college degree (but not necessarily an engineering degree), and some experience in the **human factors** aspects of automobile control and operation.  Honda contends that the level of ordinary skill in the field was a person with either: (1) a B.S. degree in electrical engineering or computer science and having four or more years experience in the field of automotive electronics, or (2) a M.S. degree in electrical engineering or computer science and two or more years experience in the field of automotive electronics.

Authorities

*Graham v. John Deere Co.*, 383 U.S. 1 (1966); *Brown & Williamson Tobacco Corp. v. Philip Morris Inc.*, 229 F.3d 1120, 1125 (Fed. Cir. 2000); *SIBIA Neurosciences, Inc. v. Cadus Pharm. Corp.*, 225 F.3d 1349, 1355 (Fed. Cir. 2000); *Ryko Mfg. Co. v. Nu-Star, Inc.*, 950 F.2d 714, 718-19 (Fed. Cir. 1991).

---

[28] N.D. Cali. Model Patent Jury Instructions, B.4.3biii

## C.28. INEQUITABLE CONDUCT

**Honda's Proposed Instruction**[29]

Every applicant for a patent has a duty of candor and good faith in its dealing with the United States Patent and Trademark Office and with the Examiner handling the application. This duty of candor is important because the examiner has limited resources. The examiner may have less information available to them than an applicant may have from which to determine whether an invention is sufficiently different from that which already exists to warrant a patent. The examiner also has a limited amount of time to spend determining whether the invention claimed in any particular application meets the requirements for a patent. To prevent patents from issuing on inventions that are not sufficiently different from that which already exists, anyone involved in a substantial way in the examination of an application is required to be truthful and honest in all of their dealings with the Patent and Trademark Office and to disclose all information in their possession which a reasonable examiner may consider to be material to the examination of the application.

When a person involved in the prosecution of an application fails to comply with the duty of candor and good faith, and does so with an intent to deceive the Patent and Trademark Office, he or she may commit what is called "inequitable conduct." When inequitable conduct occurs during the examination of an application, any patent that issues from that application may be rendered unenforceable as a matter of fairness. This means that despite the existence of the patent, the patent holder may not prevent others from using the invention covered by the patent and may not collect damages from those who use the invention that is covered by the patent. Because a finding of inequitable conduct completely extinguishes a patent holder's right to prevent others from using an invention, the burden of proving inequitable conduct is high. An alleged infringer must establish that inequitable conduct occurred during the examination of a patent with evidence by clear and convincing evidence. That is, based on the evidence presented

---

[29] Source: Federal Circuit Bar Assn. Model Instruction No. 5.1; AIPLA 11.0-11.3.

to you in this case you must have a clear conviction that inequitable conduct occurred in connection with the patents in order for it to be considered unenforceable.

In this case, American Honda contends that the named inventors of the patents-in-suit failed to disclose material information to the Patent and Trademark Office during the examination of the patents, and did so with an intent to deceive the examiner into issuing the patents.

I will now explain to you what "materiality" and "intent to mislead" mean. I will then explain to you how any materiality and intent that you may find must be balanced in order to determine whether, given all the facts and circumstances, inequitable conduct occurred in this case as American Honda contends.

**Materiality**

In considering materiality, you first must determine whether or not information was withheld from the Patent and Trademark Office during the examination of the patents. If you find that the applicant, the applicant's representative(s), or others involved in a substantial way with the examination of the application withheld information from the Patent Trademark Office during the examination of the patents, you must then determine whether or not the withheld information was material.

Information or statements are material if they establish, either alone or in combination with other information or statements, that the invention sought to be patented more likely than not failed to satisfy one or more of the requirements for a patent. Examples of such requirements would include that the invention be new, useful, and non-obvious, among others. Information or statements also are material if they refute or are inconsistent with a position that the applicant for a patent took when opposing an argument made by the examiner that the invention was not patentable or when making an argument to the examiner that the invention was patentable.

Information is material if there is a substantial likelihood that a reasonable patent examiner would consider it important in deciding whether or not to allow the application to issue as a patent. Information that is cumulative of, or in other words, adds little to or has no more bearing on the examination of an application than information the examiner already had, is not material. Information that discloses a more complete combination of the relevant features of the

invention sought to be patented may be highly material. This is true even if those features were before the examiner in other, less complete references.

I will now discuss the concept of "intent to mislead."

**Intent to Mislead**

In order for inequitable conduct to have occurred American Honda must establish that any failure to disclose material information was done with an intent to deceive the examiner. If the failure to disclose material information occurred through negligence, oversight, carelessness, or an error in judgment, even if it was grossly negligent, then there was no intent to deceive and there is no inequitable conduct.

Intent may be shown through direct evidence, such as documents or testimony about one's intent to deceive. Intent also may be shown through indirect evidence, or in other words, it may be inferred from conduct. For example, you may infer an intent to mislead from acts substantially certain to accomplish a result, or a combination of conduct and statements. However, you are not required to infer intent. Any inference of intent will necessarily depend upon the totality of the circumstances as you find them to have been, including the nature and level of any culpable conduct you may find and the absence or presence of affirmative evidence of good faith on the patent holder's or other relevant person's part.

**Balancing of Materiality and Intent**

If you find that American Honda has proved that material information was withheld and, further, that these acts or omissions were done with an intent to mislead the examiner, you must then weigh the degree of materiality and the degree of intent to determine whether, on balance, the evidence clearly and convincingly establishes that the named inventors committed inequitable conduct and the patent(s) should in fairness be declared unenforceable. When performing this balancing, the higher the level of materiality of the withheld information, the lower the level of intent that is required to establish inequitable conduct, and vice versa.

Materiality and intent to deceive are separate issues: proof of materiality does not give rise to an inference of intent to deceive, and proof of an intent to deceive does not give rise to an inference of materiality. There must be evidence that establishes materiality and there must be evidence that establishes an intent to deceive. If evidence of either, or both, is missing, there can

1  be no inequitable conduct. Although the question of whether there has been inequitable conduct

2  is one that I will decide, I will ask for your findings so that I can consider them in making my

3  decision. You should make determinations on this issue as you would for any other issue in this

4  case because I will consider them seriously in making my determination.

5  **ACI's Objections**

6      ACI reserves its objections to the entirety of this instruction pending the Court's

7  determination as to whether it will seek an advisory ruling from the jury on the issue of

8  inequitable conduct.  Should the Court decide that it will seek such an advisory ruling, ACI

9  objects to Honda's proposed instruction to the extent it deviates from the Federal Circuit Bar

10  Association Model, which the parties had agreed to adopt.  For example, Honda adds the

11  following language to the model instruction:

12          Information is material if there is a substantial likelihood that a reasonable

13          patent examiner would consider it important in deciding whether or not to

14          allow the application to issue as a patent.

15      Honda's repreated inclusion of one-sided favorable language in the instruction makes it

16  argumentative, extraneous, unnecessary, and will only mislead or confuse the jury.  (*See* Dkt.

17  Entry No. 350, Order re: Trial at 4e: "All instructions should be short, concise, and neutral

18  statements of law…argumentative instructions . . . will not be given").  When advisory groups

19  draft the model instructions, they balance the language for both parties throughout.  The

20  additional language added by Honda disrupts that balance.  There are no special circumstances in

21  this case that warrant such deviation.  Accordingly, ACI requests that the Court reject Honda's

22  additional language.

23  **ACI's Proposed Instruction**[30]

24      Every applicant for a patent has a duty of candor and good faith in its dealing with the

25  United States Patent and Trademark Office and with the Examiner handling the application. This

26  duty of candor is important because the examiner has limited resources. The examiner may have

27

28  ───────────────

[30] Source: Federal Circuit Bar Assn. Model Instruction No. 5.1.

less information available to them than an applicant may have from which to determine whether an invention is sufficiently different from that which already exists to warrant a patent. The examiner also has a limited amount of time to spend determining whether the invention claimed in any particular application meets the requirements for a patent. To prevent patents from issuing on inventions that are not sufficiently different from that which already exists, anyone involved in a substantial way in the examination of an application is required to be truthful and honest in all of their dealings with the Patent and Trademark Office and to disclose all information in their possession which a reasonable examiner may consider to be material to the examination of the application.

When a person involved in the prosecution of an application fails to comply with the duty of candor and good faith, and does so with an intent to deceive the Patent and Trademark Office, he or she may commit what is called "inequitable conduct." When inequitable conduct occurs during the examination of an application, any patent that issues from that application may be rendered unenforceable as a matter of fairness. This means that despite the existence of the patent, the patent holder may not prevent others from using the invention covered by the patent and may not collect damages from those who use the invention that is covered by the patent.

Because a finding of inequitable conduct completely extinguishes a patent holder's right to prevent others from using an invention, the burden of proving inequitable conduct is high. An alleged infringer must establish that inequitable conduct occurred during the examination of a patent with evidence by clear and convincing evidence. That is, based on the evidence presented to you in this case you must have a clear conviction that inequitable conduct occurred in connection with the patents in order for it to be considered unenforceable.

In this case, American Honda contends that the named inventors of the patents-in-suit failed to disclose material information to the Patent and Trademark Office during the examination of the patents, and did so with an intent to deceive the examiner into issuing the patents.

I will now explain to you what "materiality" and "intent to mislead" mean. I will then explain to you how any materiality and intent that you may find must be balanced in order to

determine whether, given all the facts and circumstances, inequitable conduct occurred in this case as American Honda contends.

**Materiality**

In considering materiality, you first must determine whether or not information was withheld from the Patent and Trademark Office during the examination of the patents. If you find that the applicant, the applicant's representative(s), or others involved in a substantial way with the examination of the application withheld information from the Patent Trademark Office during the examination of the patents, you must then determine whether or not the withheld information was material.

Information or statements are material if they establish, either alone or in combination with other information or statements, that the invention sought to be patented more likely than not failed to satisfy one or more of the requirements for a patent. Examples of such requirements would include that the invention be new, useful, and non-obvious, among others. Information or statements also are material if they refute or are inconsistent with a position that the applicant for a patent took when opposing an argument made by the examiner that the invention was not patentable or when making an argument to the examiner that the invention was patentable.

Information that is cumulative of, or in other words, adds little to or has no more bearing on the examination of an application than information the examiner already had, is not material. Information that discloses a more complete combination of the relevant features of the invention sought to be patented may be highly material. This is true even if those features were before the examiner in other, less complete references.

I will now discuss the concept of "intent to mislead."

**Intent to Mislead**

In order for inequitable conduct to have occurred American Honda must establish that any failure to disclose material information was done with an intent to deceive the examiner. If the failure to disclose material information occurred through negligence, oversight, carelessness, or an error in judgment, even if it was grossly negligent, then there was no intent to deceive and there is no inequitable conduct.

Intent may be shown through direct evidence, such as documents or testimony about one's intent to deceive. Intent also may be shown through indirect evidence, or in other words, it may be inferred from conduct. For example, you may infer an intent to mislead from acts substantially certain to accomplish a result, or a combination of conduct and statements. However, you are not required to infer intent. Any inference of intent will necessarily depend upon the totality of the circumstances as you find them to have been, including the nature and level of any culpable conduct you may find and the absence or presence of affirmative evidence of good faith on the patent holder's or other relevant person's part.

**Balancing of Materiality and Intent**

If you find that American Honda has proved that material information was withheld and, further, that these acts or omissions were done with an intent to mislead the examiner, you must then weigh the degree of materiality and the degree of intent to determine whether, on balance, the evidence clearly and convincingly establishes that the named inventors committed inequitable conduct and the patent(s) should in fairness be declared unenforceable. When performing this balancing, the higher the level of materiality of the withheld information, the lower the level of intent that is required to establish inequitable conduct, and vice versa.

Materiality and intent to deceive are separate issues: proof of materiality does not give rise to an inference of intent to deceive, and proof of an intent to deceive does not give rise to an inference of materiality. There must be evidence that establishes materiality and there must be evidence that establishes an intent to deceive. If evidence of either, or both, is missing, there can be no inequitable conduct.

Although the question of whether there has been inequitable conduct is one that I will decide, I will ask for your findings so that I can consider them in making my decision. You should make determinations on this issue as you would for any other issue in this case because I will consider them seriously in making my determination.

1

**C.29. RE-EXAMINATION**

2

**Honda's Proposed Instruction**

3

4        In a re-examination proceeding, the patent examiner is limited to patents and printed

5   publications in determining the patentability of any claim of a particular patent. Knowledge, use,

6   or sale, of a prior art product cannot be considered by the examiner.

7        Inequitable conduct during an initial prosecution of a patent application cannot be cured

8   during re-examination of the same patent.

9   Authorities

10  35 U.S.C. § 301-5; *Bruning v. Hirose*, 161 F.3d 681, 685 (Fed. Cir. 1998); *Molins PLC v.*

11  *Textron, Inc.*, 48 F.3d 1172, 1182 (Fed. Cir. 1995)

12  **ACI's Objections**

13       ACI objects to Honda's proposed re-examination instruction in its entirety. There is no

14  re-examination instruction in the Northern District of California's Model Patent Jury

15  Instructions. Nor can a re-examination instruction be found anywhere else.

16  As an initial matter, if Honda wishes to present evidence to the jury of PTO procedures regarding

17  re-examinations, it can do so through its patent law expert. The jury instructions are not the

18  appropriate forum.

19       Honda's assertion in its instruction that misconduct during the original application cannot

20  be cured during reexamination is misplaced. This question does not appear to have been

21  squarely addressed by the Federal Circuit. *See Young v. Lumenis, Inc.*, 492 F.3d 1336, 1349

22  (Fed. Cir. 2007); *Molins PLC v. Textron, Inc.*, 48 F.3d 1172, 1183 (Fed. Cir. 1995) (the court

23  explicitly did not take a position on whether the disclosure during reexamination cured the

24  previous nondisclosure). Further, there was no misconduct to cure. ACI will not be arguing that

25  the applicants committed inequitable conduct that was subsequently cured during reexamination.

26  Instead, ACI's submission of the 1996 Acura RL Navigation System manual to the PTO during

27  reexamination will be presented to the jury as evidence of applicants' good faith. Similarly, the

28  fact that the Reexamination Examiner has now reconfirmed the previously asserted claims of the

    '355 Patent, despite the Examiner's review of the RL navigation system manual during

reexamination proceedings, will be presented to the jury as confirmation that the 1996 Acura 3.5 RL navigation system was *not* material to patentability.

Accordingly, Honda's proposed instruction in its entirety is extraneous and unnecessary. It is also argumentative, and will only mislead or confuse the jury.  (*See* Dkt. Entry No. 350, Order re: Trial at 4e: "All instructions should be short, concise, and neutral statements of law…argumentative instructions…will not be given").  That may be the reason it could not be found in *any* model jury instructions.  As such, it should be rejected.  However, to the extent the Court requires a jury instruction on re-examination is necessary, ACI respectfully requests that the Court adopts ACI's proposed language.

**ACI's Proposed Instruction**

The submission during reexamination proceedings of prior art references that were allegedly previously withheld from the Examiner may be relevant to the applicant's good faith. The subsequent reconfirmation of the patent during re-examination proceedings after such submissions by the applicant may be relevant to the materiality of the prior art references.

Authorities

*Young v. Lumenis, Inc.*, 492 F.3d 1336, 1349 (Fed. Cir. 2007)

## C.30. DAMAGES – BURDEN OF PROOF

**Honda's Proposed Instruction**[31]

I will instruct you about the measure of damages.  By instructing you on damages, I am not suggesting which party should win on any issue.  If you find that:

(1) any of claims 1, 4, 9, and 12 of the '497 Patent, claims 1, 4 and 6 of the '465 Patent, claims 1, 7, 11 and 23 of the '961 Patent, and claims 1, 9, 13, 14 and 28 of the '759 Patent are valid **and enforceable**, or

(2) American Honda infringed any valid **and enforceable** claim of the '795 Patent, you must then determine the amount of money damages to be awarded to ACI to compensate it for the infringement.

The amount of those damages must be adequate to compensate ACI for the infringement. A damages award should put the patent holder in approximately the financial position it would have been in had the infringement not occurred, but in no event may the damages award be less than a reasonable royalty.  You should keep in mind that the damages you award are meant to compensate the patent holder and not to punish an infringer.

ACI has the burden to persuade you of the amount of its damages.  You should award only those damages that ACI more likely than not suffered.  While ACI is not required to prove its damages with mathematical precision, it must prove them with reasonable certainty.  ACI is not entitled to damages that are remote or speculative.

Authorities

*Dow Chem. Co. v. Mee Indus., Inc.*, 341 F.3d 1370, 1381-82 (Fed. Cir. 2003); *Grain Processing Corp. v. American Maize-Prod. Co.*, 185 F.3d 1341, 1349 (Fed. Cir. 1999); *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1108-09 (Fed. Cir. 1996); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1545 (Fed. Cir. 1995) (*en banc*); *Sensonics, Inc. v. Aerosonic Corp.*, 81 F.3d 1566, 1572 (Fed. Cir. 1996).

---

[31] N.D. Cali. Model Patent Jury Instructions, B.5.1

**ACI's Objections**

ACI objects to objects to Honda's proposed instruction to the extent it deviates from the Model Patent Jury Instructions for the Northern District of California.  Honda attempts to add "**and enforceable**" to the Damages – Burden of Proof instruction in several places.  The inclusion of additional language is repetitive, extraneous, unnecessary, argumentative, and will only mislead or confuse the jury.  (*See* Dkt. Entry No. 350, Order re: Trial at 4e: "All instructions should be short, concise, and neutral statements of law…argumentative instructions…will not be given).  When advisory groups draft the model instructions, they balance the language for both sides throughout.  The language added by Honda disrupts that balance, and there are no special circumstances in this case that warrant the deviation.  Further repetition of the word "enforceable" in the *damages* instruction could confuse and distract the jury from the topic of the instruction.  Moreover, Honda's addition is unnecessary – should the Court find that the patents are unenforceable, there will be no damages awarded because unenforceable patents cannot be infringed.  Accordingly, ACI requests that the Court decline to adopt Honda's additional language.

ACI further objects to Honda's instruction to the extent that it has not been adapted to the facts and evidence of this case and ACI submits that there is a need for more specific instruction to the particular evidence in this case.  ACI's proposed instruction includes the following additional language:

> However, any uncertainty caused by the inadequacy of American Honda's records should be resolved against American Honda and in favor of ACI.

*See Sensonics, Inc. v. Aerosonic Corp.*, 81 F.3d 1566, 1572 (Fed. Cir. 1996).

There is good reason to include this additional language.  Unlike with Honda's proposed additions, here there is good reason to include this additional language because of the special circumstances surrounding Honda's failure to produce damages documents, a fact pattern which does not arise in most cases.  Further, ACI believes the additional instruction will be helpful to the jury in this case in evaluating the evidence ACI expects will be presented at trial.  Accordingly, ACI asks that the Court adopt ACI's proposed instruction.

**ACI's Proposed Instruction**[32]

I will instruct you about the measure of damages.  By instructing you on damages, I am not suggesting which party should win on any issue.  If you find that:

> (1) any of claims 1, 4, 9, and 12 of the '497 Patent, claims 1, 4 and 6 of the '465 Patent, claims 1, 7, 11 and 23 of the '961 Patent, and claims 1, 9, 13, 14 and 28 of the '759 Patent are valid, or
>
> (2) American Honda infringed any valid claim of the '795 Patent,

you must then determine the amount of money damages to be awarded to ACI to compensate it for the infringement.

The amount of those damages must be adequate to compensate ACI for the infringement.  A damages award should put the patent holder in approximately the financial position it would have been in had the infringement not occurred, but in no event may the damages award be less than a reasonable royalty.  You should keep in mind that the damages you award are meant to compensate the patent holder and not to punish an infringer.

ACI has the burden to persuade you of the amount of its damages.  You should award only those damages that ACI more likely than not suffered.  While ACI is not required to prove its damages with mathematical precision, it must prove them with reasonable certainty.  ACI is not entitled to damages that are remote or speculative.  **However, any uncertainty caused by the inadequacy of American Honda's records should be resolved against American Honda and in favor of ACI.**

Authorities

*Dow Chem. Co. v. Mee Indus., Inc.*, 341 F.3d 1370, 1381-82 (Fed. Cir. 2003); *Grain Processing Corp. v. American Maize-Prod. Co.*, 185 F.3d 1341, 1349 (Fed. Cir. 1999); *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1108-09 (Fed. Cir. 1996); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d

---

[32] N.D. Cali. Model Patent Jury Instructions, B.5.1

1538, 1545 (Fed. Cir. 1995) (*en banc*); *Sensonics, Inc. v. Aerosonic Corp.*, 81 F.3d 1566, 1572 (Fed. Cir. 1996).

## C.31. REASONABLE ROYALTY – DEFINITION

**Honda's Proposed Instruction**[33]

A royalty is a payment made to a patent holder in exchange for rights to make, use or sell the claimed invention. A reasonable royalty is the payment that would have resulted from a negotiation between a patent holder and the infringer taking place **at or before the time that the infringing activity first began**. In considering the nature of this negotiation, the focus is on what the expectations of the patent holder and infringer would have been had they entered into an agreement at that time and acted reasonably in their negotiations. However, you must assume that both parties believed the patent was valid and infringed. In addition, you must assume that patent holder and infringer were willing to enter into an agreement; your role is to determine what that agreement would have been. The test for damages is what royalty would have resulted from the hypothetical negotiation and not simply what either party would have preferred. **In determining a reasonable royalty, you may consider evidence on any of the following factors:**

**1. Any royalties received by the licensor for the licensing of the patent-in-suit, proving or tending to prove an established royalty.**

**2. The rates paid by American Honda to license other patents comparable to the patents-in-suit.**

**3. The nature and scope of the license, as exclusive or non-exclusive, or as restricted or nonrestricted in terms of its territory or with respect to whom the manufactured product may be sold.**

**4. The licensor's established policy and marketing program to maintain its right to exclude others from using the patented invention by not licensing others to use the invention, or by granting licenses under special conditions designed to preserve that exclusivity.**

---

[33] N.D. Cali. Model Patent Jury Instructions, B.5.7

**5. The commercial relationship between the licensor and the licensee, such as whether or not they are competitors in the same territory in the same line of business.**

**6. The effect of selling the patented product in promoting sales of other products of the licensee; the existing value of the invention to the licensor as a generator of sales of its nonpatented items; and the extent of such collateral sales.**

**7. The duration of the patents-in-suit and the term of the license.**

**8. The established profitability of the product made under the patents-in-suit; its commercial success; and its current popularity.**

**9. The utility and advantages of the patented invention over the old modes or devices, if any that had been used for achieving similar results.**

**10. The nature of the patented invention; the character of the commercial embodiment of it as owned and produced by the licensor; and the benefits to those who have used the invention.**

**11. The extent to which American Honda has made use of the invention; and any evidence that shows the value of that use.**

**12. The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions.**

**13. The portion of the profit that arises from the patented invention itself as opposed to profit arising from unpatented features, such as the manufacturing process, business risks, or significant features or improvements added by the accused infringer.**

**14. The opinion testimony of qualified experts.**

**15. The amount that a licensor and a licensee (such as American Honda) would have agreed upon (at the time the infringement began) if both sides had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee— who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention—would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a patentee who was willing to grant a license.**

**16. Any other economic factor that a normally prudent business person would, under similar circumstances, take into consideration in negotiating the hypothetical license.**

Authorities

*Golight, Inc., v. Wal-Mart Stores, Inc.*, 355 F.3d 1327, 1338 (Fed. Cir. 2004); *Maxwell v. Baker, Inc.*, 86 F.3d 1098, 1108-10 (Fed. Cir. 1996); *Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1579- 81 (Fed. Cir. 1996); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1554 (Fed. Cir. 1995) (*en banc*); *Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970); *Riles v. Shell Exploration & Prod. Co.*, 298 F.3d 1302, 1311 (Fed. Cir. 2002); **AIPLA Model Patent Instruction 12.16;** *Georgia-Pacific Corp. v. United States Plywood Corp.*, **318 F. Supp. 1116 (S.D.N.Y. 1970),** *modified and aff'd sub nom., Georgia Pacific Corp. v. United States Plywood Champion Papers, Inc.*, **446 F.2d 295 (2d Cir. 1971).**


**ACI's Objections**

ACI objects to Honda's proposed instruction to the extent it deviates from the Model Patent Jury Instructions for the Northern District of California.  Honda's attempt to rewrite the law regarding the timing of the hypothetical negotiation in connection with the reasonable royalty analysis should be rejected.  Honda proposes changing the instruction as follows:

> A reasonable royalty is the payment that would have resulted from a negotiation between a patent holder and the infringer taking place at **or before** the time that the infringing ~~sales~~ **activity** first began.

Honda's changes are incorrect as a matter of law.  There is no reason to deviate from the model and the controlling case law.  A reasonable royalty is determined based on a hypothetical negotiation taking place at the time when infringement began, and not at some other date which may be more favorable for Honda.  *See Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152, 1158 (C.C.P.A. 1978).  The calculation "requires the court to envision the terms of a licensing agreement reached as the result of a supposed meeting between the patentee and the infringer *at the time infringement began*."  *Rite-Hite Corp. v. Kelley Co., Inc.*, 56 F.3d 1538, 1554 (Fed. Cir. 1995) (*en banc*) (emphasis added).

ACI further objects to Honda's proposed instruction to the extent it deviates from the Model Patent Jury Instructions for the Northern District of California by adding all of the *Georgia-Pacific* factors to the instruction.  The inclusion of the additional language is extraneous, unnecessary, and will only mislead or confuse the jury.  (*See* Dkt. Entry No. 350, Order re: Trial at 4e: "All instructions should be short, concise, and *neutral statements of law…argumentative instructions…will not be given).  The Georgia-Pacific* factors are considered in every case on damages, yet the factors are not included in the Model Patent Jury Instructions for the Northern District of California.  There are no special circumstances in this case that warrant their explicit inclusion here.  Accordingly, ACI requests that the Court reject Honda's additional language.

**ACI's Proposed Instruction**[34]

A royalty is a payment made to a patent holder in exchange for rights to make, use or sell the claimed invention.  A reasonable royalty is the payment that would have resulted from a negotiation between a patent holder and the infringer taking place at the time when the infringing sales first began.  In considering the nature of this negotiation, the focus is on what the expectations of the patent holder and infringer would have been had they entered into an agreement at that time and acted reasonably in their negotiations.  However, you must assume that both parties believed the patent was valid and infringed.  In addition, you must assume that patent holder and infringer were willing to enter into an agreement; your role is to determine what that agreement would have been.  The test for damages is what royalty would have resulted from the hypothetical negotiation and not simply what either party would have preferred.  In this trial, you have heard evidence of things that happened after the infringing sales first began.  That evidence can be considered only to the extent that it corroborates evidence from before American Honda's sales commenced.  You may not limit or increase the royalty based on the actual profits American Honda made.

---

[34] N.D. Cali. Model Patent Jury Instructions, B.5.7

Authorities

Golight, Inc., v. Wal-Mart Stores, Inc., 355 F.3d 1327, 1338 (Fed. Cir. 2004); Maxwell v. Baker, Inc., 86 F.3d 1098, 1108-10 (Fed. Cir. 1996); Mahurkar v. C.R. Bard, Inc., 79 F.3d 1572, 1579-81 (Fed. Cir. 1996); Rite-Hite Corp. v. Kelley Co., 56 F.3d 1538, 1554 (Fed. Cir. 1995) (en banc); Georgia-Pacific Corp. v. United States Plywood Corp., 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970).

Dated: June 9, 2008                        Respectfully submitted,

                                           /s/    Richard A. Clegg
                                           _____
                                           Richard A. Clegg (SBN 211213)
                                           SELTZER CAPLAN MCMAHON VITEK
                                           750 B Street, Suite 2100
                                           San Diego, California  92101
                                           Telephone: (619) 685-3086
                                           Facsimile:  (619) 685-3100

                                           Of Counsel:
                                           Gary M. Butter
                                           Paul A. Ragusa
                                           Robert L. Maier
                                           Jennifer Cozeolino
                                           BAKER BOTTS L.L.P.
                                           30 Rockefeller Plaza, 44th Floor
                                           New York, New York  10112-4498
                                           Telephone: (212) 408-2500
                                           Facsimile:  (212) 408-2501
                                           gary.butter@bakerbotts.com
                                           paul.ragusa@bakerbotts.com
                                           robert.maier@bakerbotts.com
                                           jennifer.cozeolino@bakerbotts.com

                                           Attorneys for Plaintiff,
                                           AMERICAN CALCAR, INC.